1               **UNITED STATES DISTRICT COURT**

2               **EASTERN DISTRICT OF TEXAS**

3               **TEXARKANA DIVISION**

4   **DANNY CUNNINGHAM**         **.**  **DOCKET NO. 5:04CV282**

5                        **.**  **TEXARKANA, TEXAS**

6   **VS.**                 **.**  **NOVEMBER 8, 2006**

7   **OFFSHORE SPECIALTY**       **.**  **1:58 P.M.**

8   **FABRICATORS, INC., ET AL**     **.**

9        **SCHEDULING CONFERENCE AND MOTION HEARING**

10         **BEFORE THE HONORABLE DAVID FOLSOM,**

11           **UNITED STATES DISTRICT JUDGE.**

12   **APPEARANCES:**

13   **FOR PLAINTIFF:**            **MR. EDWARD L. HOHN**
                            **NIX PATTERSON & ROACH**

14                      **205 LINDA DRIVE**
                            **DAINGERFIELD, TEXAS 75638**

15

                            **MR. FRANCIS I. SPAGNOLETTI**

16                      **SPAGNOLETTI & ASSOCIATES**
                            **1600 SMITH, SUITE 4545**

17                      **HOUSTON, TEXAS 77002**

18                      **MR. HOWARD W. FOSTER**
                            **JOHNSON & BELL**

19                      **33 W. MONROE STREET**
                            **SUITE 2700**

20                      **CHICAGO, ILLINOIS 60603**

21   **FOR DEFENDANT:**            **MR. GLENN R. LEGGE**
   **OFFSHORE SPECIALTY:**       **MR. LAURENCE E. STUART**

22                      **LEGGE FARROW KIMMITT**
                          **MCGRATH & BROWN**

23                      **6363 WOODWAY, SUITE 400**
                          **HOUSTON, TEXAS 77057**

24

   **HORIZON OFFSHORE, INC.:**    **MR. MARK A. CUNNINGHAM**

25                      **JONES WALKER**

```
 1                                      201 ST. CHARLES AVENUE
                                        51ST FLOOR
 2                                      NEW ORLEANS, LA. 70170

 3   J. RAY MCDERMOTT, INC.:            MR. JOSEPH E. LEBLANC, JR.
                                        KING LEBLANC & BLAND
 4                                      6363 WOODWAY, SUITE 750
                                        HOUSTON, TEXAS 77057
 5
                                        MR. JOHN B. GREER, III
 6                                      GREER, MCCASLAND & MILLER
                                        3512 TEXAS BOULEVARD
 7                                      TEXARKANA, TEXAS 75503

 8   STOLT OFFSHORE, INC.:              MR. RALPH E. KRAFT
                                        MS. JESSICA ANN DEVITT
 9                                      KRAFT GATZ & DEVITT
                                        600 JEFFERSON STREET
10                                      SUITE 410
                                        LAFAYETTE, LOUISIANA 70501
11
     CAL DIVE INTERNATIONAL, INC.:      MR. WILLIAM P. MAINES
12                                      FULBRIGHT & JAWORSKI
                                        1301 MCKINNEY, SUITE 5100
13                                      HOUSTON, TEXAS 77010

14   GLOBAL INDUSTRIES OFFSHORE:        MR. GREGORY S. HUFFMAN
                                        VERNON GOODRICH
15                                      3333 LEE PARKWAY, SUITE 600
                                        DALLAS, TEXAS 75219
16
                                        MS. NICOLE L. RITTENHOUSE
17                                      THOMPSON & KNIGHT
                                        1700 PACIFIC AVENUE
18                                      SUITE 3300
                                        DALLAS, TEXAS 75201
19
                                        MR. ROBERT W. WEBER
20                                      SMITH & WEBER
                                        5604 SUMMERHILL ROAD
21                                      TEXARKANA, TEXAS 75505

22   O.W.I. LIMITED:                    MS. LAUREN M. CHARBONEAU
                                        ANDREWS KURTH
23                                      600 TRAVIS STREET
                                        SUITE 4200
24                                      HOUSTON, TEXAS 77002

25
```

```
 1  C-MAR AMERICA, INC.:                MR. KEVIN WALTERS
                                        GEORGANTAS & WALTERS
 2                                      815 WALKER STREET
                                        SUITE 953
 3                                      HOUSTON, TEXAS 77002-9800

 4  COURT REPORTER:                     MS. LIBBY CRAWFORD, CSR
                                        OFFICIAL COURT REPORTER
 5                                      500 STATE LINE AVENUE
                                        TEXARKANA, TEXAS 75501
 6                                      903/794-4067

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  PROCEEDINGS RECORDED BY STENOMASK, TRANSCRIPT PRODUCED ON

25  CAT SYSTEM.
```

1                                      INDEX

2     THE COURT................................................  5

3     DEFENDANT'S PRESENTATION BY MR. MAINES...................  6

4     PLAINTIFF'S RESPONSE BY MR. SPAGNOLETTI ................. 19

5     PLAINTIFF'S RESPONSE BY MR. FOSTER ..................... 25

6     DEFENDANT'S REPLY BY MR. MAINES ........................ 28

7     DEFENDANT'S PRESENTATION BY MR. STUART ................. 32

8     PLAINTIFF'S RESPONSE BY MR. FOSTER ..................... 46

9     DEFENDANT'S REPLY BY MR. STUART ........................ 50

10    DEFENDANT'S PRESENTATION BY MR. LEBLANC ................ 54

11    PLAINTIFF'S RESPONSE BY MR. SPAGNOLETTI ................ 60

12    DEFENDANT'S RESPONSE BY MR. LEBLANC .................... 61

13    PLAINTIFF'S RESPONSE BY MR. SPAGNOLETTI ................ 66

14    THE COURT............................................... 69

15    PLAINTIFF'S RESPONSE BY MR. FOSTER...................... 71

16    DEFENDANT'S PRESENTATION BY MS. DEVITT.................. 71

17    PLAINTIFF'S RESPONSE BY MR. SPAGNOLETTI................. 73

18    DEFENDANT'S PRESENTATION BY MS. CHARBONEAU............. 74

19    PLAINTIFF'S RESPONSE BY MR. SPAGNOLETTI................. 75

20    DEFENDANT PROFFERS DEMONSTRATIVE EXHIBITS BY MR. STUART.... 76

21    THE COURT............................................... 76

22    REPORTER'S CERTIFICATION............................... 78

23

24

25

1          <u>P R O C E E D I N G S</u>

2                    TEXARKANA, TEXAS

3                    NOVEMBER 8, 2006

4          (OPEN COURT)

5          THE COURT: PLEASE BE SEATED, LADIES AND GENTLEMEN.

6    GOOD AFTERNOON.  WE ARE HERE ON VARIOUS MOTIONS TO DISMISS,

7    12(B)(6), 12(B)(2).  I BELIEVE I HAVE GIVEN EACH SIDE SIXTY

8    MINUTES.  I TRUST THE DEFENDANTS HAVE AGREED IN SOME FASHION

9    TO DIVIDE THE TIME.  MY THOUGHTS ARE I WOULD LIKE TO HEAR THE

10   12(B)(6) MOTIONS PROBABLY FIRST, NOT REALLY REQUIRED TO DO IT

11   IN THAT FASHION, THEN WE WILL HAVE A RESPONSE TO THAT MOTION

12   AND THEN TAKE UP THE 12(B)(2) MOTIONS.  DOES THAT SOUND

13   AGREEABLE OR DID SOMEONE HAVE A DIFFERENT WAY TO APPROACH IT?

14         MR. CUNNINGHAM: YOUR HONOR, MARK CUNNINGHAM ON

15   BEHALF OF HORIZON OFFSHORE.  WE ALSO HAD A RULE 56 MOTION

16   FILED ONLY ON BEHALF OF US.

17         THE COURT: VERY WELL.  AND THAT ALSO.  I DON'T HAVE

18   ANY PARTICULAR PREFERENCE.  YES.

19         MR. SPAGNOLETTI: YOUR HONOR, FRANK SPAGNOLETTI FOR

20   PLAINTIFF.  THERE ARE TWO MOTIONS I THINK THAT ARE MOOT.  I

21   JUST WANTED TO MAKE THE COURT AWARE OF THAT SO WE DIDN'T

22   ADDRESS.  ONE IS DOCUMENT 165.  IT IS A 12(B)(2) MOTION, AND

23   DOCUMENT 169 ON THE DOCKET.  IT IS ALSO A 12(B)(2) MOTION.

24         THE COURT: SO BOTH OF THE 12(B)(2) MOTIONS ARE NO

25   LONGER BEFORE US?

1          MR. SPAGNOLETTI: RIGHT.  AND THEN THERE IS A --

2          THE COURT: LET'S PLEASE TERM THOSE, MRS. MARTIN.  IS

3    THAT CORRECT? I DON'T KNOW.

4          THE CLERK: I BELIEVE SO, YOUR HONOR.  THOSE ARE THE

5    TWO HUMARES –

6          MR. SPAGNOLETTI: THESE ARE THE HUMARES PERSONAL

7    JURISDICTION MOTIONS, JUDGE, BECAUSE WE REACHED AN AGREEMENT

8    ON THOSE.

9          THE COURT: VERY WELL.

10          MR. SPAGNOLETTI: THERE IS ALSO ON THIS RULE 56, I

11   GUESS, SUMMARY JUDGMENT OR SOMETHING, WE BASICALLY AGREED THAT

12   THE PLAINTIFF WAS NOT THE PROPER PLAINTIFF FOR THE CASE.

13          THE COURT: I HAVE READ THAT AND THE RESPONSE.

14          MR. SPAGNOLETTI: AND SO WE WOULD JUST, YOU KNOW,

15   HANDLE IT HOWEVER THE COURT WANTED TO.  WE CAN ADDRESS IT

16   LATER, I GUESS.

17          THE COURT: WHAT SAYS –

18          MR. CUNNINGHAM: AS LONG AS MY CLIENT GETS DISMISSED

19   FROM THE LAWSUIT, YOUR HONOR, I HAVE NO OBJECTION.

20          THE COURT: WHO WOULD LIKE TO GO FORWARD ON THE

21   12(B)(6) MOTIONS?

22          MR. MAINES: YOUR HONOR, ON BEHALF OF HELIX ENERGY

23   SOLUTIONS GROUP, WHICH IS FORMERLY STOLT, I AM BILL MAINES.

24   WE HAVE, AS YOUR HONOR SUGGESTED, PRIOR TO THE HEARING MET

25   AMONGST OURSELVES, AND IN ORDER TO PRESENT THIS MATTER, THESE

1   MOTIONS IN THE MANNER THAT IS MOST EFFICIENT TO THE COURT'S

2   TIME, WE HAVE SPLIT UP THE TIME AMONGST OURSELVES.

3          THE COURT: I BECAME A LITTLE CONCERNED WHEN I

4   STARTED LOOKING AT THIS NOTEBOOK ABOUT THE AGE, BUT THEN HAD

5   MY MEMORY REFRESHED THAT THIS CASE WAS STAYED FOR A PERIOD OF

6   TIME AWAITING A RULING BY THE SUPREME COURT ON SOME OF THESE

7   ISSUES.  SO THIS IS AN '04 CASE THAT WE ONLY NOW ARE HEARING

8   THE MOTIONS TO DISMISS.

9          MR. MAINES: CORRECT, BUT THERE WAS AN INTERVENING

10  STAY, AS YOUR HONOR POINTS OUT.  MAY IT PLEASE THE COURT, IF I

11  MAY PROCEED?

12         THE COURT: YES.

13         MR. MAINES: AS I MENTIONED, I AM BILL MAINES AND WE

14  HAVE SPLIT UP THE TIME AMONG THE DEFENDANTS.  AND, YOUR HONOR,

15  WE ARE GOING TO COVER THREE MAJOR POINTS DURING OUR

16  PRESENTATION.  THE FIRST POINT THAT I AM GOING TO BE COVERING

17  IS WHETHER OR NOT THE ALLEGATIONS OF THE COMPLAINT ADEQUATELY

18  STATE RICO PREDICATE ACTS AND WHETHER OR NOT THE PROXIMATE

19  CAUSE REQUIREMENT HAS BEEN SATISFIED.  THE NEXT SEGMENT OF THE

20  PRESENTATION IS GOING TO BE BY MR. STUART, WHO IS GOING TO

21  ADDRESS THE ENTERPRISE ISSUE IN THE CASE.  AND THEN THIRD –

22         THE COURT: AND IF THIS DOESN'T DISRUPT MATTERS,

23  PROBABLY WHAT I WOULD PREFER FOR EASE OF FOLLOWING IT IN THE

24  TRANSCRIPT BECAUSE I AM GOING TO REQUEST THAT THE PARTIES

25  ORDER A TRANSCRIPT, WE MIGHT HAVE A REPLY FROM THE PLAINTIFF

1   AND THEN PRESENT THE NEXT ISSUE AND THEN REPLY.  IT IS A

2   LITTLE EASIER FOR ME TO FOLLOW IT WHEN I READ IT, IF THAT'S

3   AGREEABLE WITH THE PARTIES.

4          MR. MAINES: THAT'S CERTAINLY FINE WITH US, YOUR

5   HONOR.

6          MR. FOSTER: THAT WOULD BE FINE WITH US, YOUR HONOR.

7   I AM HOWARD FOSTER FOR THE PLAINTIFFS, YOUR HONOR.  AND I WILL

8   BE PRESENTING OUR SIDE ON THE RICO ARGUMENT, AND MR.

9   SPAGNOLETTI WILL BE ARGUING ON THE OXLA ARGUMENT.

10          MR. MAINES: ALL RIGHT.  AND THEN, YOUR HONOR, JUST

11   FOR THE COURT'S KNOWLEDGE OF WHAT WE ARE GOING TO BE DOING

12   HERE, AND MR. SPAGNOLETTI, THE THIRD SEGMENT OF OUR

13   PRESENTATION WAS GOING TO ADDRESS THE OXLA ISSUES, AND MR.

14   LEBLANC WILL BE COVERING THOSE ISSUES.

15          YOUR HONOR, THE FIRST POINT THAT WE WOULD LIKE TO ADDRESS

16   IS WHETHER OR NOT THE RICO ALLEGATIONS IN THIS CASE FAIL TO

17   STATE A CAUSE OF ACTION BECAUSE THE PLAINTIFFS HAVE FAILED TO

18   PLEAD PREDICATE ACTS NECESSARY TO ESTABLISH A PATTERN OF

19   RACKETEERING ACTIVITY.  AS THE COURT KNOWS, UNDER THE

20   RACKETEERING STATUTE THE SECTION 1961 SETS OUT WHAT ACTS CAN

21   BE CRIMES THAT QUALIFY AS ACTS THAT WILL SATISFY THE PREDICATE

22   ACT REQUIREMENT OF THE STATUTE.

23          IN THIS CASE THE PLAINTIFFS HAVE ALLEGED VIOLATIONS OF

24   TWO STATUTES AS THEIR PREDICATE ACTS.  BOTH OF THESE STATUTES

25   ARE FOUND IN 8 U.S.C. SECTION 324, WHICH IS A PROVISION

1    CONTAINED IN THE IMMIGRATION AND NATIONALITY ACT, THE INA.

2    SPECIFICALLY, THE FIRST SECTION OF SECTION 324 THAT THE

3    PLAINTIFFS RELY UPON IS SUBSECTION 3 WHICH DEALS WITH

4    HARBORING ALIENS.  THE SECOND SECTION IS SUBSECTION 3A WHICH

5    DEALS WITH THE EMPLOYMENT OF ILLEGAL ALIENS.  AND THE

6    DEFENDANTS IN THIS -- AND THE PLAINTIFFS IN THIS CASE, WHO ARE

7    A PURPORTED CLASS OF OFFSHORE WORKERS, CLAIM THAT THE

8    DEFENDANTS, IN COMBINATION WITH CREWING AND MANNING COMPANIES,

9    HAVE VIOLATED THESE PROVISIONS OF THE INA.

10       AS A MATTER OF LAW THAT ALLEGATION IS INSUFFICIENT

11   BECAUSE IT IS ESTABLISHED IN THE COURTS AND IN AN OPINION THAT

12   I AM GOING TO DISCUSS IN A MOMENT, THAT THE INA DOES NOT APPLY

13   ON THE OUTER CONTINENTAL SHELF.  THIS PRINCIPLE IS SET OUT

14   CLEARLY IN A CASE CALLED UNITED ASSOCIATION OF JOURNEYMEN V.

15   RENO, WHICH IS BRIEFED BY BOTH THE PARTIES IN THE CASE.  IN

16   RENO A PRETTY STRAIGHTFORWARD SET OF FACTS.  EXXON HIRED

17   HEEREMA, WHICH WAS A DUTCH OWNED, SWISS OPERATED CONSTRUCTION

18   COMPANY, TO PERFORM SERVICES ON THE OUTER CONTINENTAL SHELF

19   OFFSHORE CALIFORNIA.

20       THE JOURNEYMEN, THE ASSOCIATION OF JOURNEYMEN FILED SUIT

21   AGAINST THE ATTORNEY GENERAL OF THE UNITED STATES TO REQUIRE

22   THE ATTORNEY GENERAL TO ENFORCE THE INA ON THE OUTER

23   CONTINENTAL SHELF.  THE COURT REJECTED THE CLAIM.  THE D.C.

24   CIRCUIT, IT IS A 1995 OPINION, REJECTED THIS CLAIM STATING OR

25   EXPLAINING THAT WHILE THE INA IN GENERAL, IN GENERAL TERMS

1   DOES NOT APPLY BEYOND THE BORDERS OF THE CONTINENTAL UNITED

2   STATES, THE SITUATION IS MADE A LITTLE BIT MORE COMPLICATED

3   BECAUSE THE OUTER CONTINENTAL SHELF LANDS ACT DOES CONTAIN A

4   PROVISION THAT EXTENDS CERTAIN U. S. LAWS ONTO THE OCS, THE

5   OUTER CONTINENTAL SHELF. HOWEVER, THIS STATUTE, THE OUTER

6   CONTINENTAL SHELF LANDS ACT, WAS AMENDED IN 1978 TO INCLUDE A

7   CRITICAL PROVISION IN THIS LAWSUIT WHICH IS CALLED SECTION

8   1356 OF OXLA.  IT IS 43 U.S.C. 1356.  AND THAT SECTION IS THE

9   SO-CALLED CREWING AND MANNING REQUIREMENTS OF THE OUTER

10   CONTINENTAL SHELF LANDS ACT, WHICH SAYS IN GENERAL IT IS THE

11   CASE THAT AMERICAN OWNED, AMERICAN OPERATED VESSELS SHOULD BE

12   CREWED AND MANNED, THE REGULAR COMPLEMENT OF THE CREW SHOULD

13   BE AMERICANS, BUT THERE ARE MANY EXCEPTIONS TO THAT.

14        AND THESE EXCEPTIONS, THE COURT EXPLAINED AND THE

15   LEGISLATIVE HISTORY OF THE STATUTE EXPLAINS, WERE NECESSARY

16   BECAUSE AMERICAN COMPANIES AND SERVICE PROVIDERS DON'T JUST

17   PROVIDE THESE SERVICES OFFSHORE IN THE UNITED STATES.  WE DO

18   THIS ELSEWHERE IN THE WORLD.  AND CONGRESS WAS SENSITIVE TO

19   THAT WHEN ENACTING THE OUTER, THIS PROVISION OF THE OC, OF THE

20   OUTER CONTINENTAL SHELF LANDS ACT.

21        THERE ARE EXCEPTIONS AS A RESULT FOR FOREIGN OWNED AND

22   FOREIGN CONTROLLED VESSELS THAT ARE OPERATING ON THE SHELF.

23   THERE ARE EXCEPTIONS IN SITUATIONS WHERE THE NON-U.S. CITIZEN

24   IS NOT PART OF THE REGULAR COMPLEMENT OF THE CREW.  AND THERE

25   ARE EXCEPTIONS WHERE THERE IS A SHORTAGE OF QUALIFIED WORKERS,

1    AS IS THE CASE RIGHT NOW IN THE GULF OF MEXICO BECAUSE OF

2    THE --

3              THE COURT: SO HOW DO YOU DETERMINE ALL THOSE ISSUES

4    ON A MOTION TO DISMISS STAGE VERSUS PERHAPS SUMMARY JUDGMENT?

5              MR. MAINES: THE ONLY ISSUE THAT NEEDS TO BE OR THAT

6    CAN BE DECIDED ON THE MOTION TO DISMISS STAGE IS WHETHER OR

7    NOT THE INA APPLIES ON THE OUTER CONTINENTAL SHELF.  AND WHAT

8    THE D.C. CIRCUIT HELD IN THIS OPINION IS THAT IT DOES NOT

9    BECAUSE THE SPECIFIC PROVISIONS THAT ARE SET OUT IN SECTION

10   1356 OF OXLA TRUMP THE INA, AND THEREFORE, THE INA DOES NOT

11   APPLY ON THE OCS.  THAT WAS THE LOGIC OF THE D.C. CIRCUIT IN

12   THE JOURNEYMEN V. RENO CASE.

13       AND IN ADDITION, THE D.C. CIRCUIT RELIED SPECIFICALLY ON

14   AN OPINION OF THE GENERAL LEGAL COUNSEL OF THE DEPARTMENT OF

15   JUSTICE.  THIS OPINION IS ALSO CITED IN THE BRIEFS.  AND THIS

16   OPINION WAS WRITTEN BY THE DEPARTMENT OF JUSTICE IN RESPONSE

17   TO AN INQUIRY FROM THE GENERAL COUNSEL OF THE IMMIGRATION AND

18   NATURALIZATION SERVICE ASKING THIS VERY QUESTION IN 1979.  AND

19   WHAT THE DOJ WRITES IN THIS OPINION IS THAT SECTION 1356 IS

20   INTENDED TO BE, QUOTE, "A SELF CONTAINED STATEMENT OF THE

21   EXTENT TO WHICH PRINCIPLES OF IMMIGRATION CONTROL ARE TO BE

22   APPLIED ON THE OCS."  AND THE DOJ SPECIFICALLY CITES ALL OF

23   THE EXCEPTIONS TO THE STATUTE AND THE DOJ SPECIFICALLY

24   CONCLUDES, QUOTE, "WE CONCLUDE THAT CONGRESS IN ENACTING THE

25   1978 AMENDMENTS DID NOT INTEND THE IMMIGRATION AND NATIONALITY

1    ACT TO APPLY TO DRILLING RIGS ON THE OCS."

2         SO IT IS CLEAR THAT THE INA DOES NOT APPLY ON THE OCS.

3    NOW, THE PLAINTIFFS ATTEMPT TO GET AROUND THIS BY NOT SO MUCH

4    THE STATEMENTS THAT THEY MAKE IN THEIR COMPLAINT, BUT BY SOME

5    OF THE HYPOTHETICAL THEORIES THAT THEY HAVE ALLEGED IN THEIR

6    BRIEFING.  AND WHAT WE SEE HERE WHEN WE TAKE A STEP BACK IS

7    REALLY ATTENTION BETWEEN THE GENERAL RULES THAT APPLY ON

8    12(B)(6) MOTION PRACTICE.  PLAINTIFF CITES THE FAMILIAR RULE

9    THAT ALL THEY NEED DO IS ESTABLISH SOME THEORY OF THE FACTS

10   CONSISTENT WITH THE ALLEGATIONS OF THE COMPLAINT AND THE

11   MOTION SHOULD BE DENIED.  WE ARE ALL FAMILIAR WITH THAT RULE.

12   THE DEFENDANTS ALL CITE THE RULE THAT THE ALLEGATIONS HAVE TO

13   BE MORE THAN CONCLUSORY, AND THERE HAVE TO BE SOME SPECIFIC

14   FACTS THAT APPLY TO SUPPORT THE CLAIM.

15        THE PLAINTIFFS MISCITE THE RULE UPON WHICH THEY RELY.  IT

16   IS NOT ENOUGH TO MAKE A CONCLUSORY STATEMENT OF THE CLAIM OR

17   TO PLEAD THE CAUSE OF ACTION, AS THE COURTS SAY.  IT IS NOT

18   ENOUGH TO DO THAT.  THERE HAVE TO BE FACTS THAT ARE PLEADED IN

19   CONNECTION WITH THE CAUSE OF ACTION THAT IS PLEADED.  AND

20   THESE PLEADING REQUIREMENTS ARE HEIGHTENED IN THE RICO CONTEXT

21   UNDER ELLIOTT V. FOUFAS, WHICH MR. STUART WILL ADDRESS IN MORE

22   DETAIL WHEN IT COMES HIS TURN TO SPEAK.

23        BUT THIS MORPHING OF THE ALLEGATIONS OF ILLEGAL CONDUCT

24   ARE IMPORTANT BECAUSE WHILE THE COMPLAINT IS LIMITED TO

25   ALLEGATIONS OF VIOLATION OF THE INA, THE BRIEFING IS NOT.  IN

1   THE BRIEFING, WHILE THE PLAINTIFFS CONCEDE, I THINK, AND MAKE

2   CLEAR THAT WHAT THEY ARE COMPLAINING ABOUT IS LABOR ON THE

3   OUTER CONTINENTAL SHELF, WE SEE THAT IN PARAGRAPH 1.3 OF THE

4   COMPLAINT, IN PARAGRAPH 4.14, IN PARAGRAPH 4.19.  THERE IS

5   LITTLE QUESTION THAT WHAT THEY ARE COMPLAINING ABOUT IS

6   SERVICES AND LABOR PROVIDED ON THE OUTER CONTINENTAL SHELF.

7   BUT I THINK TACITLY RECOGNIZING THAT THE INA DOESN'T CAPTURE

8   THAT CONDUCT BECAUSE OF CASES LIKE JOURNEYMEN V. RENO AND THE

9   DOJ OPINION, THE ALLEGATIONS OF WRONGDOING IN THE BRIEFING

10  PROVIDED BY THE PLAINTIFFS CHANGES THE ILLEGAL CONDUCT THAT IS

11  ALLEGED.

12       AND SO WE SEE ALLEGATIONS, FOR INSTANCE, THAT THERE MIGHT

13  HAVE BEEN VISA FRAUD COMMITTED AT FOREIGN EMBASSIES ABROAD.

14  THERE MIGHT BE PROBLEMS WITH EXEMPTION LETTERS GRANTED TO

15  VESSELS WORKING ON THE SHELF, FOREIGN VESSELS WORKING ON THE

16  SHELF.  WE SEE VARIOUS HYPOTHETICAL EXAMPLES THAT ARE SET

17  FORTH IN THE PLAINTIFF'S --

18            THE COURT: NONE OF THOSE ARE CONTAINED IN THE

19  COMPLAINT YOU ARE SAYING?

20            MR. MAINES: THEY ARE CONTAINED IN THE BRIEFING, BUT

21  NOT IN THE COMPLAINT.

22            THE COURT: BUT NOT IN THE COMPLAINT.

23            MR. MAINES: AND THAT IS NOT ENOUGH TO SATISFY THE

24  REQUIREMENTS OF THE FEDERAL RULES WITH RESPECT TO PLEADING

25  REQUIREMENTS.  AND SIGNIFICANTLY, IT LEADS TO THE ISSUE OF

1   WHETHER OR NOT THE INJURY SUFFERED BY THE PLAINTIFFS IS

2   DIRECT, WHICH IS THE SECOND POINT THAT I AM GOING TO COVER

3   VERY BRIEFLY AND THEN I WILL TURN IT OVER TO MR. FOSTER TO LET

4   HIM RESPOND TO WHAT WE HAVE SAID SO FAR.

5        AS THE COURT KNOWS, ALL OF THE DEFENDANTS HAVE ASSERTED

6   THAT THERE IS NO DIRECT INJURY HERE.  AND, YOUR HONOR, THERE

7   IS A SPLIT IN THE CIRCUITS ON THIS POINT.  THIS IS NOT,

8   INCIDENTALLY, THE POINT THAT WENT TO THE SUPREME COURT IN THE

9   MOHAWK CASE.  THAT WAS THE ENTERPRISE ISSUE THAT UNFORTUNATELY

10  WASN'T DECIDED AND IS STILL GOING TO HAVE TO BE RESOLVED HERE.

11  THAT IS THE POINT THAT MR. STUART WILL SPEAK TO.

12       BUT THE SUPREME COURT DID DECIDE THE ANZA OPINION.  THE

13  PARTIES HAVE SUBMITTED BRIEFING ON ANZA.  I WON'T GO INTO THE

14  FACTS OF THE CASE, BUT ANZA REITERATES THE RULE THAT WAS

15  STATED IN SIPC V. HOLMES, THAT A RICO PLAINTIFF ONLY HAS THE

16  ABILITY TO ASSERT A CLAIM IF HE OR SHE CAN ASSERT A DIRECT

17  INJURY.  INDIRECT INJURIES ARE NOT SUFFICIENT.

18       AS I MENTIONED, THERE IS A SPLIT IN THE CIRCUITS ON THIS

19  POINT.  THE FIFTH CIRCUIT HAS NOT WRITTEN ON THIS ISSUE IN

20  THIS PARTICULAR CONTEXT OF AN EMPLOYER THAT HAS USED A CREWING

21  AND MANNING COMPANY AGENCY IN THIS CASE, OR AN EMPLOYMENT

22  AGENCY OR RECRUITING SERVICE IN SOME OF THE OTHER CASES THAT

23  HAVE BEEN CITED.  HOWEVER, THE SPILT IS PRETTY WELL DEFINED.

24  THE SEVENTH CIRCUIT IN BAKER V. IBP, AN OPINION WRITTEN BY

25  JUDGE EASTERBROOK, MAKES THE POINT THAT THIS WILL NOT MAKE A

1    RICO CLAIM.   THIS TYPE OF ALLEGATION DOES NOT MAKE A RICO

2    CLAIM.   AND AMONG OTHER THINGS, JUDGE EASTERBROOK WROTE

3    PRE-ANZA, INCIDENTALLY, THAT THERE WERE PROBLEMS SATISFYING

4    THE DIRECT INJURY REQUIREMENT OF SIPC V. HOLMES.

5         THERE IS A SECOND CIRCUIT CASE THAT ARGUABLY WOULD

6    SUPPORT THE PLAINTIFF'S POSITION IN THIS CASE.   IT IS CALLED

7    COMMERCIAL CLEANING, A SECOND CIRCUIT CASE.   BUT IT WAS A

8    CLAIM BROUGHT BY A COMPETITOR ALLEGING A RICO INJURY.   AND

9    UNDER ANZA I THINK IT IS HIGHLY DOUBTFUL THAT ANY -- THAT

10   COMMERCIAL CLEANING IS GOOD LAW ANY LONGER BECAUSE ANZA

11   EXPRESSLY RECOGNIZES THAT WHEN THE CLAIM IS BROUGHT BY A

12   COMPETITOR, THE INJURY IS INDIRECT AND WILL NOT SUFFICE AS A

13   MATTER OF LAW.

14      THERE ARE SEVERAL OTHER CIRCUIT CASES THAT RECOGNIZE THE

15   CLAIM THAT THE PLAINTIFFS ARE ASSERTING HERE CALLED

16   TROLLINGER, MENDOZA, AND MOHAWK, THE SIXTH, NINTH, AND

17   ELEVENTH CIRCUITS.   THE PLAINTIFF'S COUNSEL WAS INVOLVED IN

18   THESE CASES AND CAN SPEAK TO WHAT THOSE CASES SAY.   HOWEVER,

19   OUR VIEW IS THAT THE SEVENTH CIRCUIT IS THE BETTER VIEW.

20         THE COURT: MADE THE BETTER DECISION?

21         MR. MAINES: MADE THE BETTER DECISION AND WOULD

22   LIKELY BE FOLLOWED BY THE FIFTH CIRCUIT, WHICH IS A MORE

23   CONSERVATIVE COURT THAN THE SIXTH, NINTH, OR ELEVENTH RIGHT

24   NOW ANYWAY.

25         YOUR HONOR, THERE ARE OTHER REASONS WHY THE CASES LIKE

1    TROLLINGER AND MOHAWK DO NOT APPLY AND IT IS BECAUSE THEY ARE

2    DISTINGUISHABLE, AND I WILL BE BRIEF ON THIS. THEY ARE

3    DISTINGUISHABLE BECAUSE IN THOSE CASES THE PLAINTIFFS ARE --

4    THERE IS ONE EMPLOYER AND THERE IS ONE RECRUITING COMPANY,

5    AND THE PLAINTIFFS ARE LEGAL WORKERS WHO ARE EMPLOYED AT A

6    PARTICULAR FACILITY WHO CLAIM THAT THEIR WAGES HAVE BEEN

7    DEPRESSED.  AND BY PARTICULAR FACILITY, I MEAN A CARPET PLANT

8    OR A TILE PLANT, ONE PARTICULAR FACILITY.  THAT IS TOTALLY

9    DIFFERENT THAN WHAT THE PLAINTIFFS ARE ALLEGING IN THIS CASE.

10        IN THIS CASE WHAT THEY ARE ALLEGING IS THAT EACH OF THE

11   SERVICE DEFENDANTS, WHO INCIDENTALLY ARE ALL INVOLVED IN

12   DIFFERENT LINES OF BUSINESS IN THE OFFSHORE.  MY CLIENT IS A

13   SUBSIDY CONSTRUCTION BUSINESS.  OTHER COMPANIES OWN AND

14   OPERATE VESSELS.  OTHER COMPANIES PROVIDE CONSTRUCTION

15   SERVICES ABOVE THE WATER.  WE ARE CALLED THE SERVICE

16   DEFENDANTS, BUT WE ARE ALL DOING DIFFERENT THINGS ON THE OUTER

17   CONTINENTAL SHELF AND AROUND THE WORLD.

18        WHAT THE PLAINTIFFS ARE SAYING IN THIS CASE IS THAT EACH

19   OF THE SERVICE DEFENDANTS HAVE ENTERED INTO, HAVE ENTERED INTO

20   ILLEGAL AGREEMENTS WITH ALL OF THE EIGHT DIFFERENT CREWING AND

21   MANNING COMPANIES, AND THAT THAT HASN'T HAPPENED JUST ONE TIME

22   BUT THAT IT HAS HAPPENED TEN TIMES.  THAT IS THE CLAIM THEY

23   ARE MAKING.

24        NOW, THE RESULT OF THAT, THEY SAY, IS THAT THAT HAS

25   DEPRESSED WAGES FOR WORKERS, WHO BUT FOR THIS PRESUMABLY WOULD

1   BE ABLE TO GO ELSEWHERE TO WORK.  SOMEBODY WHO IS WORKING FOR

2   MY COMPANY THAT IS UNSATISFIED WITH THEIR WAGES HAS PLENTY OF

3   OPPORTUNITIES RIGHT NOW IN THE GULF OF MEXICO TO FIND A HIGHER

4   PAYING JOB.  SO WHAT THEY HAVE TO BE SAYING IN ORDER TO MAKE

5   THIS CLAIM IS THAT WE HAVE AFFECTED THE PRICE FOR WAGES IN THE

6   GULF OF MEXICO OR ON THE OFFSHORE, OUTER CONTINENTAL SHELF,

7   UNITED STATES AS A WHOLE, AND THAT THEY HAVE SUFFERED INJURY

8   AS A RESULT.  THAT IS WHAT MAKES THEIR CLAIM INDIRECT, AS

9   OPPOSED TO DIRECT.  AND THAT IS AN ISSUE THAT CAN BE RESOLVED

10  ON A MOTION TO DISMISS.

11      ONE FINAL POINT AND THEN I WILL SIT DOWN, YOUR HONOR.  IT

12  WOULDN'T BE ENOUGH AT THIS POINT TO SAY LET'S LET THE

13  PLAINTIFFS REPLEAD ONE MORE TIME.  FIRST OF ALL, WHILE WE ARE

14  HERE ON THE THIRD AMENDED COMPLAINT, THERE WERE TWO IDENTICAL

15  COMPLAINTS THAT WERE FILED BEFORE THIS PARTICULAR CASE.  SO WE

16  ARE ACTUALLY NOW ON THE FIFTH COMPLAINT.  THE PLAINTIFFS HAVE

17  HAD MULTIPLE OPPORTUNITIES TO PLEAD THIS CASE.  FOR THAT

18  REASON, THEY SHOULDN'T BE ALLOWED ONE MORE TIME.

19      BUT THERE IS A MORE SUBSTANTIVE REASON WHY IT DOESN'T

20  MAKE SENSE TO ALLOW REPLEADING OF THESE TO ADDRESS THESE

21  ISSUES, AND THAT IS BECAUSE THE WAY, THE ONLY WAY THAT THEY

22  GET AROUND THESE ISSUES, SPECIFICALLY THE ISSUE THAT THE INA

23  DOES NOT APPLY ON THE OUTER CONTINENTAL SHELF, IS BY CREATING

24  THESE HYPOTHETICAL FACT PATTERNS ABOUT VISA FRAUD, OR

25  MISREPRESENTATIONS TO EMBASSIES, OR ILLEGALLY BRINGING PEOPLE

1    IN TO THE UNITED STATES AND THEN TRANSPORTING THEM ON TO THE

2    OUTER CONTINENTAL SHELF.  EACH OF THOSE CLAIMS ONLY MAKES THE

3    PROXIMATE CAUSE AND DIRECT INJURY REQUIREMENTS OF ANZA AND

4    SIPC V. HOLMES MORE ATTENUATED.  IN OTHER WORDS, IF GIVEN AN

5    OPPORTUNITY TO AMEND TO ADDRESS THESE PROBLEMS, THE

6    REQUIREMENT OF DIRECT INJURY IS ONLY GOING TO BE MORE

7    ATTENUATED THAN IT ALREADY IS, AND IT IS OUR POSITION THAT IT

8    IS ALREADY TOO ATTENUATED TO MEET THE REQUIREMENTS THAT ARE

9    REQUIRED BY THE SUPREME COURT'S DECISION IN ANZA AND SIPC V.

10   HOLMES.

11       ONE FINAL POINT, YOUR HONOR, TO DISTINGUISH THE OTHER

12   CASES THAT THE PLAINTIFFS HAVE RELIED UPON.  IN EACH OF THOSE

13   CASES WHAT THE BASIC ALLEGATION IS, IS THAT THE EMPLOYER HAS

14   USED RECRUITING COMPANIES TO HIRE ILLEGAL WORKERS.  FOR

15   EXAMPLE, IN THE MOHAWK CASE, THE ALLEGATION WAS THE RECRUITING

16   COMPANY ACTUALLY CAME TO TEXAS AND RECRUITED ILLEGAL ALIENS TO

17   COME WORK IN A CARPET FACTORY IN THE SOUTHEAST.  THAT IS

18   ABSOLUTELY NOT WHAT IS HAPPENING HERE.

19       IN THIS CASE THE FOREIGN WORKERS THAT ARE INVOLVED ARE

20   INDIVIDUALS WHO ARE CAPABLE UNDER SECTION 1356 OF WORKING ON

21   THE OUTER CONTINENTAL SHELF.  AND THAT IS ANOTHER FACT THAT

22   MAKES THOSE CASES DISTINGUISHABLE FROM WHAT WE SEE IN THESE

23   OTHER LAWSUITS THAT PLAINTIFF'S COUNSEL HAS BEEN INVOLVED.

24       SO WITH THAT, YOUR HONOR, UNLESS THE COURT HAS ANY

25   QUESTIONS, I WILL SIT DOWN.

1          THE COURT: NOT NOW.  RESPONSE ON THOSE ISSUES?

2          MR. MAINES: THANK YOU VERY MUCH, YOUR HONOR.

3          THE COURT: THANK YOU.

4          MR. SPAGNOLETTI: JUDGE, IF IT PLEASES THE COURT, I

5   AM GOING TO ADDRESS ONE PART REGARDING THE INA AND MR. FOSTER

6   WILL ADDRESS THE OTHER PART CONCERNING THE RICO ASPECT.

7          THANK YOU, YOUR HONOR, IF I COULD, I WOULD LIKE TO TAKE A

8   MINUTE TO PLACE THIS CASE INTO CONTEXT.  I HAVE A NAME FOR

9   THIS CASE. I THINK IT WAS EVEN STATED PERHAPS IN THE PLEADING,

10  IF IT WASN'T I WILL STATE IT NOW.  THIS CASE IS, I GUESS, CAN

11  BE BEST SUMMARIZED AS THE INVASION OF THE OUT-SOURCED WORKERS,

12  BECAUSE WHAT THIS CASE INVOLVES IS THE IMPORTATION OF WORKERS.

13  AND I AM NOT TALKING ABOUT OUR SOUTHERN FRIENDS WHO ARE

14  CROSSING OUR BORDER AND COMING OVER AND MAYBE CLAIMING SOME

15  LAND BACK THAT THEY ONCE OWNED.  I AM TALKING ABOUT BRINGING

16  PEOPLE IN.

17         WHAT THE FACTS IN THIS CASE WILL SHOW, YOU KNOW, WHEN THE

18  DISCOVERY IS DONE IN THIS MATTER, THE FACTS IN THIS CASE WILL

19  SHOW THAT THESE WORKERS ARE COMING FROM MALAYSIA, THAILAND,

20  AND INDONESIA.  AND THE CRITICAL POINT, I GUESS, THAT WOULD BE

21  PRESENTED HERE IS WELL, WHAT DOES THAT HAVE TO DO WITH OUR

22  MOTIONS TO DISMISS?  BUT IN THAT CONTEXT WHAT HAS TO BE KEPT

23  IN MIND IS THAT IT IS NOT A BLANKET STATEMENT, AND IT IS

24  WRONG, AND THESE DEFENDANTS KNOW THIS, TO SAY THAT THE OUTER

25  CONTINENTAL SHELF LANDS ACT SOMEHOW DEPRIVES THE APPLICATION

1   OF THE INA.  IT WOULD BE PATENTLY ABSURD INDEED IN THESE DAYS

2   AND TIMES, GIVEN OUR HOMELAND SECURITY, TO EVEN SUGGEST THAT.

3   THE COURT MAY TAKE JUDICIAL NOTICE OF THE FACT THAT RECENT LAW

4   HAS BEEN PASSED BY CONGRESS WHICH IS EVEN GOING TO REQUIRE

5   AMERICAN WORKERS TO HAVE PASSPORTS IN ORDER TO GO TO WORK

6   OFFSHORE ON THE OUTER CONTINENTAL SHELF BECAUSE OF OUR

7   NATIONAL SECURITY ISSUES.

8       YET IF THE POSITION OF THIS DEFENDANT IS ADOPTED BY THIS

9   COURT, AND INDEED WERE TO BE ADOPTED EVEN BY THIS CIRCUIT,

10  WHAT THESE DEFENDANTS WOULD BE SAYING IS THAT YOU CAN BRING IN

11  WORKERS FROM INDONESIA, THAILAND, THE PHILIPPINES WITH NO

12  VISAS, WITH NO INA OVERSIGHT, AND PUT THEM TO WORK ON THE

13  STRATEGIC RESOURCE OF THE OUTER CONTINENTAL SHELF OF THE

14  UNITED STATES.  THAT CANNOT BE WHAT THE LAW SAYS.  IT IS NOT

15  WHAT --

16          THE COURT: WHAT ABOUT THE D.C. CIRCUIT CASE THAT WAS

17  MENTIONED?

18          MR. SPAGNOLETTI: I AM GOING TO DISTINGUISH THAT.  I

19  WILL ADDRESS IT NOW, IN FACT.  IF YOU LOOK AT THAT CASE AND

20  ACTUALLY READ IT, AND AGAIN, THESE DEFENDANTS KNOW THAT.

21          THE COURT: I PROMISE TO READ IT.  I WILL ADMIT I

22  HAVEN'T READ IT YET BUT -

23          MR. SPAGNOLETTI: NO, JUDGE, I'M SORRY, I KNOW YOU

24  WILL READ IT, PROBABLY WITH A BETTER EYE THAN I HAVE.  BUT IF

25  YOU LOOK AT THAT CASE, WHAT IT ACTUALLY IS TALKING ABOUT IS A

1   COMPANY CALLED HEEREMA.  AND HEEREMA BROUGHT A VESSEL OVER

2   FROM EUROPE TO THE GULF OF MEXICO AND PUT THE VESSEL TO WORK

3   IN THE GULF OF MEXICO.  NOW, WHAT IS THE KEY POINT ABOUT THAT?

4   UNDER THAT FACT PATTERN THERE WAS NEVER ANY -- FIRST OF ALL,

5   THEY WERE A FOREIGN COMPANY.  SECOND OF ALL, THEY HAD A

6   FOREIGN CREW.  IN THIS CASE WE HAVE SUED AMERICAN COMPANIES.

7   THERE ARE NO FOREIGN COMPANIES, EXCEPT FOR THE MANNING COMPANY

8   HUMARES.

9           THE COURT: WAS THERE ANY ALLEGATION IN YOUR

10  COMPLAINT THAT THESE ILLEGAL WORKERS HAVE ACTUALLY ENTERED THE

11  UNITED STATES?

12          MR. SPAGNOLETTI: NO, JUDGE, THERE IS NO ALLEGATION

13  AS TO THAT, BUT THEN WE DIDN'T BELIEVE THAT WE HAD TO MAKE

14  SUCH AN ALLEGATION BECAUSE THE INA APPLIES.  IN THIS

15  PARTICULAR CASE, THE CASE THAT WAS CITED BY THE DEFENDANTS,

16  THE COURT SPECIFICALLY STATED THAT THE CONTINENTAL SHELF, IN

17  THAT CASE THEY STATED THAT OXLA DIDN'T APPLY BECAUSE THERE WAS

18  NEVER ANY ENTRY INTO THE UNITED STATES, AS THE COURT POINTS

19  OUT, BY THESE WORKERS.

20          IN OUR PARTICULAR CASE THE FACTS WILL SHOW, WE BELIEVE

21  WHEN WE GET BY THIS MOTION TO DISMISS, IF THE COURT WERE TO

22  RULE IN OUR FAVOR, THAT IN FACT THERE IS ENTRY INTO THE UNITED

23  STATES.  DEPENDING UPON WHAT THE DISCOVERY SHOWS IN THIS CASE,

24  THE INA, EVEN IF YOU WERE TO ADOPT THAT IN SOME CIRCUMSTANCES

25  THE INA WOULDN'T APPLY, THEREFORE FOLLOWING THE CASE OUT OF

1   THE D.C. CIRCUIT, IN SOME CASES THE INA MAY APPLY.  IN

2   CIRCUMSTANCES WHERE THESE WORKERS ACTUALLY COME TO THE UNITED

3   STATES, ENTER THROUGH THE PORT OF HOUSTON, AND THAT IS AT THE

4   CUSTOMS IN THE PORT OF HOUSTON, ENTER THROUGH NEW ORLEANS, ARE

5   PUT ON BUSES AND TAKEN TO VESSELS THAT ARE IN PORTS IN THE

6   UNITED STATES.

7           THE COURT: IS THAT AN ASSUMPTION OF WHAT YOU THINK

8   TAKES PLACE OR IS THAT A –

9           MR. SPAGNOLETTI: THAT IS WHAT I BELIEVE TAKES PLACE,

10  JUDGE, BUT YOU KNOW, WE HAVEN'T DONE THE DISCOVERY IN THIS

11  CASE.  BUT THAT IS, IN FACT, I MEAN, WE DO HAVE A GOOD IDEA AS

12  TO THAT BECAUSE WE HAVE GOTTEN SOME INFORMATION IN OTHER CASES

13  NOT INVOLVING THIS PARTICULAR ISSUE.

14     AND WHAT HAPPENS IS THESE WORKERS ARE LOADED ONBOARD

15  VESSELS ENTER -- BECAUSE ONE OF THE THINGS IS THESE WORKERS

16  ACTUALLY GET VISAS.  THEY GO TO FOREIGN EMBASSIES TO GET VISAS

17  WITH THE AID OF THESE DEFENDANTS AND THEN COME TO THE UNITED

18  STATES, ENTER THE UNITED STATES, AND THEN ARE LOADED ON

19  VESSELS AND TRANSPORTED TO THE OUTER CONTINENTAL SHELF.

20          UNDER THAT FACT PATTERN, INDEED THERE COULD BE NO

21  QUESTION BUT THAT THE INA WOULD APPLY.  OTHERWISE, WE WOULD BE

22  SAYING THAT PEOPLE CAN PRESENT THEMSELVES AT THE U. S. CUSTOMS

23  POINT OF ENTRY WITH NO VISA AND SIMPLY SAY: I AM GOING TO WORK

24  ON THE OUTER CONTINENTAL SHELF AND I HAVE IMMUNITY FROM

25  PASSING ANY VISA REQUIREMENTS, REGARDLESS OF WHAT MY HISTORY

1   HAS BEEN IN MY FOREIGN COUNTY.

2        MANY OF THESE COUNTRIES ARE ON TERRORIST WATCH LISTS.

3   AND YET THAT WOULD BE THE KIND OF ABSURDITY THAT THESE

4   DEFENDANTS WOULD SUGGEST TO THE COURT UNDER THE GUISE OF THIS

5   CASE THAT DEALT WITH A VESSEL THAT TRANSITED THE OCEAN AND

6   WENT TO WORK OVER THE SEAS IN THE OUTER CONTINENTAL SHELF

7   WITHOUT EVER PRESENTING ITSELF IN A U. S. PORT OR BRINGING ITS

8   CREW MEMBERS INTO A U. S. PORT.

9        THERE IS NO -- AND, IN FACT, THE COURT ADDRESSES THAT

10  ITSELF IN THE OPINION.  THEY TALK IN TERMS OF ENTERING THE

11  UNITED STATES AND THE DEFINITION OF ENTERING UNDER THE INA.

12  OUR CITING, WE BELIEVE, OF THE INA AS A PREDICATE ACT INCLUDES

13  THE STATUTE AS A WHOLE, WHICH INCLUDES ITS DEFINITIONS OF

14  ENTERING.

15          THE COURT: WHAT DOES ENTRY MEAN UNDER THE ACT?  I

16  WAS READING SECTION 1324(A)(1), (A)(3) THAT REQUIRES ILLEGAL

17  ENTRY AND THEN 1324(A)(1), (A)(4), WHICH IS DOING A CRIME TO

18  ENCOURAGE AN ILLEGAL WORKER TO ENTER OR RESIDE IN THE U. S.

19          MR. SPAGNOLETTI: AS RELIED UPON IN THE OPINION,

20  JUDGE, THE COURT CITES ENTRY AS A TERM OF ART IN THE

21  IMMIGRATION LAW AND CITING A CASE OF ROSENBERG V. FLEUTI, 374

22  U.S. 449.  AND THEN IT GOES ON TO SAY THE IMMIGRATION AND

23  NATIONALITY ACT DEFINES ENTRY TO MEAN ANY COMING OF AN ALIEN

24  INTO THE UNITED STATES FROM A FOREIGN PORT OR PLACE.  UNITED

25  STATES, WHEN USED IN THIS GEOGRAPHICAL SENSE, MEANS THE

1   CONTINENTAL UNITED STATES, ALASKA, HAWAII, PUERTO RICO, GUAM,

2   VIRGIN ISLANDS OF THE UNITED STATES.  THE TERM CONTINENTAL

3   UNITED STATES, AND THEN THEY DEFINE THAT.

4       NOW, WHAT THAT MEANS IS IN THIS CONTEXT SHOULD THEY COME

5   INTO THE PORT IN THE UNITED STATES AND ACTUALLY MAKE AN ENTRY,

6   THEREBY PRESENTING THEMSELVES TO THE U. S. CUSTOMS SERVICE, IF

7   THEY HAVE UNDER A FACT PATTERN WHICH WILL BE DEVELOPED DURING

8   DISCOVERY, ILLEGAL -- MISREPRESENTED THEIR VISA REQUIREMENTS

9   AND THEN OBTAINED THESE VISAS UNDER THOSE CIRCUMSTANCES, THEY

10  THEN PRESENT TO A U. S. CUSTOM SERVICE, AND BECAUSE THEY ARE

11  GOING TO WORK ON THE OUTER CONTINENTAL SHELF, THE IMMIGRATION

12  ACT DOESN'T APPLY TO THEM.  IT CANNOT BE THE WAY THE LAW

13  SHOULD BE INTERPRETED.

14      AND THERE IS NOTHING IN THE OCSLA THAT PRECLUDES THE

15  APPLICATION OF THE INA.  INDEED, THERE IS A NINTH CIRCUIT CASE

16  WHICH IS STYLED PILE DRIVERS LOCAL UNION V. SMITH, WHICH CAME

17  TO THE OPPOSITE CONCLUSION OF THE D. C. CASE.  AND IT

18  BASICALLY SAID WE WILL NOT LIGHTLY INFER THAT CONGRESS

19  INTENDED TO REMOVE THE GENERAL APPLICABILITY OF THE INA TO THE

20  OUTER CONTINENTAL SHELF.  WE SEE NO IRRECONCILABLE CONFLICT

21  BETWEEN SECTION 1356 AND THE INA.  WE MUST READ THE STATUTES

22  TO GIVE EFFECT TO EACH, IF WE CAN DO SO WHILE PRESERVING THEIR

23  SENSE OF PURPOSE.

24      THERE IS NO DOUBT THAT THESE STATUTES ARE CONSISTENT. AND

25  IN THESE DAYS AND TIMES EVEN MORE SO ARE THEY CONSISTENT THAT

1  WE SHOULD PROTECT THE APPLICATION OF THE INA TO WORKERS GOING

2  TO WORK ON THE OUTER CONTINENTAL SHELF.  UNDER THESE

3  CIRCUMSTANCES, JUDGE, WE HAVE PLED PROPERLY THE APPLICATION OF

4  THE INA.  THE INA APPLIES, IF YOU FOLLOW THE NINTH CIRCUIT

5  CASE, APPLIES GENERALLY TO THE OUTER CONTINENTAL SHELF.

6      BUT EVEN IF YOU TAKE THE MORE NARROW READING OF IT TRYING

7  TO RECONCILE THE D. C. CASE, UNDER THE FACT PATTERN PRESENTED

8  IN THE D. C. CASE WHERE A VESSEL COMES OVER THE OUTER

9  CONTINENTAL SHELF BUT NEVER ENTERS THE U. S. PORT, THE COURT

10  DECIDED ITS DECISION ON THAT BASIS.  BUT IN THIS PARTICULAR

11  CASE, THERE ARE FACT PATTERNS THAT THE COURT, AGAIN ON A

12  MOTION TO DISMISS, SHOULD GIVE US THE BENEFIT OF ANY FACT

13  PATTERN.  THERE ARE FACT PATTERNS WHERE THERE IS NO QUESTION

14  BUT THAT THE INA MUST APPLY.  OTHERWISE, WE WOULD BE GIVING

15  IMMUNITY TO PEOPLE WHO MAY HAVE MISREPRESENTED THEIR VISA

16  APPLICATIONS IN THEIR FOREIGN COUNTRIES AND TO THE U.S.

17  CONSULATE.  IT CANNOT BE THAT THE INA DOESN'T APPLY UNDER

18  THESE CIRCUMSTANCES.

19      AND I WILL DEFER TO HOWARD FOSTER WITH REGARD TO THE

20  OTHER RICO ISSUE. SINCE HE WAS THE ONE WHO ARGUED THE MOHAWK

21  CASE, HE CAN ADDRESS THAT.  THANK YOU, YOUR HONOR.

22      MR. FOSTER: THANK YOU, YOUR HONOR.  I AM HOWARD

23  FOSTER FOR THE PLAINTIFFS.  AND AT THIS POINT I WOULD JUST

24  LIKE TO ADDRESS WHAT MR. MAINES HAS ADDRESSED THUS FAR IN THE

25  RICO ARGUMENT, WHICH IS THE QUESTION OF PROXIMATE CAUSATION.

1      ACCORDING TO MR. MAINES, THERE IS A CIRCUIT SPLIT ON THIS

2    ISSUE OF PROXIMATE CAUSATION.  HE SAYS THE SEVENTH CIRCUIT,

3    WRITTEN BY JUDGE EASTERBROOK, HAS DECIDED THERE WAS NO

4    PROXIMATE CAUSATION STATED IN THE IBP, BAKER V. IBP CASE.

5    THAT'S WRONG.  THE SEVENTH CIRCUIT SPECIFICALLY SAID IT DID

6    NOT ADDRESS THE ISSUE OF PROXIMATE CAUSATION.  IT WAS NOT

7    NECESSARY TO CREATE A CIRCUIT SPLIT AS TO THAT ISSUE.  IT DID

8    SPLIT AS TO THE ENTERPRISE ISSUE, WHETHER A PROPER RICO

9    ENTERPRISE WAS PLEADED IN THAT CASE, AND THE SPLIT WAS OVER

10   THE RICO ENTERPRISE QUESTION.  AND SINCE THAT HASN'T BEEN

11   BROUGHT UP HERE YET, I AM NOT GOING TO ADDRESS THE RICO

12   ENTERPRISE.

13      I WILL JUST SAY VERY BRIEFLY AS TO PROXIMATE CAUSATION,

14   WE NOW HAVE FOUR CIRCUITS THAT HAVE HELD THE EXACT SAME

15   ALLEGATIONS AS ALLEGED HERE HAVE STATED A CLAIM FOR WAGE

16   DEPRESSION AND THAT CLAIM IS DIRECTLY AND PROXIMATELY CAUSED,

17   AS ALLEGED AT THE PLEADING STAGE, BY THE EMPLOYMENT OF ILLEGAL

18   IMMIGRANTS FOR WAGE DEPRESSION.

19      MOST RECENTLY THE ELEVENTH CIRCUIT IN THE MOHAWK CASE

20   REINSTATED ITS PRIOR DECISION, WHICH WE HAVE ADVISED THE COURT

21   OF ON SEPTEMBER 27TH.  I DON'T NEED TO RESTATE WHAT HAS

22   ALREADY BEEN STATED.  THERE IS NO CIRCUIT SPLIT AS TO THAT

23   QUESTION, AND A DISTRICT COURT IN THE TROLLINGER V. TYSON CASE

24   CERTIFIED THE TYSON CASE AS A CLASS ACTION, BRUSHING ASIDE THE

25   SAME CRITICISMS THAT THE WAGE DEPRESSION THEORY WAS NOT

1    PROXIMATELY CAUSED BY HIRING ILLEGAL IMMIGRANTS.  THAT

2    DECISION IS AVAILABLE ON WESTLAW AND LEXIS AS WELL.

3            THE COURT: WHICH DISTRICT COURT WAS THAT?

4            MR. FOSTER: THAT WAS THE EASTERN DISTRICT OF

5    TENNESSEE, CHIEF JUDGE CURTIS COLLIER.  AND A COUPLE OF OTHER

6    POINTS THAT MR. MAINES MAKES ARE ALSO INACCURATE.  HE SAYS

7    THAT THIS CASE IS DIFFERENT AS ALLEGED IN THE OTHER CASES

8    BECAUSE IT ALLEGEDLY ASSERTS DEPRESSION ON THE WHOLE OUTER

9    CONTINENTAL SHELF.  AND BECAUSE THAT SEEMS TO BE WHERE HE SAYS

10   A BROADER GEOGRAPHIC AREA, THEREFORE, IT DOESN'T STATE A CAUSE

11   OF ACTION AND THAT MAKES IT SOMEHOW INDIRECT.

12       THE COMPLAINT DOES NOT ALLEGE THAT THIS CAUSES WAGE

13   DEPRESSION ON THE WHOLE OUTER CONTINENTAL SHELF OR IN ANY

14   SPECIFIC GEOGRAPHIC AREA.  IT IS NOT REQUIRED TO.  IT SAYS THE

15   PLAINTIFFS HAVE HAD THEIR WAGES DEPRESSED BY WORKING FOR

16   DEPRESSED WAGE RATES, WHICH WERE BROUGHT ABOUT BY HIRING

17   ILLEGAL IMMIGRANTS ON THESE PARTICULAR SITES.

18       MR. MAINES ALSO INCORRECTLY SAYS THAT THE FACT THAT THE

19   DEFENDANTS ARE ALLEGED TO HAVE AGREEMENTS WITH SEVERAL

20   DIFFERENT MANNING COMPANIES FOR EMPLOYMENT OF WORKERS AT

21   DIFFERENT LOCATIONS DISTINGUISHES THIS CASE FROM THE PREVIOUS

22   CASES.  THAT ALSO IS NOT CORRECT.  IN THE TROLLINGER V. TYSON

23   CASE, THE PLAINTIFFS ALLEGED THAT TYSON FOODS EMPLOYED ILLEGAL

24   IMMIGRANTS AT EIGHT DIFFERENT CHICKEN PLANTS AND THAT THE

25   ILLEGAL IMMIGRANTS WERE RECRUITED BY DIFFERENT EMPLOYMENT

1    RECRUITING FIRMS AT EACH OF THE EIGHT LOCATIONS.  UPHELD BY

2    THE SIXTH CIRCUIT.  CERTIFIED AS A CLASS ACTION.  MUCH THE

3    SAME ALLEGATIONS WERE MADE IN THE MOHAWK CASE.

4         IN CONCLUSION, THE ALLEGATIONS THAT HAVE BEEN MADE HERE

5    HAVE BEEN UPHELD BY EVERY COURT OF APPEALS IN EVERY DISTRICT,

6    OR BY EVERY COURT OF APPEALS TO ADDRESS THIS.  IN CONTEXT OF

7    SUPREME COURT AUTHORITY, HOLMES, AND MOST RECENTLY THE ANZA

8    DECISION, WHICH DOES NOT CHANGE THE ANALYSIS UNDER HOLMES, AND

9    FOR THESE REASONS WE URGE THE COURT TO DENY THE MOTION TO

10   DISMISS, WHICH IS ASSERTED, TO THE EXTENT IT IS ASSERTED ON

11   THE PROXIMATE CAUSATION OF THE INJURY.  AND I THANK THE COURT

12   TO THIS EXTENT.

13            THE COURT: REPLY COMMENTS?

14            MR. MAINES: JUST VERY BRIEFLY, JUDGE FOLSOM.  FIRST,

15   WITH RESPECT TO MR. SPAGNOLETTI'S DISCUSSION OF JOURNEYMEN V.

16   RENO AND HIS STATEMENT THAT, I THINK I WROTE THIS DOWN

17   CORRECTLY, THERE WOULD BE NO QUESTION THAT THE INA WOULD APPLY

18   BECAUSE THE WORKERS TRANSIT THROUGH THE UNITED STATES.  THAT

19   POINT IS SPECIFICALLY ADDRESSED AND REJECTED BY THE RENO COURT

20   IN FOOTNOTE 1.

21        SECOND, WITH RESPECT TO THE ARGUMENT THAT WE ARE WRONG

22   BECAUSE THE EXCEPTIONS OF SECTION 1356 ONLY APPLY TO FOREIGN

23   OWNED, FOREIGN CONTROLLED VESSELS, I REFER THE COURT AGAIN

24   BACK TO THE DEPARTMENT OF JUSTICE'S OPINION OF THE OFFICE OF

25   THE LEGAL COUNSEL IN DIRECT RESPONSE TO AN INQUIRY FROM THE

1   GENERAL COUNSEL OF THE IMMIGRATION AND NATURALIZATION SERVICE.

2   THERE IS ABSOLUTELY NO LIMITATION IN THE OPINION TO FOREIGN

3   OWNED, FOREIGN CONTROLLED VESSELS.

4       THIRD, AND I WAS REMISS IN NOT MENTIONING THIS DURING MY

5   OPENING PRESENTATION, JUDGE FOLSOM, BUT JUST TO BRING HOME THE

6   POINT THAT 1356 OF OXLA TRUMPS THE INA, CONGRESS JUST LAST

7   YEAR, AND THIS IS CITED IN THE BRIEFS BY THE PARTIES IN -- THE

8   HOUSE HAS PROPOSED LEGISLATION THAT THAT WOULD CHANGE SECTION

9   1356 SO THAT IT DOES NOT TRUMP THE INA.  THAT LEGISLATION IS

10  SET OUT.  THE PROPOSED LEGISLATION, THE HOUSE VERSION OF THE

11  BILL WAS NOT SIGNED INTO LAW, OF COURSE, BUT THE HOUSE VERSION

12  OF THE BILL IS CONTAINED IN HR 4761, WHICH IS CITED IN OUR

13  BRIEFS.  CONGRESS DOESN'T GO AROUND MAKING LEGISLATION TO CURE

14  -- TO FIX A PROBLEM THAT DOESN'T EXIST ALREADY.  IN OTHER

15  WORDS, THIS STATUTE MAKES IT CLEAR THAT RIGHT NOW SECTION 1356

16  DOES TRUMP THE INA.

17      AND THE LAST POINT, YOUR HONOR, JUST TWO FINAL POINTS

18  VERY QUICKLY.  THE PILE DRIVERS CASE THAT MR. SPAGNOLETTI

19  REFERRED TO, IT PLAINLY DOES SAY, THE COURT SAYS, QUOTE: "WE

20  HOLD THAT THE FOREIGN OWNERSHIP EXCEPTION IS APPLICABLE HERE."

21  THEY GOT THERE FOR DIFFERENT REASONS, BUT THEY REACHED THE

22  VERY SAME RESULT THAT THE D. C. CIRCUIT DID IN JOURNEYMEN V.

23  RENO.

24      AND FINALLY WITH RESPECT TO THE LAST STATEMENT MADE THAT

25  THE PLAINTIFFS ARE NOT COMPLAINING ABOUT WAGE DEPRESSION IN

1   THE GULF GENERALLY OR ON THE SHELF GENERALLY, WE REFER THE

2   COURT TO PARAGRAPH 1.3 OF THE THIRD AMENDED COMPLAINT IN WHICH

3   THE PLAINTIFFS ALLEGE. QUOTE: "SPECIFICALLY THE SERVICE

4   DEFENDANTS ILLEGALLY DEPRESSED THE WAGES PAID TO THEIR

5   EMPLOYEES WHO WORK ON VESSELS, RIGS, PLATFORMS, AND OTHER

6   VEHICLES OR STRUCTURES ON THE OUTER CONTINENTAL SHELF OF THE

7   UNITED STATES, INCLUDING THE GULF OF MEXICO, BY EMPLOYING

8   LARGE NUMBERS OF ILLEGAL WORKERS TO PERFORM THE WORK OF THE

9   SERVICE DEFENDANTS."  AND THIS IS WHAT THEY DEFINE.  THAT IS

10  THEIR DEFINITION OF THE ILLEGAL WORKER HIRING SCHEME, AND THAT

11  IS THE ESSENCE OF THEIR COMPLAINT, JUDGE FOLSOM.  THANK YOU,

12  YOUR HONOR.

13         THE COURT: I FAILED TO ASK, YOU FAILED TO MENTION

14  ABOUT THE OPINION OF COUNSEL.  ANY COMMENTS ON THAT, THE INA

15  OPINION OF COUNSEL?

16         MR. SPAGNOLETTI: THE OPINION OF THE DOJ.  NO, JUDGE.

17  THAT OPINION OF THE DOJ I THINK WAS READ IN THE CONTEXT OF

18  TRYING TO DEAL WITH THE CIRCUMSTANCE WHERE THESE VESSELS WOULD

19  ARRIVE AT OVER THE CONTINENTAL SHELF.  YOU SEE, THEY TRIED TO

20  MIX, THE DEFENDANTS HERE ARE MIXING AND MATCHING BY TALKING

21  ABOUT VESSELS THAT ARE FOREIGN OWNED AND FOREIGN CONTROLLED.

22  THERE IS NO QUESTION BUT THAT THERE ARE SOMETIMES EXCEPTIONS

23  FOR AMERICAN OWNED VESSELS TO USE FOREIGNERS IN DISCRETE

24  CIRCUMSTANCES, BUT THEY HAVE TO MAKE AN APPLICATION.  THEY

25  HAVE TO GO TO THE DEPARTMENT OF LABOR.  THEY HAVE TO DO A

1  PUBLICATION THAT MAKES THE JOBS AVAILABLE TO AMERICAN WORKERS.

2  AND THEN IF THE COAST GUARD APPROVES IT, THEN THEY CAN GET AN

3  EXCEPTION.

4       BUT THIS IS NOT THE CIRCUMSTANCE HERE WHERE WE HAVE

5  VESSELS.  THE DOJ IS TALKING ABOUT THIS IN THE CIRCUMSTANCE

6  WHERE YOU HAVE VESSELS THAT ARE FLOATING OVER THE CONTINENTAL

7  SHELF.  AGAIN, AND THAT WAS THE DOJ'S OPINION REALLY ON

8  ANALYSIS OF A LAWYER IN 1979.

9       AND ONE OTHER POINT, JUDGE, SINCE YOU ASKED ME.  WITH

10 REGARD TO THIS SUGGESTION THAT THE PILE DRIVERS CASE DOESN'T

11 APPLY, THAT IS JUST NOT RIGHT BECAUSE THE COURT BASICALLY SAID

12 THAT THERE IS NO QUESTION BUT THAT IT DOES APPLY EXCEPT THAT

13 SINCE THIS WAS A FOREIGN OWNED AND FOREIGN FLAGGED VESSEL, WE

14 DON'T NECESSARILY GET THERE WITH, BECAUSE OF THE ACTIVITIES

15 THAT THEY WERE DOING.  BUT THEY CLEARLY STATE IN THE OPINION

16 THAT THE OUTER CONTINENTAL SHELF LANDS ACT AND THE INA SHOULD

17 BE READ TOGETHER.

18      ALSO, WITH REFERENCE TO THIS LAST THING THAT WAS ASKED,

19 REFERENCED, JUDGE, WITH REGARD TO THIS NEW LAW, IT DOESN'T

20 REALLY SAY THAT.  IT JUST EXTENDS, AND THE COURT CAN SEE IT IN

21 THE BRIEFS.  READING THE LANGUAGE OF IT, IT SIMPLY SAYS: WE

22 ARE SAYING THAT THE OUTER CONTINENTAL SHELF LANDS ACT DOESN'T

23 DO ANYTHING TO PRECLUDE ANY OTHER LAWS.  BUT THERE IS NOTHING

24 THAT EVER WOULD SAY ANYTHING DIFFERENT, AND THE COURTS HAVE

25 HELD, THE COURT AT LEAST IN ONE CIRCUMSTANCE, HAS HELD THAT

1   VERY THING.   THANK YOU, YOUR HONOR.

2            THE COURT: ARE THE PARTIES READY TO GO TO THE SECOND

3   ISSUE OR GROUP OF ISSUES?

4            MR. STUART: THANK YOU, YOUR HONOR.   MY NAME IS LARRY

5   STUART.   I AM GOING TO ADDRESS THE ENTERPRISE ISSUES.   I WOULD

6   LIKE TO INTRODUCE MY PARTNER, GLENN LEGGE, WHO IS HERE WITH

7   ME, UNFORTUNATELY HAS LARYNGITIS AND SO IT WOULD BE DIFFICULT

8   TO UNDERSTAND HIM IF HE WERE MAKING THE ARGUMENT TODAY.   IT

9   MIGHT STILL BE DIFFICULT EVEN IF HE COULD SPEAK, BUT THAT IS A

10  DIFFERENT ISSUE ENTIRELY.

11       I AM GOING TO TALK A LITTLE BIT ABOUT THE ENTERPRISE

12  DEFINITIONAL ISSUES AND ALSO THE 1962(C) ISSUES THAT ARE

13  RAISED BY THE COMPLAINT IN THIS CASE.   I WANT TO STEP BACK FOR

14  A MOMENT BECAUSE WHAT I HEARD A MOMENT AGO WHEN MR.

15  SPAGNOLETTI WAS ARGUING ABOUT WHAT THIS CASE COULD BE WAS A

16  GREAT DEAL OF CONJECTURE ABOUT WHAT MAY BE IN THE WORLD.   WE

17  ARE ON THE FIFTH PLEADING IN THIS CASE.

18       THIS CASE WAS ORIGINALLY FILED IN THE FALL OF 2004.   IT

19  WAS DISMISSED WITHOUT PREJUDICE BY THE PLAINTIFF, MR.

20  CUNNINGHAM, THROUGH HIS COUNSEL AND REFILED THE SAME DAY WITH

21  DIFFERENT PARTIES ADDED IN.   AT THAT TIME AND IN BOTH OF THOSE

22  PLEADINGS THE ENTERPRISE THAT WAS ALLEGED WAS AN ILLEGAL

23  WORKER HIRING SCHEME THAT WAS ALL THE WAY ACROSS THE INDUSTRY.

24  IT INCLUDED OIL AND GAS PRODUCERS, SERVICE COMPANIES,

25  CONSTRUCTION COMPANIES, MANNING COMPANIES, ALL ENGAGED IN AN

1    ALLEGED CONSPIRACY TO USE ILLEGAL WORKERS IN THE OUTER

2    CONTINENTAL SHELF.

3         THAT PLEADING WAS AMENDED YET AGAIN IN MARCH OF 2005, AND

4    AGAIN IN APRIL OF 2005 AND AGAIN IN THE FALL OF 2005.  SO WE

5    ARE NOW ON OUR FIFTH ITERATION OF THE PLEADINGS.  NOW BETWEEN

6    THE FOURTH VERSION AND THE THIRD AMENDED COMPLAINT, WHICH IS

7    WHAT IS NOW PENDING, THE ALLEGATIONS CHANGED MATERIALLY.

8    INSTEAD OF A GLOBAL OIL AND GAS INDUSTRY ENTERPRISE, WHICH WAS

9    ALLEGEDLY ENGAGING IN ILLEGAL CONDUCT, THE ALLEGATIONS CHANGED

10   TO TEN SEPARATE ENTERPRISES COMPRISED OF ONE SERVICE DEFENDANT

11   AND THE SAME EIGHT MANNING COMPANIES IN EVERY INSTANCE.  SO

12   TEN DIFFERENT ENTERPRISES, EACH OF WHICH HAD THE SAME EIGHT

13   MANNING DEFENDANTS BUT ONE DIFFERENT SERVICE DEFENDANT.  AND I

14   CONCUR WITH WHAT MR. MAINES SAID A MOMENT AGO, WHICH IS THAT

15   THE SERVICE DEFENDANTS ARE NOT THE SAME.  NONE OF THEM ARE THE

16   SAME.  THEY ALL HAVE VERY DIFFERENT BUSINESSES.  THAT IS MADE

17   CLEAR IN THE PLEADINGS IN THE ALLEGATIONS THEMSELVES.

18        SO ONE WOULD PRESUME WITH THE PLEADING REQUIREMENTS IN

19   FEDERAL COURT THAT IF WE WERE GOING TO SUBSTANTIALLY ALTER OUR

20   ALLEGATIONS IN A CASE OF THIS MAGNITUDE WITH THE SIGNIFICANT

21   COSTS ATTENDANT WITH THIS KIND OF LITIGATION, THAT WE WOULD

22   HAVE FACTS TO SUPPORT THOSE ALLEGATIONS.  OTHERWISE, WHAT

23   WOULD JUSTIFY THE CHANGE IN THE ALLEGATIONS THEMSELVES?  SO IT

24   WOULD NOT BE UNREASONABLE IN THAT CIRCUMSTANCE TO EXPECT THAT

25   THE PLAINTIFFS WOULD HAVE HAD SOME FACTS, NOT SOME GUESSES,

1   NOT CONJECTURE, NOT SPECULATION, NOT FEAR, BUT FACTS.  FACTS

2   ARE VERY LIBERATING IF THEY ARE IN YOUR FAVOR.  THEY TEND TO

3   DISAPPEAR WHEN THEY ARE NOT.

4          THE COURT: I DON'T RECALL, HAVE THE PARTIES AGREED

5   TO STAY DISCLOSURE IN THIS CASE PENDING A RULING, OR HAS

6   DISCLOSURE TAKEN PLACE?

7          MR. STUART: WE DID WRITTEN DISCLOSURES, YOUR HONOR,

8   BUT WE DID NOT EXCHANGE DOCUMENTS.  AND THAT WAS DONE I

9   BELIEVE A YEAR AND HALF AGO JUST BEFORE THE STAY WAS PUT IN

10  PLACE.  SO THERE WAS INFORMATION EXCHANGED ABOUT TYPES OF

11  DOCUMENTS THAT WOULD BE RESPONSIVE AND RELEVANT TO THE CASE.

12         THE COURT: I AM NOT SURE IF I UNDERSTAND.  WHAT WAS

13  DONE IN THAT REGARD?  THE DOCUMENTS WERE ESSENTIALLY

14  IDENTIFIED, BUT NOT PROVIDED, IS THAT ESSENTIALLY THE

15  AGREEMENT OF THE PARTIES?

16         MR. STUART: THAT'S CORRECT.  AND I CAN'T SPEAK FOR

17  THE OTHER DEFENDANTS.  I KNOW THAT IN OUR INSTANCE OUR CLIENTS

18  IDENTIFIED THAT THERE WERE NO CONTRACTS BETWEEN OUR CLIENTS

19  AND ANY OF THE MANNING COMPANIES IN THIS CASE IN OUR

20  DISCLOSURES, AND THAT HAS BEEN FILED AND IS A PUBLIC RECORD.

21      WHAT I WANT TO TALK ABOUT BRIEFLY IS THE ENTERPRISE

22  REQUIREMENTS.  AND I AM A VISUAL PERSON AND SO YOU WILL HAVE

23  TO FORGIVE ME, BUT I NEED TO LOOK AT SOMETHING AND I HOPE IT

24  HELPS OTHER PEOPLE TO DO THE SAME, BECAUSE THIS IS NOT ABOUT

25  MY CONJECTURE OR MR. SPAGNOLETTI'S CONJECTURE ABOUT WHAT THE

1   LAW SHOULD BE OR WHAT WE WANT IT TO BE, IT'S WHAT THE LAW

2   SAYS.

3        AN ENTERPRISE IS ANY INDIVIDUAL, PARTNERSHIP,

4   CORPORATION, ASSOCIATION OR OTHER LEGAL ENTITY.  THESE ARE

5   THINGS WITH LEGAL STRUCTURE, LEGAL IDENTITY, OR ANY UNION.

6   AGAIN, SOMETHING WITH A LEGAL IDENTITY.  IT IS REGULATED BY

7   LAW.  IT HAS LEGAL STRUCTURE AND EXISTENCE.  OR A GROUP OF

8   INDIVIDUALS ASSOCIATED IN FACT.  OF THAT LIST OF ITEMS, THE

9   ONLY ITEM ON THAT LIST IS THE INDIVIDUALS ASSOCIATED IN FACT

10  WHICH DOES NOT HAVE A LEGAL IDENTITY THAT WE ALL UNDERSTAND AS

11  A MATTER OF LAW WITHOUT SOME FURTHER EXPLANATION.

12       AND SO THE COURTS IN INTERPRETING THIS HAVE INTERPRETED

13  WHAT AN ASSOCIATION IN FACT ENTERPRISE IS, AND THE FIFTH

14  CIRCUIT HAS SPOKEN AT GREAT LENGTH ABOUT WHAT KINDS OF

15  REQUIREMENTS ARE NECESSARY TO PLEAD THAT KIND OF ENTERPRISE.

16       AN ASSOCIATION IN FACT ENTERPRISE'S STRUCTURE HAS TO

17  BE -- HAS TO BE DESCRIBED, BECAUSE IT DOES NOT HAVE A PRESUMED

18  LEGAL STATUS.  THAT'S WHY A RICO PLAINTIFF MUST ALLEGE A

19  STRUCTURE FOR THE MAKING OF DECISIONS THAT IS SEPARATE AND

20  DISTINCT.  IF WE ARE A CORPORATION, WE HAVE BYLAWS AND

21  ARTICLES THAT GOVERN THOSE MATTERS.  IF WE ARE A UNION, WE

22  HAVE UNION GOVERNANCE PRINCIPLES.  IF WE ARE A PARTNERSHIP, WE

23  ARE GOVERNED BY STATE LAW.  BUT IF WE ARE A GROUP OF

24  INDIVIDUALS, WE HAVE NO ASCERTAINABLE STRUCTURE UNLESS SOMEONE

25  CAN ASCERTAIN WHAT IT IS AND DESCRIBE IT. AND WHAT THE U.S.

1   SUPREME COURT HAS SAID IS THAT IT IS A NECESSARY ELEMENT IN A

2   RICO CASE IN WHICH AN ASSOCIATION IN FACT ENTERPRISE IS

3   ALLEGED TO DESCRIBE IT WITH FACTUAL SPECIFICITY.  NOT

4   CONCLUSORY ALLEGATIONS AS WE HAVE IN THIS CASE ABOUT WHAT THE

5   PARTIES -- THAT THE PARTIES HAVE A COURSE OF CONDUCT WITHOUT

6   ANY SPECIFICS ABOUT WHAT THAT COURSE OF CONDUCT IS, OR THAT

7   THE PARTIES HAVE ENGAGED IN BUSINESS TOGETHER WITHOUT ANY

8   SPECIFICS ABOUT WHAT THAT BUSINESS LOOKS LIKE.

9       AGAIN, PLAINTIFFS MUST PLEAD SPECIFIC FACTS, NOT MERE

10  CONCLUSORY ALLEGATIONS WHICH ESTABLISH THE ENTERPRISE. THESE

11  ARE CASES OUT OF THE FIFTH CIRCUIT.  THEY ARE BINDING

12  PRECEDENT.

13      NOW, COUNSEL FOR THE PLAINTIFFS HAS TRIED TO

14  DIFFERENTIATE SOME OF THESE CASES BY SAYING NO, NO, NO, THE

15  FIFTH CIRCUIT DIDN'T GET IT RIGHT.  THERE ARE OTHER CASES FROM

16  THE FIFTH CIRCUIT THAT SAY SOMETHING DIFFERENT.  THOSE CASES,

17  AS WE POINTED OUT IN OUR BRIEF, IN ALL OF OUR BRIEFS, ARE NOT

18  CIVIL RICO CASES.  THEY ARE CRIMINAL CASES IN WHICH THE COURTS

19  WERE LOOKING AT WHETHER CRIMINAL JURY INSTRUCTIONS WERE

20  SUFFICIENTLY DETAILED TO MEET THE RICO REQUIREMENTS, NOT

21  WHETHER THE INITIAL PLEADINGS MET THE REQUIREMENTS.

22      NOW THE OTHER ASPECT OF THIS CASE IS THAT THE ONLY, THE

23  ONLY RICO VIOLATION OR SECTION OF RICO THAT IS ALLEGED TO BE

24  VIOLATED IS SECTION 1962(C).  RICO CONSISTS OF THREE

25  SUBSTANTIVE VIOLATION SECTIONS.  ONE IS 1962(A), 1962(B), AND

1    THE THIRD IS THE 1962(C).  A AND B DEAL WITH ORGANIZED CRIME

2    TAKING MONEY AND INVESTING IT IN LEGITIMATE BUSINESSES,

3    AGAIN, REMEMBERING THAT RICO WAS INTENDED TO BE AN ORGANIZED

4    CRIME STATUTE TO PREVENT THE MAFIA FROM TAKING DIRTY MONEY AND

5    MAKING IT CLEAN THROUGH LEGITIMATE BUSINESSES, OR USING

6    CRIMINAL ACTIVITY TO INFILTRATE LAWFUL BUSINESSES, OR IN THE

7    CASE OF 1962(C), TO ENGAGE IN CONDUCT THROUGH AN ENTERPRISE

8    THAT IS A PATTERN OF RACKETEERING ACTIVITY.  PATTERN OF

9    RACKETEERING ACTIVITY BEING PREDICATE ACTS, PREDICATE ACTS

10   THAT MR. SPAGNOLETTI TRIED TO DESCRIBE EARLIER AND THAT MR.

11   FOSTER TRIED TO DESCRIBE EARLIER, WHICH WERE INA VIOLATIONS.

12       IT SHOULD BE NOTED THAT THOSE INA VIOLATIONS THAT THEY

13   ARE ALLEGING, THE TWO OF THEM THAT ARE IN THE CURRENT

14   PLEADING, ARE A PARED DOWN VERSION FROM THE PRIOR PLEADINGS IN

15   WHICH THEY ALLEGED ALL OF THOSE VERY SAME THINGS THAT MR.

16   SPAGNOLETTI SPECULATED ABOUT TODAY.  TRANSPORTATION, ENTRY,

17   MOVEMENT, HARBORING, ALL OF THOSE THINGS WERE IN PRIOR

18   PLEADINGS AND WERE REMOVED IN THE THIRD AMENDED COMPLAINT, NO

19   LONGER ALLEGED TO HAVE BEEN VIOLATED IN CONNECTION WITH THIS

20   CASE.

21       AGAIN, I ASSUME THAT THERE WAS A FACTUAL REASON FOR DOING

22   THAT AND THAT THERE WAS A BASIS FOR REMOVING THEM, AND IT

23   WOULD MAKE ABSOLUTELY NO SENSE TO ALLOW AN AMENDMENT, TO ADD

24   THEM BACK IN WHEN WE HAVE ALREADY BEEN THROUGH FIVE PLEADINGS.

25       IN THIS PARTICULAR CONTEXT, THESE ARE KEY WORDS, WHICH IS

1   THAT THE CONDUCT HAS, THE CONDUCT OR PARTICIPATION HAS TO BE

2   THROUGH A PATTERN OF RACKETEERING ACTIVITY, THROUGH PREDICATE

3   ACTS.   PARTICIPATING OR CONDUCTING THROUGH PREDICATE ACTS.

4       NOW, THIS IS EXTREMELY IMPORTANT IN THIS CASE BECAUSE

5   WHAT WE HAVE IN THIS CASE IS EFFECTIVELY AN ALLEGATION THAT

6   THE SERVICE DEFENDANTS HAVE UNLAWFULLY EMPLOYED WORKERS.

7   THERE IS NO ALLEGATION IN THIS CASE THAT THE MANNING COMPANIES

8   HAVE VIOLATED RICO.   THERE IS NO ALLEGATION IN THE PLEADING

9   THAT THE MANNING COMPANIES HAVE VIOLATED THE INA.   THE ONLY

10  ALLEGATION, THE ONLY ALLEGATION IS THAT THE SERVICE DEFENDANTS

11  HAVE VIOLATED THE INA BY EMPLOYING WORKERS IN THE OUTER

12  CONTINENTAL SHELF, NOT TRANSPORTING THEM, NOT HARBORING THEM

13  ON TERRITORIAL LAND, EMPLOYING THEM IN THE OUTER CONTINENTAL

14  SHELF.

15      WHAT THAT MEANS IS THAT THERE IS NO SEPARATION BETWEEN

16  THE RICO DEFENDANT, THE SERVICE DEFENDANTS, AND THE ENTERPRISE

17  ITSELF.   THE FIFTH CIRCUIT, LIKE MOST CIRCUITS, AND THIS IS

18  DIRECTLY FROM THIS COURT'S OPINION IN OFFICE OUTFITTERS, INC.

19  V. A.B. DICK COMPANY, THE FIFTH CIRCUIT, LIKE MOST CIRCUITS,

20  HAS STATED THAT THE LANGUAGE EMPLOYED BY OR ASSOCIATED WITH

21  REQUIRES THAT THE RICO PERSON, THE DEFENDANT WHO IS ALLEGEDLY

22  VIOLATING THE ACT, AND THE RICO ENTERPRISE BE DISTINCT.

23      HERE, EFFECTIVELY THE ALLEGATION IS THAT MY CLIENT AND

24  THE OTHER SERVICE DEFENDANT COMPANIES ARE VIOLATING THE LAW.

25  AND, IN EFFECT, BECAUSE OF THE ABSENCE OF ANY ALLEGATIONS IN

1   THE COMPLAINT ABOUT RELATIONSHIPS, LONG TERM AND OTHERWISE

2   BETWEEN THE SERVICE DEFENDANTS AND THE MANNING COMPANIES,

3   EFFECTIVELY THEY ARE ALLEGING THAT OUR CLIENTS, THE SERVICE

4   DEFENDANTS, ARE THE ENTERPRISES.  AND THAT DOES NOT MEET THE

5   FIFTH CIRCUIT STANDARDS.  1962(C) REQUIRES THAT THE PREDICATE

6   ACTS HAVE TO BE COMMITTED BY THE RICO PERSON THROUGH THE RICO

7   ENTERPRISE, NOT AS PART OF THEIR OWN BUSINESS.

8        THE ALLEGATION HERE IS THAT OUR CLIENTS ALLEGEDLY

9   EMPLOYED WORKERS UNLAWFULLY IN THEIR BUSINESSES.  HOW ELSE

10   WOULD THEY EMPLOY PEOPLE IN THEIR BUSINESSES?  AND SO IT DOES

11   NOT MEET THE RICO STANDARDS FOR PLEADING OR FOR PROOF.  AS A

12   MATTER OF LAW, THE CLAIM MUST FAIL.

13        AND THE OTHER ASPECT OF THIS IS THAT THERE ARE HEIGHTENED

14   PLEADING REQUIREMENTS FOR ASSOCIATION IN FACT ENTERPRISES, AND

15   THE REASON FOR THAT IS AS I STATED EARLIER, WHICH IS THAT

16   OTHERWISE ALL I WOULD HAVE TO DO TO MAKE A RICO CLAIM IS SAY

17   THAT I DID BUSINESS WITH SOME OTHER COMPANY.  THE FACT THAT WE

18   DID BUSINESS TOGETHER MAKES US A RICO ENTERPRISE BECAUSE WE

19   ARE ASSOCIATED. IN FACT, WE ARE, AND THEREFORE RICO WOULD BE

20   TRIGGERED.  THAT WAS NEVER THE INTENT OF THIS STATUTE.

21        AND THE SUPREME COURT'S DECISION IN THE ANZA CASE, WE CAN

22   ARGUE ABOUT WHAT IT SAID ABOUT PROXIMATE CAUSE OR DIRECT

23   INJURY.  WHAT IT DID SAY WITHOUT QUESTION IS THAT THE COURTS

24   ARE TO LOOK AT THESE RICO CASES CAREFULLY AT THE PLEADING

25   STAGE AND DETERMINE WHETHER THEY ARE REALLY CASES WE SHOULD

1    LET PROCEED BECAUSE OF THE SUBSTANTIAL COST AND THE

2    POSSIBILITY FOR ABUSE IN CASES WHERE WE HAVE NO FACTS AND WE

3    ARE LOOKING FOR THEM.  THIS IS EXACTLY THAT KIND OF CASE.  IT

4    IS A LAWSUIT LOOKING FOR A CLAIM, NOT A CLAIM LOOKING FOR

5    RELIEF.

6        NOW, IN ORDER TO PLEAD THE SPECIFIC FACTS TO MEET THE

7    STANDARDS FOR THE FIFTH CIRCUIT, WE MUST SEE PLEADING SPECIFIC

8    FACTS RELATED TO ONGOING ORGANIZATION WITH CONTINUITY,

9    HIERARCHICAL OR CONSENSUAL DECISION MAKING STRUCTURE.  THAT

10   COMES DIRECTLY FROM THE U. S. SUPREME COURT.  ECONOMIC IMPACT

11   TO THE ENTERPRISE, NOT JUST TO THE INDIVIDUAL PARTICIPANTS,

12   BECAUSE AGAIN, IF THE ECONOMIC IMPACT IS ONLY TO ME AS THE

13   ALLEGED RICO DEFENDANT, THEN I AM NOT DOING IT THROUGH THE

14   ENTERPRISE, WHICH IS THE REQUIREMENT.

15       AND THE ENTERPRISE IS MORE THAN AN ASSOCIATION OF

16   INDIVIDUALS FOR THE COMMISSION OF THE PREDICATE ACTS.  IT HAS

17   TO HAVE AN EXISTENCE, SO THAT IT IS LIKE A PARTNERSHIP OR A

18   CORPORATION OR A UNION, SOMETHING OF LEGAL STATUS.  OTHERWISE,

19   AGAIN, IT IS ME AND MY PARTNER GLENN DOING BUSINESS.  WE ARE

20   NOT A RICO ENTERPRISE JUST BY DOING BUSINESS.  BUT UNDER THE

21   PLAINTIFF'S THEORY IN THIS CASE, WE WOULD BE AND IT WOULD

22   SOMEHOW TAKE ON SOME EXTRA SIGNIFICANCE THAT IN DOING MY

23   BUSINESS, WHEN I ALLEGEDLY BREAK THE LAW, NOW I AM A RICO

24   DEFENDANT.  AND THAT IS NEVER WHAT CONGRESS INTENDED IN A CASE

25   LIKE THIS.

1      NOW, WHEN BOILED DOWN, AND THESE ISSUES ARE BRIEFED

2  EXTENSIVELY IN ALL OF THE BRIEFS THAT HAVE BEEN FILED,

3  EXHAUSTIVELY, I WOULD SAY, AND THE COURT MIGHT WELL AGREE WITH

4  ME IN THAT REGARD, THOSE REQUIREMENTS BOIL DOWN TO THIS, WHICH

5  IS THERE MUST BE AN ALLEGATION OF RICO PERSONS THAT ARE

6  DISTINCT FROM THE RICO ENTERPRISE.  THE RICO ENTERPRISE AS AN

7  ENTITY MUST HAVE THE ONGOING ORGANIZATION WITH CONTINUITY,

8  HIERARCHICAL OR CONSENSUAL DECISION MAKING STRUCTURE, EXISTS

9  AS AN ENTITY INDEPENDENT OF PREDICATE ACTS.  THE PREDICATE

10 ACTS ARE COMMITTED THROUGH THE ENTERPRISE, NOT INDEPENDENT OF

11 IT.  AND THE ECONOMIC IMPACT IS TO THE ENTERPRISE.  AND EACH

12 OF THOSE RICO PERSONS WHO PARTICIPATES IN THAT ENTERPRISE,

13 ALLEGEDLY, HAS TO CONDUCT OR PARTICIPATE BY COMMITTING

14 PREDICATE ACTS.

15     HERE, WE HAVE SERVICE DEFENDANTS THAT ARE ALLEGEDLY

16 VIOLATING THE LAW IN THEIR BUSINESS, NOT THROUGH AN

17 ENTERPRISE, AND MANNING COMPANIES THAT ARE NOT ALLEGED TO

18 VIOLATE THE LAW IN THEIR BUSINESS OR OTHERWISE.  EXCEPT FOR

19 MR. SPAGNOLETTI HERE SPEAKING TODAY TALKING ABOUT HOW THEY ARE

20 DOING THAT, IT IS NOT IN THE PLEADINGS.  IT IS NOT IN THE

21 PLEADINGS.  AND AGAIN, A COMMON PURPOSE, COMMON GOALS, COMMON

22 PURPOSE, COMMON ACTION.

23     NOW, BECAUSE I FOUND THESE COMPLICATED AND THE REST OF

24 THE PEOPLE I SPOKE WITH ABOUT THIS, IT IS A COMPLICATED

25 STATUTE.  SO WE MADE SOME SCHEMATICS TO KIND OF WALK THROUGH

1   THIS.  THIS IS A COMMON INTERACTION.  I HAVE A BUSINESS.  I DO

2   BUSINESS WITH ANOTHER COMPANY.  RICO IS NOT IMPLICATED.  YOU

3   SELL ME SOMETHING.  I BUY SOMETHING.  I GIVE YOU MONEY.  YOU

4   GIVE ME SERVICES OR GOODS, RICO NOT IMPLICATED.  I WOULD

5   ASSUME THAT THE PLAINTIFFS HERE WOULD BE HARD PRESSED TO ARGUE

6   THAT THAT'S RICO.

7        THIS IS WHAT WE HAVE EFFECTIVELY ALLEGED IN THIS CASE.

8   MANNING DEFENDANT IS PAID FOR MANNING SERVICES AND PROVIDES

9   LABOR SOURCING ALLEGEDLY TO A SERVICE DEFENDANT, WHICH

10  ALLEGEDLY ON ITS OWN EMPLOYS WORKERS ILLEGALLY.  NOW AGAIN,

11  THIS DOES NOT CONVERT OUR TRANSACTION INTO A RICO VIOLATION.

12  OTHERWISE, ANY TIME WE DO BUSINESS AND I VIOLATE THE LAW, YOU

13  ARE A RICO DEFENDANT.

14       THAT IS NOT WHAT RICO WAS INTENDED TO DO, BUT THAT'S WHAT

15  THEY WOULD LIKE RICO TO DO.  THAT'S WHAT THEY HAVE CONVINCED

16  SEVERAL OTHER COURTS TO MAKE RICO DO.  THAT IS NOT WHAT THE

17  FIFTH CIRCUIT WOULD WANT RICO TO DO.  THAT'S NOT WHAT THE

18  SEVENTH CIRCUIT WANTED RICO TO DO IN A CASE THAT WAS SIMILAR,

19  BUT NOT PARALLEL TO THIS ONE.

20       NOW, THEY HAVE TRIED TO MOVE SOME OF THIS AROUND TO SAY

21  YOU KNOW WHAT, THIS IS NOT REALLY ABOUT EMPLOYMENT.  IT IS

22  REALLY ABOUT SOMETHING ELSE.  THE PLEADING REALLY SAYS IT ALL.

23  THE SERVICE DEFENDANTS ILLEGALLY DEPRESSED WAGES.  PLAINTIFFS

24  ARE INJURED BECAUSE THEY ARE EMPLOYED BY A SERVICE DEFENDANT.

25  THEY ARE RECRUITED AND EMPLOYED BY THE SERVICE DEFENDANTS, NOT

1    THE MANNING DEFENDANTS.   SERVICE DEFENDANTS HAVE HARBORED

2    ILLEGAL WORKERS, NOT THE MANNING DEFENDANTS.   SERVICE

3    DEFENDANTS PARTICIPATE IN THE AFFAIRS.   SERVICE DEFENDANTS

4    PARTICIPATE IN THE AFFAIRS; SERVICE DEFENDANTS ENGAGE IN

5    RACKETEERING ACTIVITY. NOT MANNING COMPANIES, NOT MANNING

6    DEFENDANTS, JUST SERVICE DEFENDANTS.   SO WHAT WE HAVE HERE IS

7    ALLEGEDLY INDIVIDUAL ACTORS NOT ACTING UNLAWFULLY THROUGH

8    ANOTHER MECHANISM IN THEIR OWN BUSINESS ALLEGEDLY VIOLATING

9    RICO.   THAT IS NOT WHAT RICO WAS INTENDED TO DO.

10        NOW, THIS GOES IN PART TO THE PROXIMATE CAUSE ISSUE AND

11   THE DAMAGES ISSUE THAT MY COLLEAGUE RAISED JUST A FEW MINUTES

12   AGO, AND THAT IS BECAUSE OF THE ALLEGATIONS IN THIS CASE, THE

13   ALLEGATION IS THAT EACH OF THE SERVICE DEFENDANTS, EACH OF THE

14   TEN OF THEM IS IN A RICO CONSPIRACY AND ENTERPRISE, IN THEORY,

15   WITH EIGHT MANNING COMPANIES, THE SAME ONES.   SO THAT EACH OF

16   THOSE EIGHT MANNING COMPANIES IS IN NINE OTHER RICO

17   ENTERPRISES WITH ALL OF THE OTHER SERVICE DEFENDANTS

18   INDIVIDUALLY.

19        SO YOU CAN SEE THAT THIS WOULD TURN INTO A GIGANTIC

20   HELIX.   NO CONNECTION WHATSOEVER ALLEGED BETWEEN THE SERVICE

21   DEFENDANTS, WHO ARE ACTUALLY EMPLOYING THESE WORKERS

22   ALLEGEDLY, ALLEGEDLY ILLEGALLY, AND WHO ARE THEORETICALLY

23   SETTING THEIR BENEFITS AND THEIR WAGES.   NOT THE MANNING

24   COMPANIES, THEY ARE NOT EMPLOYING THEM.

25        AND SO WHAT WE HAVE HERE IS SOME ATTEMPTED EXTRAPOLATION

1   OF TRYING TO TAKE A DYNAMIC IN WHICH WE DO BUSINESS ALLEGEDLY

2   WITH MULTIPLE COMPANIES, AND NOW ALL OF A SUDDEN WE HAVE A

3   RICO ENTERPRISE.  NOT THE CASE.

4       NOW, ONE OF THE DIFFICULTIES OF THIS PARTICULAR DYNAMIC

5   AS THEY HAVE DESCRIBED IT IS HOW COULD THESE COMPANIES HAVE A

6   COMMON PURPOSE AND A COMMON OBJECTIVE IF EACH OF THOSE MANNING

7   COMPANIES IS IN AN ENTERPRISE WITH NINE OTHER COMPANIES THAT

8   COMPETE FOR MANNING?  ALL OF THE PROFIT MOTIVES THAT WOULD GO

9   WITH ALL OF THAT WOULD BE COMPLETELY CONTRADICTORY.  THERE

10  WOULD BE NO CONSISTENCY OF APPROACH.  THERE WOULD BE NO

11  CONSISTENCY OF INTENT AMONG THOSE PARTIES.  IT COULDN'T BE.

12  AND THIS IS WHAT IS ALLEGED IN THE COMPLAINT.  THIS IS WHAT IS

13  ALLEGED IN THE COMPLAINT.

14      NOW, THE LAST THING I WANT TO RAISE IS THE ACTUAL FIFTH

15  CIRCUIT PLEADING STANDARD.  WE RECOGNIZE THAT IN A 12(B)(6)

16  CONTEXT THAT THE COURTS ARE LOATHE TO DISMISS CASES JUST BASED

17  ON PLEADING DEFICIENCIES. BUT GIVEN THE NATURE OF THIS CASE

18  AND THE POSTURE OF THE CASE, IT IS IMPOSSIBLE TO BELIEVE THAT

19  WITHOUT ANY FACTS, WITHOUT ANYTHING ADDITIONAL, AND THEY STATE

20  IN THEIR RESPONSES TO THE MOTIONS THAT THEY DON'T HAVE ANY

21  ADDITIONAL FACTS, THEY HAVE PLED EVERYTHING THAT THEY KNOW,

22  THEY HAVE SAID THAT IN THEIR LAST ROUND OF BRIEFING, THAT ANY

23  AMENDMENT WOULD DO ANY GOOD.  BECAUSE TO AVOID DISMISSAL, THEY

24  MUST STATE SPECIFIC FACTS ABOUT THE ENTERPRISE, ABOUT THE

25  CONDUCT, ABOUT THE VIOLATIONS IN ORDER TO HAVE IT BE

1    SUSTAINED.  IT SIMPLY ISN'T HERE.

2         NOW, THERE IS A CRITICAL DIFFERENCE BETWEEN THIS CASE,

3    REGARDLESS OF WHAT MR. FOSTER TOLD YOU A MOMENT AGO, BETWEEN

4    THIS CASE AND THOSE OTHER CASES THAT THEY RELY UPON.  THOSE

5    CASES INVOLVED ONE EMPLOYER IN ONE INDUSTRY THAT HAD ONE LINE

6    OF BUSINESS THAT EMPLOYED WORKERS AND RETAINED THEM THROUGH

7    ONE OR MORE COMPANIES SIMILAR TO THE HELIX I DESCRIBED.  THE

8    DIFFERENCE BEING THAT THERE WERE NOT NINE OTHER HELICES TIED

9    IN THOSE CASES, REDUCING COMMONALITY, MAKING THIS LOOK FUZZIER

10   AND FUZZIER AND FUZZIER AND FARTHER AWAY FROM WHAT RICO

11   INTENDED TO DO.

12        AND ADDITIONALLY, IN THOSE CASES, AND MR. FOSTER CAN

13   DESCRIBE THIS FOR YOU BECAUSE HE WAS COUNSEL IN MANY OF THOSE

14   CASES, THEY DID NOT FILE CLAIMS IDENTICAL TO THE CLAIMS HERE.

15   THEY SUED INDIVIDUAL OWNERS AND MANAGERS OF THOSE COMPANIES AS

16   THE RICO PERSONS AND ALLEGED IN THOSE CASES THAT THOSE RICO

17   PERSONS OPERATED THE COMPANY AS AN ENTERPRISE TO COMMIT

18   ILLEGAL ACTS.  THAT IS NOT WHAT IS ALLEGED HERE.

19        HERE, THEY ARE ALLEGING THAT THE RICO PERSON IS

20   COMMITTING THE ILLEGAL ACTS AND IS, IN EFFECT, BASED ON THE

21   PLEADINGS, THE ENTERPRISE.  AND THEY CANNOT BE THE SAME THING.

22   WHERE THE MANNING COMPANIES DO NOT PARTICIPATE IN THOSE

23   COMMISSIONS OF PREDICATE ACTS, THERE IS NO RICO VIOLATION

24   UNDER THESE CIRCUMSTANCES EITHER.

25        THAT'S ALL I HAVE FOR THE MOMENT, AND, OBVIOUSLY, I WILL

1    SAVE MORE FOR REBUTTAL, IF I MAY.

2            THE COURT: RESPONSE, MR. FOSTER?

3            MR. FOSTER: YES.  YOUR HONOR, THERE IS SO MUCH

4    OBFUSCATION IN WHAT MR. STUART JUST SAID WITH HIS HELICES AND

5    HIS MISQUOTATIONS, NON-QUOTATIONS, MADE-UP QUOTATIONS TO

6    CASES, I WILL TRY AND DO MY BEST.  IF I MISS SOMETHING AND

7    YOUR HONOR BELIEVES THERE IS STILL SOME UNCERTAINTY, I REQUEST

8    THAT YOU LET ME KNOW AND I WILL ADDRESS IT WHEN I AM DONE.

9            HELICES DON'T MATTER.  I DON'T NEED A VISUAL AID TO HELP

10    THE COURT UNDERSTAND WHAT IS ALLEGED IN THE COMPLAINT.  IT IS

11    NOT THAT DIFFICULT.  WE DON'T ALLEGE HELICES OR TRIANGLES OR

12    PENTAGONS.  EACH SERVICE COMPANY IS RELYING UPON A NETWORK OF

13    RECRUITERS TO RECRUIT ILLEGAL IMMIGRANTS.  THAT IS NOT THAT

14    DIFFICULT TO UNDERSTAND.  THAT'S WHAT WE ALLEGE HERE.

15            EACH OF THE SERVICE COMPANIES IS USING THE SAME NETWORK

16    OF MANNING COMPANIES TO GET ITS ILLEGAL WORKERS FROM.  THAT'S

17    NOT THAT DIFFICULT TO UNDERSTAND.  MOST COMPANIES THAT OFFER

18    THEIR SERVICES IN THE PUBLIC ARENA OF BUSINESS IN THE UNITED

19    STATES DO SO TO MULTIPLE ENTERPRISES, NOT JUST ONE COMPANY,

20    AND THAT IS WHAT WE ARE ALLEGING HERE.

21            I WOULD LIKE TO MAKE ONE POINT CLEAR BEFORE I MOVE ON.

22    PARAGRAPH 1.3 OF THE COMPLAINT SAYS SPECIFICALLY THE SERVICE

23    DEFENDANTS ILLEGALLY DEPRESSED THE WAGES PAID TO THEIR

24    EMPLOYEES WHO WORK ON VESSELS, RIGS, AND PLATFORMS AND OTHER

25    VEHICLES ON THE OUTER CONTINENTAL SHELF.  IT DOES NOT ALLEGE

1    THAT WAGES ARE DEPRESSED TO OTHER PEOPLE WHO WORK ON THE OTHER

2    OUTER CONTINENTAL SHELF, JUST THOSE PEOPLE.  WE ARE NOT

3    ALLEGING A MASSIVE WAGE DEPRESSION THEORY THAT AFFECTS A

4    SIGNIFICANT PART OF THE GLOBE OR THE ENTIRE OUTER CONTINENTAL

5    SHELF, AS THE DEFENDANTS CONTINUE TO ASSERT AND CONTINUE TO

6    MISSTATE IN AN ATTEMPT TO DIVERT ATTENTION AWAY FROM THE PRIOR

7    CASES, LIKE THE MOHAWK CASE WHICH SPECIFICALLY UPHELD THIS

8    THEORY.

9        AND ONCE AGAIN, I REFER THE COURT TO THE ELEVENTH

10   CIRCUIT'S DECISION SINCE IT IS THE MOST RECENT ONE WHICH

11   ANALYZED IN GREAT DETAIL VIRTUALLY EVERY CRITICISM THAT THE

12   DEFENDANTS AND MR. STUART HAVE MADE ABOUT THE RICO ENTERPRISE

13   ALLEGED HERE, AND REJECTED ALL OF THEM.  IN MANY INSTANCES

14   CITING THE PRIOR, THE OLD FIFTH CIRCUIT'S DECISIONS,

15   ESPECIALLY UNITED STATES V. ELLIOTT, WHICH ARE STILL GOOD LAW

16   IN THIS CIRCUIT AND APPLY HERE, SAYING IN RELEVANT PART THAT

17   AN ENTERPRISE DOES NOT NEED TO HAVE HIERARCHICAL OR FORMAL

18   STRUCTURE, NOR MUST IT BE PLEADED WITH SPECIFIC FACTS.

19       JUST THE OPPOSITE IS TRUE, THAT RICO ENTERPRISES ARE

20   CRIMINAL ASSOCIATIONS AND ARE USUALLY KEPT SECRET AND QUIET.

21   THE MEMBERS OF SUCH ORGANIZATIONS DO NOT PUT THEIR DIRECTIONS

22   TO EACH OTHER IN WRITING, AND THEY CERTAINLY DON'T RELEASE IT

23   TO PARTIES THAT ARE SUING THEM.  AND TO ASK OF US AT THIS

24   POINT UNDER RULE 8 TO PROVIDE GREATER DETAIL ABOUT THE

25   INTERACTIONS BETWEEN EACH SERVICE COMPANY RICO DEFENDANT AND

1    THE OTHER ENTITIES, THE MANNING COMPANIES, THAT RECRUIT

2    ILLEGAL WORKERS FOR IT, AS WELL AS SOME LEGAL WORKERS, WOULD

3    PLACE ON US A BURDEN THAT CANNOT BE MET.  AND IT WOULD MEAN

4    THAT THE CASE COULD NEVER BE BROUGHT.

5        RULE 8 DOES NOT REQUIRE THAT.  THERE IS NO STANDING ORDER

6    IN THIS COURT THAT REQUIRES RICO PLAINTIFFS TO COMPLY WITH

7    SPECIFIC FACT REQUIREMENTS, AS THERE WAS IN LOUISIANA IN THE

8    ELLIOTT V. FOUFAS CASE UPON WHICH THEY PRIMARILY RELY FOR

9    THEIR ARGUMENT THAT A LOT OF FACTS HAVE TO BE PLED.

10        THAT WAS THE BASIS FOR THE FIFTH CIRCUIT'S DECISION IN

11    THAT PARTICULAR CASE.  THIS COURT HAS SPECIFICALLY HELD,

12    WRITTEN BY YOUR HONOR IN Z-TEL COMMUNICATIONS, THAT RELATIVELY

13    FEW FACTS NEED TO BE PLED UNDER RULE 8 TO STATE A CLAIM.  AND

14    SINCE YOUR HONOR ISSUED THAT OPINION, IT HAS BEEN CONFIRMED AS

15    BEING THE CORRECT INTERPRETATION OF RULE 8 BY THE SUPREME

16    COURT IN THE SWIERKIEWICZ V. SOREMAN DECISION.  IT SIMPLY IS

17    NOT REQUIRED AT THIS STAGE TO GO INTO GREAT DETAIL AND TO TALK

18    ABOUT THE HELICES AND THE CORNERS AND THE GRAY CORNERS THAT

19    ARE KEPT SECRET IN THE WAY THAT THESE ORGANIZATIONS WORK.

20        MR. STUART IS ALL OVER THE MAP ON WHAT WE ALLEGE IN OUR

21    COMPLAINT.  FIRST, HE SAID THAT THE SERVICE COMPANIES ARE NOT

22    ALLEGED TO EMPLOY THE ILLEGAL WORKERS.  THEN HE SPENT FIVE

23    MINUTES TALKING -- PUTTING UP A VISUAL ABOUT HOW THE COMPLAINT

24    ALLEGES THAT THEY DO EMPLOY ALL THE ILLEGAL WORKERS.  YES, THE

25    COMPLAINT ALLEGES THAT THE SERVICE DEFENDANTS EMPLOY THE

1   ILLEGAL WORKERS.

2        SINCE THE SERVICE DEFENDANTS ARE THE RICO DEFENDANTS,

3   THAT IS REQUIRED.  THEY HAVE TO EMPLOY ILLEGAL WORKERS.  THE

4   COMPLAINT, IN SHORT, ALLEGES THAT THE MANNING COMPANIES

5   RECRUIT ILLEGAL WORKERS AND GIVE THEM, DELIVER THEM TO THE

6   SERVICE DEFENDANTS FOR EMPLOYMENT, AND THEY ARE PUT ON THE

7   PAYROLL OF THE SERVICE DEFENDANTS, AND THUS, THE ALLEGATIONS

8   IN THE COMPLAINT SATISFY THE REQUIREMENTS OF 8 U.S.C. 1324

9   ABOUT EMPLOYING TEN OR MORE ILLEGAL IMMIGRANTS AND HARBORING

10  THEM.  AND ALL THE RELEVANT AUTHORITY INDICATES NOW THAT AN

11  EMPLOYER CAN VIOLATE THE HARBORING STATUTE.

12       THERE ARE TEN RICO ENTERPRISES ALLEGED IN THIS COMPLAINT.

13  ACCORDING TO THE DEFENDANTS, THAT IS JUST TOO MANY.  WHAT DID

14  THEY CITE FOR THAT PROPOSITION?  NOTHING.  THE SUPREME COURT

15  HAS NEVER SAID THAT YOU CAN'T ALLEGE THAT MANY ENTERPRISES IN

16  ONE COMPLAINT OR ALLEGE A PARTICULAR NUMBER OF DEFENDANTS IN

17  ONE RICO COMPLAINT.  MANY RICO COMPLAINTS INVOLVE COMPLICATED

18  ENTERPRISES.  COMPLICATED FINANCIAL CRIMES ARE USUALLY NOT

19  COMMITTED BY A SINGLE PERSON SITTING IN A ROOM ALL BY HIMSELF

20  OR HERSELF.  THERE IS COOPERATION AMONG VARIOUS INDIVIDUALS

21  AND CORPORATIONS, AND WE HAVE ALLEGED THAT HERE.

22       THE U. S. SUPREME COURT HAS NEVER HELD THAT A GROUP OF

23  CORPORATIONS CANNOT BE AN ENTERPRISE.  THE FIFTH CIRCUIT AND

24  EVERY OTHER CIRCUIT THROUGHOUT THE COUNTRY HAVE UPHELD THOSE

25  TYPES OF ENTERPRISES, AND THAT IS WHAT WE BRING HERE.  NOR HAS

1    THE U.S. SUPREME COURT EVER HELD THAT THERE IS A HIGHER

2    PLEADING STANDARD FOR RICO CASES.  IN FACT, THE SUPREME COURT

3    HELD MORE OR LESS THE OPPOSITE IN NOW V. SCHEIDLER, WHICH WE

4    HAVE CITED, SAYING THAT GENERAL ALLEGATIONS ARE TAKEN TO

5    EMBRACE THE SPECIFIC FACTS THAT ARE NEEDED TO STATE A CLAIM,

6    AND THAT APPLIES UNDER RICO.

7         FOR THE REASONS THAT WE HAVE STATED EXHAUSTIVELY IN ALL

8    OF OUR PLEADINGS AND IN OUR SUR-REPLY BRIEF, THE MOTION TO

9    DISMISS SHOULD NOT BE DENIED.  THE THIRD AMENDED COMPLAINT

10   ADEQUATELY STATES A RICO CLAIM IN WHICH ALL THE SERVICE

11   DEFENDANTS ARE RICO PERSONS UNDER 1962(C).  I THANK THE COURT.

12            THE COURT: REPLY COMMENTS?

13            MR. STUART: YOUR HONOR, IF I MAY, JUST A COUPLE OF

14   THINGS.  PARAGRAPH 1.3 SPECIFICALLY TALKS ABOUT THE SERVICE

15   DEFENDANTS ILLEGALLY DEPRESSING WAGES PAID TO THEIR EMPLOYEES

16   WHO WORK ON VESSELS, RIGS, PLATFORMS, AND OTHER VEHICLES OR

17   STRUCTURES ON THE OUTER CONTINENTAL SHELF OF THE UNITED

18   STATES.  THE LAST TIME I LOOKED, THE OUTER CONTINENTAL SHELF

19   OF THE UNITED STATES IS THE ENTIRE GULF OF MEXICO, THE ENTIRE

20   EAST COAST SEABOARD, AND THE ENTIRE WEST COAST OF THIS

21   COUNTRY.  AGAIN, THIS IS NOT A SMALL PLANT WHERE PEOPLE MAKE

22   TILE.  IT IS NOT A SMALL FIELD WHERE PEOPLE PICK FRUIT.  IT IS

23   NOT A SMALL FACILITY WHERE PEOPLE PLUCK CHICKENS.  IT IS THE

24   ENTIRE OUTER CONTINENTAL SHELF, WHEREVER THESE COMPANIES

25   ALLEGEDLY WORK, THAT THEY ARE SUPPOSEDLY, ALLEGEDLY EMPLOYING

1   ILLEGAL WORKERS.  THAT IS NOT WHAT RICO WAS INTENDED TO DO, TO

2   HAVE UNMANAGEABLE KINDS OF CLASS ACTION LAWSUITS MAKING WILD

3   ACCUSATIONS ABOUT ALLEGED ILLEGAL PRACTICES.

4       MR. FOSTER REFERENCES U.S. V. ELLIOTT.  U.S. V. ELLIOTT

5   DOES NOT TRUMP THE FIFTH CIRCUIT'S DECISION IN ELLIOTT V.

6   FOUFAS, WHICH THIS COURT RELIED UPON IN THE OFFICE OUTFITTERS

7   V. A.B. DICK CASE AND IN OTHER CASES.  ELLIOTT V. FOUFAS IS

8   THE LAW IN THIS JURISDICTION.  NOW THAT CASE DID INVOLVE RICO

9   PREDICATE ACTS THAT WERE FRAUD BASED.  AND IT WAS AN EASTERN

10  DISTRICT OF LOUISIANA CASE ORIGINALLY, AND AS SUCH THERE WAS A

11  STANDING ORDER IN THAT DISTRICT FOR FRAUD CASES.

12      HOWEVER, THE LANGUAGE OF THE COURT, WHICH I WILL SHOW

13  AGAIN, IN THAT CASE WAS NOT BASED ON THE STANDING ORDER OR THE

14  8(F) FRAUD PLEADING STANDARDS.  IT WAS A DESCRIPTION AND A

15  DECISION ABOUT WHAT THE PLEADING STANDARDS ARE IN RICO

16  ENTERPRISE CASES DEALING WITH THE ENTERPRISE DEFINITION.  NOT

17  FRAUD, NOT STANDING ORDER FRAUD, NOT 8(F) FRAUD, BUT

18  ENTERPRISE.  THIS CASE HAS BEEN CITED BY NUMEROUS COURTS,

19  INCLUDING THIS ONE, AS GOOD LAW AND IT IS GOOD LAW,

20  NOTWITHSTANDING ARGUMENTS TO THE CONTRARY.

21      NOW, MY OPPOSING COUNSEL JUST MADE THE ARGUMENT THAT

22  THERE IS NO OBLIGATION TO PLEAD ANYTHING SPECIFIC RELATING TO

23  THE ENTERPRISE OTHER THAN ITS EXISTENCE AND ITS CONTINUITY.

24  AND THAT IS COMPLETELY CONTRARY TO CASES FROM THE U.S. SUPREME

25  COURT AND IN THIS JURISDICTION, INCLUDING, AGAIN, ELLIOTT V.

1    FOUFAS, U.S. V. TURKETTE, WHICH IS A U. S. SUPREME COURT CASE.

2    MONTESANO V. SEAFIRST, WHICH IS A FIFTH CIRCUIT, GIVENTER,

3    WHICH IS A FIFTH CIRCUIT, WALSH V. AMERICAS TELE-NETWORK,

4    WHICH IS A DISTRICT COURT CASE OUT OF TEXAS.

5        THE HIERARCHICAL OR CONSENSUAL DECISION MAKING STRUCTURE,

6    AGAIN, WHY IS THIS IMPORTANT?  WHY DID THE U.S. SUPREME COURT

7    IN REVES V. ERNST AND YOUNG SAY THAT THIS IS A NECESSARY

8    PLEADING REQUIREMENT?  BECAUSE OTHERWISE WHEN MY PARTNER,

9    GLENN LEGGE, AND I HAVE A BUSINESS TRANSACTION TOGETHER, WE

10   VIOLATE RICO.  WE WOULD BE AN ENTERPRISE.  WE WOULD BE COVERED

11   BY THIS STATUTE.  THAT IS NOT WHAT WAS INTENDED BY THIS LAW.

12   IN OTHER WORDS, IT HAS TO BE SOMETHING OUTSIDE OF JUST A

13   REGULAR INTERACTION.  IT HAS TO BE US CREATING AN ENTITY, IN

14   EFFECT, THAT HAS STRUCTURE, THAT HAS CONTINUITY, THAT HAS

15   DECISION MAKING IN WHICH WE BOTH PARTICIPATE, THAT DOES THINGS

16   AS AN ENTITY.

17       AND AGAIN, THERE HAS TO BE ECONOMIC IMPACT TO THE

18   ENTERPRISE.  NOW, THE REALITY HERE IS THAT IF A SERVICE

19   DEFENDANT IN THIS CASE ALLEGEDLY EMPLOYED ILLEGAL WORKERS, AND

20   IT SAVED MONEY BY DOING SO, AND I DO NOT CONCEDE FOR A MOMENT

21   THAT THEIR THEORY IS CORRECT THAT THE EMPLOYMENT OF ILLEGAL

22   WORKERS WOULD, IN FACT, REDUCE WAGES, GIVEN THE WORK

23   ENVIRONMENT IN PARTICULAR IN WHICH THE GULF COAST IS.

24       BUT EVEN IF ONE OF THE SERVICE DEFENDANTS WERE TO HAVE

25   THEORETICALLY DONE SO, IT WOULD NOT HAVE CREATED PROFIT FROM

1   THOSE REDUCED WAGES OR BENEFITS FOR ANYONE BUT THAT SERVICE

2   DEFENDANT.  BECAUSE PRESUMABLY, BASED ON THE ALLEGATIONS THAT

3   HAVE BEEN MADE IN THE COMPLAINT, THERE IS LAWFUL AND UNLAWFUL

4   RECRUITMENT GOING ON.  NOT ILLEGAL CONDUCT BY THE MANNING

5   COMPANIES, BUT RECRUITMENT OF LAWFUL AND UNLAWFUL WORKERS.

6   AND PRESUMABLY, BASED ON THE PLEADINGS AS THEY EXIST, THERE IS

7   A PAYMENT THAT IS MADE FOR THAT.  THAT HAS NOTHING TO DO,

8   BASED ON THE PLEADINGS THAT HAVE BEEN FILED IN THIS CASE, ON

9   HOW MUCH ONE COMPANY PAYS THE PERSON IT EMPLOYS.

10       SO AGAIN, THERE WOULD BE NO PROFIT FROM THIS ENTERPRISE,

11  AS THEY FRAME IT, THAT WOULD BE GOING TO ANYONE OTHER THAN THE

12  ACTOR ITSELF.  AGAIN, NO SEPARATE IDENTITY FROM THE ENTERPRISE

13  ITSELF.  THAT IS NOT RICO. THAT IS NOT RICO.

14       I WOULD CALL THE COURT'S ATTENTION TO ONE ADDITIONAL

15  SECTION IN THE COMPLAINT AND THAT IS SECTION 4.4.  I'M SORRY

16  IT'S NOT THE SECTION -- 4.14, WHICH TALKS ABOUT THE SERVICE

17  DEFENDANTS HAVE DIRECTED THE MANNING DEFENDANTS TO RECRUIT AND

18  EMPLOY WORKERS WHO THE MANNING DEFENDANTS KNOW ARE IN MOST

19  CASES ILLEGALLY EMPLOYED ON THE OCS.  NOT THAT THEY THEMSELVES

20  ARE VIOLATING THE LAW BY RECRUITING, NOT THAT THEY THEMSELVES

21  ARE VIOLATING THE LAW BY HANDLING, BUT THAT THEY KNOW THERE

22  WILL BE A VIOLATION OF THE LAW BY THE SERVICE DEFENDANT THAT

23  CONTRACTED THEM.  THAT WOULD BE AS IF I KNEW WHEN I RECRUITED

24  EMPLOYEES AND SENT THEM TO GO WORK FOR A COMPANY THAT THEY

25  MIGHT NOT OBEY OVERTIME LAWS.  DOES THAT MAKE A RICO

1    CONSPIRACY AND A RICO VIOLATION? I THINK NOT.  AND THERE IS NO

2    CASE THAT WOULD SAY SUCH A THING.

3         IN CLOSING, YOUR HONOR, THERE IS NO PROPER ALLEGATION IN

4    THIS CASE OF A RICO ENTERPRISE AND RICO PREDICATE ACTS THAT

5    ARE BEING DONE THROUGH A RICO ENTERPRISE.  THIS CASE IS

6    FUNDAMENTALLY DIFFERENT THAN THE OTHER CASES THAT HAVE BEEN

7    FILED.  THIS IS A CONTRIVED AND COCKAMAMY SCHEME IN WHICH

8    ALLEGEDLY DOZENS OF COMPANIES ARE SOMEHOW FIXING WAGES AND

9    BENEFITS IN MANNERS WHICH ARE NOT DESCRIBED IN ANY DETAIL

10   OTHER THAN THAT THEY ARE DOING THAT.  AND AGAIN, THAT IS NOT

11   WHAT RICO WAS INTENDED TO DO.  THIS CASE SHOULD BE DISMISSED.

12   WE SHOULD ALL BE LEFT IN PEACE AND NOT HAVE TO SPEND THE TIME

13   AND MONEY TO FIGHT ABOUT THIS.

14        THE COURT: WHAT ISSUES ARE LEFT REMAINING?

15        MR. LEBLANC: YOUR HONOR, JOSEPH LEBLANC FOR J. RAY

16   MCDERMOTT.  THERE ARE TWO ISSUES THAT WE WOULD ADDRESS ON

17   BEHALF OF ALL DEFENDANTS, PLAINTIFF'S SECOND CAUSE OF ACTION,

18   WHICH IS THE NEGLIGENCE CAUSE OF ACTION, AND PLAINTIFF'S THIRD

19   CAUSE OF ACTION, WHICH IS THE ALLEGED VIOLATION OF THE OXLA

20   MANNING REQUIREMENTS.

21        THE COURT: ABOUT HOW LONG DO YOU FEEL THAT WILL

22   TAKE?

23        MR. LEBLANC: IN LIGHT OF YOUR HONOR'S INQUIRY, NOT

24   LONG.

25        THE COURT: I WAS TRYING TO DECIDE. WHY DON'T WE TAKE

1   A SHORT RECESS OF ABOUT TEN MINUTES.  I GAVE YOU A CERTAIN

2   AMOUNT OF TIME.  YOU ARE NOT REQUIRED TO USE IT, BUT CERTAINLY

3   ALLOWED.

4        (RECESS AT 3:11 P.M., UNTIL 3:24 P.M., OPEN COURT, ALL

5   PARTIES PRESENT)

6           THE COURT: PLEASE BE SEATED.  MS. MARTIN TELLS ME

7   YOU HAVE THIRTEEN MINUTES REMAINING.

8           MR. LEBLANC: THANK YOU, YOUR HONOR.  AGAIN, MY NAME

9   IS JOSEPH LEBLANC PRESENTING THE ARGUMENT ON BEHALF OF ALL

10  DEFENDANTS WITH RESPECT TO PLAINTIFF'S SECOND CAUSE OF ACTION

11  SOUNDING IN NEGLIGENCE.  THIS CAUSE OF ACTION CONSISTS OF ONE

12  PARAGRAPH, PARAGRAPH 5.1 ON PAGE 19 OF THE THIRD AMENDED

13  COMPLAINT THAT CONSISTS OF FIVE LINES, AND THAT'S IT.  AND

14  BASICALLY WHAT THEY ALLEGE THERE, AND INTERESTINGLY THEY FOR

15  SOME REASON PLEADED IN THE ALTERNATIVE TO THE RICO VIOLATION,

16  BUT THEY CLAIM THAT THE SERVICE DEFENDANTS AND THE MANNING

17  DEFENDANTS WERE NEGLIGENT IN THEIR HIRING PRACTICES RESULTING

18  IN UNSAFE WORKING CONDITIONS AND REAL OR POTENTIAL BODILY

19  INJURY TO THE PLAINTIFFS.

20       WELL, THERE ARE A NUMBER OF THINGS WRONG WITH THAT RIGHT

21  ON THE FACE OF THINGS.  NUMBER ONE, NEGLIGENT HIRING PRACTICES

22  WOULD NOT BE ACTIONABLE AT ALL EVEN IF IT WERE TRUE, UNLESS

23  THEY ACTUALLY CAUSED SOME HARM AND RESULTED IN SOME DAMAGE.

24  NONE OF THAT IS ACTUALLY ALLEGED HERE IN TERMS OF ANY ACTUAL

25  BODILY INJURY.  THEY REFER TO REAL OR POTENTIAL BODILY INJURY.

1   POTENTIAL BODILY INJURY DOESN'T GET THEM THERE EITHER.   IT IS

2   NOT ACTIONABLE IF THERE MAY BE POTENTIAL BODILY INJURY THAT

3   NEVER OCCURS.

4        SO THEN YOU COME BACK TO THEIR ALLEGATION OF REAL BODILY

5   INJURY, AND IT IS NEVER MENTIONED AGAIN IN THE THIRD AMENDED

6   COMPLAINT.   AND SO YOU ARE LEFT WITH THE FEELING THAT THEY

7   REALLY DON'T MEAN THAT.   AND THEN WHEN YOU LOOK AT THE BRIEFS

8   THAT THEY FILE, YOU REALIZE THEY REALLY DON'T.

9        SO IF YOU GO TO THE, FOR EXAMPLE, THEIR OPPOSITION TO THE

10  MOTIONS TO DISMISS FILED BY ALL DEFENDANTS, ON PAGE 30 IN

11  FOOTNOTE 31, HERE THEY ARE TRYING TO AVOID THE ARGUMENT THAT

12  THERE IS NO NEGLIGENCE CAUSE OF ACTION BECAUSE THE REMEDY

13  WOULD BE IN STATE WORKER'S COMP OR LONGSHORE AND HARBOR

14  WORKER'S ACT, OR SOMETHING LIKE THAT.   AND SO IN FOOTNOTE 31

15  THEY SAY: GENERALLY SPEAKING, WORKER'S COMPENSATION IS

16  DESIGNED TO COMPENSATE AN INJURED EMPLOYEE FOR BODILY

17  INJURIES, NOT PERSONAL ECONOMIC LOSS AS ALLEGED HERE. THAT

18  PRETTY WELL ILLUSTRATES THAT WHAT THEY ARE TALKING ABOUT HERE

19  IS ECONOMIC LOSS, NOT BODILY INJURY.   AND THEY CERTAINLY DON'T

20  ALLEGE IT.

21       AGAIN ON PAGE 43 OF THAT SAME OPPOSITION, THEY SAY THIS

22  CASE IS ESSENTIALLY A CLAIM FOR ECONOMIC LOSS OCCASIONED BY

23  DEFENDANT'S WRONGFUL CONDUCT.   AS IF THAT WEREN'T ENOUGH, IN

24  THEIR SUR-REPLY ON PAGE 17, AGAIN NOW THEY ARE TRYING TO GET

25  OUT FROM UNDER THE FIFTH CIRCUIT'S HOLDING IN WENTZ, AND THERE

1   THEY SAY IF THESE PLAINTIFFS WERE SUING THESE DEFENDANTS FOR

2   BODILY INJURIES THEY RECEIVED IN THE COURSE AND SCOPE OF THEIR

3   OFFSHORE EMPLOYMENT, THEN WENTZ WOULD BE AUTHORITY TO DISMISS

4   THEIR OXLA SUIT.

5        SO HERE THEY ARE SAYING WELL, IF THAT'S WHAT WE WERE

6   SAYING, YOU MIGHT HAVE A POINT, DEFENDANTS, BUT WE'RE NOT

7   SAYING THAT AT ALL.  SO I THINK WHAT WE ARE LEFT WITH IS THEY

8   DON'T ALLEGE ANY REAL BODILY INJURY OR ACTUAL BODILY INJURY.

9   THEIR ALLEGATIONS OF POTENTIAL BODILY INJURY AND VAGUE

10  REFERENCES TO NEGLIGENT HIRING PRACTICES WITHOUT ANY CAUSATIVE

11  EFFECT OR DAMAGE DON'T GET THEM ANYWHERE.

12       AND THEY GO ON TO SAY THAT THIS NEGLIGENCE THAT THEY

13  NEVER REALLY DESCRIBE, I MEAN, THEY DON'T REALLY SAY EXACTLY

14  WHAT ACT ON THE PART OF ANY DEFENDANT WAS ALLEGED TO HAVE BEEN

15  NEGLIGENT OR CAUSED HARM TO ANY PARTICULAR PLAINTIFF, BUT THEY

16  SAY THAT THAT IS A PROXIMATE CAUSE OF THE PERSONAL AND BODILY

17  INJURIES, AND WE HAVE JUST SEEN THERE ARE NONE OF THOSE.

18  DEPRESSED WAGES, OKAY, SO NOW THEY ARE SAYING THAT IT WAS

19  SOMEHOW SOME NEGLIGENCE CAUSE OF ACTION FOR DEPRESSED WAGES,

20  BUT THERE IS NO NON-CONTRACTUAL DUTY TO AN EMPLOYEE WITH

21  RESPECT TO THE PAYMENT OF WAGES.  I MEAN, THE PAYMENT OF WAGES

22  WOULD BE A FUNCTION OF AN EMPLOYMENT RELATIONSHIP, AND SO

23  THERE WOULD BE NO TORT DUTY ASSOCIATED WITH THAT.

24       THE PLAINTIFFS DO PRETTY WELL ADMIT THAT ALL THEY ARE

25  TALKING ABOUT HERE WOULD BE THE RELATIONSHIP BETWEEN AN

1    INDIVIDUAL PLAINTIFF AND THAT PLAINTIFF'S EMPLOYER.  AND SO I

2    GATHER THEY ARE WILLING TO ADMIT AND HAVE ADMITTED, THEY ARE

3    NOT SAYING THAT ANY PLAINTIFF HAS ANY CLAIM AGAINST ANY

4    EMPLOYER OR ANY DEFENDANT BY WHOM THAT PERSON WAS NOT

5    EMPLOYED.  AND I THINK THAT IS PRETTY EVIDENT FROM WHAT MR.

6    SPAGNOLETTI TOLD YOUR HONOR AT THE OUTSET OF THIS PROCEEDING,

7    AND THAT IS THAT THEY AGREE TO VOLUNTARILY DISMISS THE CLAIMS

8    AGAINST STOLT BECAUSE THERE WAS NO PLAINTIFF IN THIS CASE THAT

9    WAS ACTUALLY EMPLOYED BY STOLT.

10        SO, YOU KNOW, WITH RESPECT TO THIS ALLEGATION OF

11   DEPRESSED WAGES, IT WOULD ONLY BE, THE ALLEGATION WOULD ONLY

12   APPLY TO AN INDIVIDUAL PLAINTIFF'S EMPLOYMENT BY AN INDIVIDUAL

13   DEFENDANT AND NO MORE.  THERE IS NO NON-CONTRACTUAL DUTY, AND

14   THE CLAIM AS A MATTER OF TORT LAW WOULD BE BARRED BY THE

15   ECONOMIC LOSS DOCTRINE.  I MEAN, EVERY STATE ALONG THE GULF

16   COAST OF THE UNITED STATES APPLIES THE SAME BASIC RULE THAT

17   YOU CANNOT RECOVER IN TORT FOR ECONOMIC LOSS WITHOUT PERSONAL

18   INJURY, WHICH WE HAVE SEEN THEY DON'T HAVE.

19        NOW, IN THEIR SUR-REPLY THEY TRY AND ARGUE WELL, THOSE

20   CASES ONLY APPLY IF THEY ARISE IN SOME CONTRACTUAL SETTING,

21   BUT AS WE HAVE SEEN, THE CASE THAT THEY ARE ALLEGING ISN'T A

22   CONTRACTUAL SETTING BECAUSE THEY ARE ONLY ASSERTING DEPRESSED

23   WAGES BY A PARTICULAR PLAINTIFF EMPLOYED BY A PARTICULAR

24   DEFENDANT AS A FUNCTION OF A CONTRACTUAL EMPLOYMENT

25   RELATIONSHIP.  SO, THEY ARE UNABLE TO POINT TO ANY VALID WAY

1   TO DISTINGUISH THE UNIFORM LINE OF CASES THAT THE ECONOMIC

2   LOSS DOCTRINE PRECLUDES THEIR ASSERTION OF A TORT CLAIM

3   BECAUSE THEY HAVE NOT ASSERTED, ALLEGED, OR IDENTIFIED ANY

4   REAL BODILY INJURY THAT HAPPENED TO ANYBODY.

5          I ALSO POINT THIS OUT, MR. FOSTER DID, AND DIRECTING YOUR

6   HONOR'S ATTENTION TO PARAGRAPH 1.3 IN THE THIRD AMENDED

7   COMPLAINT WHERE HE SAID: PLEASE NOTE THAT ALL WE ARE TALKING

8   ABOUT IS A DEFENDANT'S DEPRESSION, ALLEGED DEPRESSION OF WAGES

9   FOR THEIR EMPLOYEES.  SO, THEY ARE NOT TRYING TO GO ANY MORE

10  BROADLY THAN THAT.

11         SO, IF YOU LOOK CAREFULLY, AND THEY ALSO REFER IN HERE AS

12  ONE OF THE EFFECTS OF THIS ALLEGEDLY NEGLIGENT CONDUCT THAT IS

13  NEVER REALLY IDENTIFIED AS UNSAFE WORKING CONDITIONS, BUT

14  AGAIN, UNSAFE WORKING CONDITIONS IN AND OF THEMSELVES ARE NOT

15  ACTIONABLE UNLESS THEY DON'T CAUSE ANY HARM, IF THEY DON'T

16  RESULT IN ANY DAMAGE OR INJURY.  AND HERE THEY HAVE NOT

17  ALLEGED, HAVE NOT IDENTIFIED ANY UNSAFE WORKING CONDITION,

18  MUCH LESS ALLEGED THAT IT ACTUALLY CAUSED ANYBODY HARM.  THEY

19  HAVE IDENTIFIED NONE OF THIS.

20         SO THERE IS ABSOLUTELY, WE SUBMIT, YOUR HONOR, NO BASIS

21  WHATSOEVER FOR THE NEGLIGENCE CAUSE OF ACTION.  THERE WAS

22  EXTENSIVE ARGUMENT ON THE RICO CAUSE OF ACTION AND THERE IS

23  CERTAIN ISSUES THERE, BUT ON THIS, NEGLIGENCE, ONE PARAGRAPH,

24  FIVE LINES WITH NO MORE THAN THIS, TALKING ABOUT CONDITIONS

25  THAT DON'T CAUSE HARM AND POTENTIAL THIS AND POTENTIAL THAT,

1   WE SUBMIT, YOUR HONOR, ON THE FACE OF THINGS THERE IS

2   ABSOLUTELY NO BASIS FOR THEM TO ASSERT A NEGLIGENCE CAUSE OF

3   ACTION.

4           THE COURT: RESPONSE.

5           MR. SPAGNOLETTI: JUDGE, THE NEGLIGENCE CAUSE OF

6   ACTION, AS YOU KNOW, HAS BEEN PLEADED IN THE ALTERNATIVE.  AND

7   WE ARE NOT CLAIMING ANY PERSONAL INJURY AS A RESULT OF THAT.

8           THE COURT: WHAT ARE YOU CLAIMING?

9           MR. SPAGNOLETTI: JUDGE, I THOUGHT THAT THE

10  DEFENDANTS WOULD APPRECIATE THE NEGLIGENCE CAUSE OF ACTION.

11  THIS IS THE FIRST TIME I HAVE SEEN DEFENDANTS ARGUE AGAINST

12  THEIR OWN INTEREST.  BUT IF THEY ARE NOT HAPPY WITH THE

13  NEGLIGENCE CAUSE OF ACTION, JUDGE, I UNDERSTAND THE

14  DIFFICULTIES WITH IT.  THE NEGLIGENCE THAT IS ALLEGED, JUST TO

15  BE SUCCINCT ABOUT IT, ALTHOUGH WE WEREN'T SO SUCCINCT IN THE

16  COMPLAINT, IS THAT BASICALLY THERE WERE NEGLIGENT HIRING

17  PRACTICES THAT WOULD BE IN THE ALTERNATIVE TO WHAT IS

18  ESSENTIALLY THE RICO HIRING PRACTICES, WHICH ARE INTENTIONAL,

19  AND THAT THOSE HIRING PRACTICES RESULTED IN DAMAGES BY WAY OF

20  SUPPRESSION OF WAGES TO THESE PLAINTIFFS.  IF THE ECONOMIC

21  LOSS DOCTRINE --

22          THE COURT: I GUESS I AM TRYING TO DETERMINE IS THAT

23  A CONCESSION ON THIS CAUSE OF ACTION OR IS THIS --

24          MR. SPAGNOLETTI: IT IS PRETTY MUCH OF A CONCESSION,

25  JUDGE, BUT SOMETIMES, YOU KNOW, DEFENDANTS GET WHAT THEY ASK

1    FOR.   SOMETIMES YOU GET WHAT YOU ASK FOR.

2              THE COURT: THEY ARE ASKING FOR IT.

3              MR. SPAGNOLETTI: JUDGE, WE BROUGHT THAT, AND WE

4    UNDERSTAND THE ILLEGAL ISSUES.

5              THE COURT: VERY WELL.   THIS IS EITHER A RICO CASE OR

6    NOT?

7              MR. SPAGNOLETTI: IT'S THE RICO CASE AND OXLA CASE,

8    JUDGE, NOT A NEGLIGENCE CASE.

9              THE COURT: YES.

10             MR. LEBLANC: THANK YOU, YOUR HONOR.   WE WILL NOW

11   TURN TO THE PLAINTIFF'S THIRD CAUSE OF ACTION FOR ALLEGED

12   VIOLATION OF THE OXLA MANNING REQUIREMENTS OF 45 U.S.C. 1356.

13   THE PLAINTIFFS ASSERT A PRIVATE CAUSE OF ACTION FOR DAMAGES

14   UNDER OXLA FOR THE ALLEGED VIOLATION OF THESE MANNING

15   REQUIREMENTS.   THEY CONCEDE THAT UNDER 45 U.S.C. 1349, WHICH

16   CONTAINS THE CITIZEN SUIT PROVISION OF OXLA, THAT THEY DON'T

17   HAVE A PRIVATE RIGHT OF ACTION FOR DAMAGES UNDER 1349(A)(1).

18   THAT IS AN ACTION SOLELY TO COMPEL COMPLIANCE AND PROVIDES

19   NOTHING IN THE WAY OF A CAUSE OF ACTION FOR DAMAGES.

20        THEY PIN ALL OF THEIR HOPES UPON THEIR READING OF 45

21   U.S.C. 1349(B)(2), WHICH IS UNDER THE VENUE AND JURISDICTION

22   PROVISION OF THE STATUTE IN WHICH THERE IS A REFERENCE TO

23   WHERE SOMEONE WHO IS INJURED MAY BRING AN ACTION FOR DAMAGES

24   IN A PARTICULAR COURT.   IT IS VENUE AND JURISDICTION.   AND

25   FROM THAT THEY TRY AND READ INTO IT OR INFER OR IMPLY WELL,

1    THAT CREATES A PRIVATE CAUSE OF ACTION FOR DAMAGES WHERE THERE

2    WASN'T ONE BEFORE.  AND THAT PROVISION WAS ADDED IN THE 1978

3    AMENDMENTS TO OXLA.

4         AND THE LANGUAGE IS BROAD LANGUAGE AND THAT ISSUE WAS

5    BROUGHT UP RIGHT AFTER THE AMENDMENTS WERE ENACTED TO THE

6    FIFTH CIRCUIT IN THE WENTZ DECISION.  AND THE FIFTH CIRCUIT

7    LOOKED AT IT AND SAID WELL, WE CAN UNDERSTAND WHY SOME PEOPLE,

8    AND YOU KNOW, NOT NECESSARILY THE PLAINTIFFS, BUT SOME PEOPLE

9    MIGHT BE CONFUSED BY THIS BROAD LANGUAGE, SO LET US BE VERY

10   CLEAR.  WE HAVE LOOKED AT THE LEGISLATIVE HISTORY.  WE HAVE

11   LOOKED AT WHAT WE GLEAN TO BE THE INTENT OF CONGRESS.  WE LOOK

12   AT THE FACT THAT THIS WAS NO MORE THAN A JURISDICTIONAL AND

13   VENUE PROVISION THAT WAS NOT MEANT TO CREATE A NEW CAUSE OF

14   ACTION, AND WE FIND AND WE HOLD THAT THAT PROVISION OF

15   1349(B)(2) DOES NOT CREATE A PRIVATE CAUSE OF ACTION FOR

16   DAMAGES.  THIS IS THE RULING OF THE FIFTH CIRCUIT.

17        NOW, PLAINTIFFS COME IN AND THEY SAY WELL, WHY DON'T WE

18   LOOK AT THE SURFACE MINING CONTROL AND RECLAMATION ACT RIGHT

19   AROUND, RIGHT BEFORE 1978, I THINK IN '77 THEY ADDED IN A

20   PROVISION THERE FOR A PRIVATE RIGHT OF ACTION FOR DAMAGES, AND

21   SO THAT IS AN INDICATION THAT PERHAPS THE SAME THING WAS

22   INTENDED IN OXLA.  WELL, THERE ARE TWO RESPONSES TO THAT.

23   NUMBER ONE, IF YOU LOOK AT THE LEGISLATIVE HISTORY OF BOTH OF

24   THOSE ACTS UNDER THE SURFACE MINING ACT, THAT PROVISION IS

25   UNDER A SECTION ENTITLED ACTION FOR DAMAGES.  IF YOU LOOK AT

1    WHERE IT IS IN THE OXLA AMENDMENT, IT IS UNDER A SECTION

2    ENTITLED JURISDICTION AND VENUE.  AND THEN YOU ALSO LOOK AT

3    THE FIFTH CIRCUIT'S CONSIDERATION OF THIS PRECISE ISSUE AND

4    ITS DECISION UPON THAT ISSUE DIRECTLY CONTRARY TO THE CLAIM

5    ASSERTED BY THE PLAINTIFFS HERE.  SO WE SUBMIT, YOUR HONOR,

6    THAT THEY HAVE NO PRIVATE RIGHT OF ACTION FOR DAMAGES UNDER

7    OXLA FOR VIOLATION OF THE MANNING PROVISIONS OF OXLA.

8        THERE IS ALSO ANOTHER ISSUE WITH RESPECT TO THE SIXTY DAY

9    NOTICE REQUIREMENT IN SECTION 1349.  DEFENDANTS CONTEND THAT

10   REQUIREMENT, WHICH IS MANDATORY AND REQUIRES DISMISSAL IF IT

11   IS NOT MET, HAS NOT BEEN MET HERE AND REQUIRES THE DISMISSAL

12   OF THIS LAWSUIT.

13       THE COURT: IF I UNDERSTAND, NOTICE WAS GIVEN THE DAY

14   BEFORE.

15       MR. LEBLANC: WELL, IF YOU GO BACK TO THE, YOU GO

16   BACK TO THE ORIGINAL --

17       THE COURT: AT LEAST THAT IS THE PLAINTIFF'S

18   POSITION.

19       MR. LEBLANC: IT IS.  NOW LET ME RUN THROUGH THIS.

20   THE COMPLAINT WAS ORIGINALLY FILED ON AUGUST 19TH, 2004.  NO

21   NOTICE WAS GIVEN.  IT WAS DISMISSED WITHOUT PREJUDICE AND

22   REFILED ON DECEMBER 17TH, 2004.  NO NOTICE WAS GIVEN.  THE

23   FIRST AMENDMENT WAS FILED ON MARCH 3RD, 2005.  NOW ON THAT

24   SAME DAY, NOT THE DAY BEFORE, THAT SAME DAY THEY MAILED OUT A

25   NOTICE THAT CURIOUSLY WAS DATED IN JANUARY, WASN'T MAILED OUT

1   UNTIL THE 3RD, WASN'T RECEIVED BY ANYBODY UNTIL THE 4TH.   SO

2   THAT HARDLY COMPLIES WITH THE SIXTY DAY NOTICE REQUIREMENT.

3       NOW, THEY THEN, KNOWING THAT THEY DO NOT COMPLY WITH THAT

4   REQUIREMENT, I THINK THEY HAVE TRIED TO BRING THEMSELVES

5   WITHIN THE IMMEDIATE HARM EXCEPTION THAT CAN DISPENSE WITH THE

6   NEED FOR SIXTY DAY NOTICE, BUT TO DO THAT YOU NEED TO SHOW

7   IMMEDIATE HARM.   AND THE PLAINTIFFS IN THIS CASE ALLEGE ONLY

8   THAT THEY ARE FORMER EMPLOYEES OF VARIOUS DEFENDANTS.   THEY

9   DON'T CLAIM THERE IS ANY IMMEDIACY IN THEIR CURRENT

10  EMPLOYMENT.   THEY DON'T CLAIM THAT THEY ARE IN IMMINENT DANGER

11  OF ANY HARM.   THEY DO NOTHING TO BRING THEMSELVES WITHIN THAT

12  IMMINENT DANGER OR NEED REQUIREMENT THAT WOULD DISPENSE WITH

13  NOTICE.

14      NOW THE CURRENT COMPLAINT, THE NOTICES THAT I HAVE

15  REFERRED TO UP TO NOW WERE GIVEN ON BEHALF OF DANNY

16  CUNNINGHAM, YOU KNOW, THE ORIGINAL PLAINTIFF.   HE HAS

17  CONTINUED TO BE LISTED AS A PLAINTIFF, ALTHOUGH HE IS

18  DECEASED.   ON AUGUST 4TH, 2005, A NOTICE WAS SENT OUT BY ONE

19  OTHER PLAINTIFF, PABLO RUBIO LLAMAS, AND THAT WAS SENT OUT THE

20  DAY BEFORE THE FILING OF THE THIRD AMENDED COMPLAINT.   SO

21  AGAIN, THERE IS NO COMPLIANCE WITH THE SIXTY DAY NOTICE

22  REQUIREMENT.   THE SAME ALLEGATION HE WAS A FORMER EMPLOYEE,

23  THE SAME FAILURE TO SHOW ANY NEED THAT WOULD DISPENSE WITH

24  COMPLIANCE WITH THE SIXTY DAY NOTICE REQUIREMENT, WHICH LEAVES

25  US WITH A CONTINUED NON-COMPLIANCE WITH THE SIXTY DAY NOTICE

1   REQUIREMENT.

2        NOW, I DON'T THINK THERE IS ANY DISPUTE ABOUT THE CASE

3   LAW HOLDING NOTICE REQUIREMENTS SUCH AS THIS FOR CITIZEN SUITS

4   ARE MANDATORY, AND THEY ARE HELD TO BE MANDATORY BECAUSE THEY

5   SERVE A VERY USEFUL PURPOSE.  THEY ARE DESIGNED TO ALLOW AN

6   AGENCY TO WHOM THE NOTICE IS GIVEN TO ENFORCE LAWS AND

7   REGULATIONS.  THEY ARE DESIGNED TO GIVE AN ALLEGEDLY OFFENDING

8   PARTY AN OPPORTUNITY TO COME INTO COMPLIANCE IF THEY THINK

9   THAT IS WARRANTED.  BUT ALL OF THAT WAS CIRCUMVENTED HERE.

10       AND IT IS NOT LIKE IT WAS AN ACCIDENT.  I MEAN, AS HAD

11  BEEN POINTED OUT BEFORE, THESE COMPLAINTS HAVE BEEN DRAGGING

12  ON SINCE AUGUST 19TH, 2004.  WE ARE STILL AT THE SAME STATE,

13  AFTER NUMEROUS REFILINGS, WE ARE NOW ON THE THIRD AMENDED

14  COMPLAINT, AND THERE STILL HAS BEEN NO COMPLIANCE WITH THE

15  SIXTY DAY NOTICE REQUIREMENT AND THERE HAS BEEN NO SHOWING OF

16  ANY BASIS TO ASSERT AN IMMEDIATE NEED THAT WOULD DISPENSE WITH

17  THAT REQUIREMENT.

18       I ALSO MAY ADD THAT THESE TWO NOTICES ON BEHALF OF MR.

19  CUNNINGHAM AND MR. LLAMAS, THOSE WERE THE ONLY NOTICES GIVEN,

20  TWO OUT OF THE FIVE PLAINTIFFS.  FOR THE OTHER PLAINTIFFS NO

21  NOTICE HAS EVER BEEN GIVEN.  SO WE HAVE HERE AN EXAMPLE OF

22  JUST NON-COMPLIANCE, YOU KNOW, WITH THE NOTICE PROVISION.  WE

23  SUBMIT THAT IF THE NOTICE PROVISIONS MEAN ANYTHING AT ALL, IF

24  THEY ARE TO BE APPLIED AND RECOGNIZED AS MANDATORY, AS THEY

25  HAVE BEEN HELD, THEN IT REQUIRES DISMISSAL OF THIS LAWSUIT.

1    YOU KNOW, IT IS NOT THE DEFENDANTS THAT FAIL TO COMPLY WITH

2    THE REQUIREMENTS, AND WE SUBMIT PLAINTIFFS HAVE ONLY

3    THEMSELVES TO BLAME FOR AFTER ALL THIS TIME WHAT I CAN ONLY

4    ASSUME WAS A FAIRLY KNOWING AND CONSCIOUS AWARENESS OF THEIR

5    NON-COMPLIANCE WITH THESE REQUIREMENTS.  THANK YOU, YOUR

6    HONOR.

7              THE COURT: RESPONSE.  HOW MUCH TIME DOES THE

8    PLAINTIFF HAVE?

9              THE CLERK: THIRTY-FOUR MINUTES.

10             THE COURT: THIRTY-FOUR MINUTES.  I TRUST YOU WILL

11   NOT NEED ALL OF THAT.

12             MR. SPAGNOLETTI: NO, JUDGE, I WON'T.  JUDGE, LET ME

13   ADDRESS THE ISSUE OF THE OXLA CAUSE OF ACTION FIRST.  THE OXLA

14   CAUSE OF ACTION ITSELF IS GROUNDED IN THE STATUTE.  AND THE

15   PROVISION ITSELF, ALTHOUGH CONTAINED AS COUNSEL SAID UNDER THE

16   JURISDICTIONAL, IT SAYS JURISDICTION AND VENUE, THE PROVISION

17   ITSELF STATES SPECIFICALLY THAT THE CAUSE OF ACTION GIVES RISE

18   TO AN ACTION FOR DAMAGES.  ANY CLAIM FOR DAMAGES IS WHAT THE

19   SECTION SAYS.  AND IT SAYS ANY PERSON INJURED CAN MAKE A CLAIM

20   FOR DAMAGES.

21        I MEAN, IF THAT IS NOT THE PLAIN LANGUAGE OF THE STATUTE

22   THAT GIVES RISE TO A CAUSE OF ACTION, I DON'T KNOW WHAT IS.

23   WHAT IS BEING OBFUSCATED HERE IS THAT IN WENTZ THE COURT SAID

24   THAT IF THERE IS A JONES ACT CAUSE OF ACTION -- THAT PERSONAL

25   INJURY CAUSES OF ACTION ARE COVERED BY OTHER STATUTES.  AND

1    THAT THE OCSLA DOES NOT CREATE A NEW AND SEPARATE CAUSE OF

2    ACTION FROM WHAT HAS ALREADY BEEN PROVIDED THAT IS UNDER THE

3    OCSLA, I'M SORRY, UNDER THE JONES ACT, UNDER THE LONGSHOREMAN

4    AND HARBOR WORKER'S COMPENSATION ACT, OR UNDER OTHER STATE

5    WORKERS COMPENSATION REMEDIES WHICH MIGHT SUPPLEMENT THOSE

6    OTHER CAUSES OF ACTION.  IT IS NOT A SITUATION, AND IT SAYS

7    THE OCSLA DOESN'T CREATE A NEW CAUSE OF ACTION FOR THAT.

8        BUT CLEARLY UNDER THIS STATUTE, THE WAY IT IS WRITTEN,

9    CLEARLY SAYS THAT ANY PERSON INJURED AS A RESULT OF ANY

10   VIOLATION OF ANYTHING UNDER THE OCSLA HAS A RIGHT FOR DAMAGES.

11       THE COURT: YOU CITE BABBIT FOR THAT PROPOSITION.

12   WHAT WAS INVOLVED IN THAT CASE, DO YOU KNOW?

13       MR. SPAGNOLETTI: JUDGE, I DON'T REMEMBER WHAT WAS

14   INVOLVED WITH BABBIT.  I DO REMEMBER THAT THE STATUTE ITSELF,

15   THAT THE STATUTE ITSELF SAYS ANY RESIDENT OF THE UNITED STATES

16   WHO IS IN -- BABBIT WAS, I THINK, THE MINING CASE ESSENTIALLY

17   THAT CREATED THE PRIVATE CAUSE OF ACTION AND WAS A SIMILAR

18   CASE TO THIS, BECAUSE THE STATUTE TRACKS THE SAME.

19       IN THIS STATUTE I CAN SEE THAT IT, UNDER SECTION B OF 43

20   U.S.C. SECTION 1349, NUMBER 2, IT SAYS: ANY RESIDENT OF THE

21   UNITED STATES WHO IS INJURED IN ANY MANNER THROUGH THE FAILURE

22   OF ANY OPERATOR TO COMPLY WITH ANY RULE, REGULATION, ORDER, OR

23   PERMIT ISSUED PURSUANT TO THIS SUBCHAPTER MAY BRING AN ACTION

24   FOR DAMAGES, INCLUDING REASONABLE ATTORNEY FEES AND EXPERT

25   WITNESS FEES, ONLY IN THE JUDICIAL DISTRICT HAVING

1    JURISDICTION UNDER PARAGRAPH 1 OF THIS SECTION.

2        I MEAN, IT CLEARLY SAYS THAT YOU HAVE A RIGHT FOR

3    DAMAGES, AND WHERE ELSE, HOW ELSE COULD YOU BRING THIS CAUSE

4    OF ACTION EXCEPT UNDER THE OCSLA FOR ITS VIOLATIONS?  THESE

5    WORKERS ARE INJURED BY THE WRONGFUL ACTS OF IMPROPERLY HIRING

6    ILLEGAL ALIENS IN VIOLATION OF THE STATUTE ITSELF.  WHO BETTER

7    TO HAVE STANDING TO BRING THAT CAUSE OF ACTION FOR DAMAGES

8    THAN THE WORKERS THEMSELVES WHO ARE INJURED AS A RESULT OF

9    BEING DEPRIVED OF THEIR JOBS BECAUSE WE ARE BRINGING WORKERS

10   IN AT TWO BUCKS AN HOUR, OR A DOLLAR FIFTY AN HOUR, AND

11   WORKING THEM A HUNDRED TWENTY DAYS ON WITH NO TIME OFF, OR

12   MORE THAN THAT, SEVEN DAYS A WEEK.  AND SO IT IS THIS KIND OF

13   -- WHO ELSE WAS CONGRESS TRYING TO PROTECT OTHER THAN ANY

14   RESIDENT OF THE UNITED STATES?  AND THAT IS THE EMPHASIS THERE

15   IS ANY RESIDENT OF THE UNITED STATES.

16         THE COURT: WHAT ABOUT THIS NOTICE ISSUE?

17         MR. SPAGNOLETTI: JUDGE, ON THE NOTICE ISSUE, WE DID

18   GIVE NOTICE THE DAY BEFORE THE SUIT WAS FILED.  AND I THINK

19   THE REAL ISSUE THAT COMES DOWN IS THAT, AND IT IS ADDRESSED IN

20   OUR BRIEF, BUT THE REAL ISSUE THAT COMES DOWN IS WHETHER OR

21   NOT, IN FACT, THAT ONE DAY NOTICE IS IMMINENT NOTICE.  AND THE

22   QUESTION, THE QUESTION IN OUR VIEW IS THAT IT IS IMMINENT

23   BECAUSE WE NEEDED TO FILE THE CASE AS SOON AS POSSIBLE,

24   BECAUSE THERE IS CONTINUING HARM THAT WAS GOING ON.  WE ALSO

25   PLED FOR AN INJUNCTION IN THIS MATTER.  THE HARM WAS

1    CONTINUING, AND IT GAVE -- THEY HAVE HAD PLENTY OF TIME IN

2    ORDER TO DEAL WITH THIS NOTICE ISSUE.

3        THERE HAS BEEN NO MOVEMENT FOR AN ABATEMENT TO TRY TO DO

4    ANYTHING.  THERE HAS BEEN NO CONTACT BY ANY OUTSIDE AGENCY IN

5    ORDER TO TAKE OVER THIS CASE, NOTHING.  I MEAN, WE ARE THE

6    ONES WHO ARE ESSENTIALLY PURSUING THIS CASE IN ORDER TO

7    PROTECT THE RIGHTS OF THESE WORKERS.

8        AND, SO I MEAN OUR VIEW IS THAT IMMINENT HARM WAS

9    PRESENTED BECAUSE THERE WAS A CONTINUING HARM THAT WAS

10   HAPPENING ON A DAILY BASIS. MORE THAN THAT, MORE THAN THAT THE

11   IMMINENT HARM TO THE UNITED STATES INSOFAR AS THIS CASE, NOT

12   ONLY IN THE CONTEXT OF THE FAILURE TO PAY WAGES OR THE USE OF

13   ILLEGAL IMMIGRANTS IN THIS CONTEXT TO SUPPRESS WAGES, BUT THEY

14   ARE BRINGING OVER ILLEGAL IMMIGRANTS IN TERMS OF NATIONAL

15   SECURITY ISSUES.  THERE ARE ISSUES HERE THAT ARE IMMINENTLY

16   PRESENTED TO THIS COURT.

17       AND I REALIZE WE HAD TO ABATE THIS MATTER BECAUSE OF THE

18   APPEAL TO THE U.S. SUPREME COURT.  THAT DOESN'T TAKE AWAY THE

19   FACT THAT AS WE ARE STANDING HERE --

20       THE COURT: I DON'T BELIEVE YOU HAD TO.  YOU AGREED

21   TO.

22       MR. SPAGNOLETTI: WELL, IT WAS THE PRUDENT THING TO

23   DO, JUDGE, IN THE INTEREST OF JUDICIAL ECONOMY.  I THINK THAT

24   IS ESSENTIALLY THE ISSUES THAT ARE PRESENTED.

25       THE COURT: I APPRECIATE EVERYONE'S COMMENTS.  I

1   WOULD REQUEST THAT THE PARTIES ORDER A COPY OF THE TRANSCRIPT.

2   WE ARE GOING TO TALK ABOUT YOUR DISMISSAL.  ORDER A COPY OF

3   THE TRANSCRIPT AND SHARE THE COST.  WILL YOU BE FILING A

4   MOTION TO DISMISS THIS GENTLEMAN'S –

5           MR. SPAGNOLETTI: JUDGE, I THINK WE WORKED SOMETHING

6   OUT ESSENTIALLY WHERE I WOULD EITHER SUBSTITUTE IN A PLAINTIFF

7   –– I'LL GIVE HIM THE NAME, AND HIS CLIENT WILL DETERMINE

8   WHETHER OR NOT THEY WOULD ACCEPT THE SUBSTITUTION OF A

9   PLAINTIFF, OR WE WOULD AGREE TO DISMISS IT.  SO WE NEED A

10  LITTLE BIT OF TIME I THINK TO WORK THAT OUT.

11          MR. CUNNINGHAM: I THINK THAT'S RIGHT, YOUR HONOR.

12          THE COURT: LET'S TALK ABOUT A TIME PERIOD.  HOW

13  LONG, SO THIS DOESN'T DROP THROUGH –

14          MR. SPAGNOLETTI: TEN DAYS, JUDGE, IS THAT

15  SUFFICIENT?

16          MR. CUNNINGHAM: TEN DAYS IS FINE WITH ME, YOUR

17  HONOR.  MY UNDERSTANDING IS THAT HE WILL DISMISS EITHER WAY,

18  BUT HE ALSO WILL PROVIDE ME WITH A LIST OF POTENTIAL NEW

19  PLAINTIFFS.  AND WE WILL AGREE EITHER TO ALLOW HIM TO

20  SUBSTITUTE OR HE WILL COMMENCE A NEW LAWSUIT.

21          MR. SPAGNOLETTI: WITH MY VIEW THAT I WOULDN'T –– I

22  DIDN'T WANT TO START ANOTHER CASE SEPARATELY FROM THIS ONE.

23          THE COURT: AND MRS. MARTIN ADVISES ME SHE HAS TERMED

24  THE TWO 12(B)(2) MOTIONS SUBJECT AS A RESULT OF THE PARTIES'

25  AGREEMENTS.  YES.

1              MR. SPAGNOLETTI: AND MR. FOSTER WANTED TO SAY ONE

2   THING.

3              MR. FOSTER: MAY I MAKE ONE POINT, JUST ONE POINT?

4   THANK YOU, YOUR HONOR.  VERY BRIEFLY, ABOUT THIRTY SECONDS.

5   WHEN MR. STUART WAS LAST BEFORE THE COURT HE BROUGHT UP AN

6   ISSUE THAT HAD NOT BEEN RAISED IN THE PAPERS, AND THAT'S WHY I

7   AM HERE.  HE SAID REGARDING AN ENTERPRISE, AND IT WAS IN ONE

8   OF HIS OVERHEADS, THAT THERE MUST BE ECONOMIC IMPACT TO THE

9   ENTERPRISE, WHATEVER THAT MEANS.  BUT THE PHRASE ECONOMIC

10  IMPACT, AND HE SAID THAT WASN'T SATISFIED HERE IN THIS CASE.

11      I WOULD LIKE TO POINT OUT AS I UNDERSTAND THAT ARGUMENT,

12  IT WAS SQUARELY ADDRESSED AND REJECTED BY THE U.S. SUPREME

13  COURT IN NOW V. SCHEIDLER IN THE 1994 SUPREME COURT OPINION IN

14  WHICH THE COURT HELD THAT A GROUP OF ANTI-ABORTION PROTESTORS

15  STATED A RICO CLAIM FOR BLOCKING ACCESS TO ABORTION CLINICS,

16  EVEN THOUGH THERE WAS NO ECONOMIC MOTIVE INVOLVED.  THAT'S ALL

17  I WOULD LIKE TO SAY.

18              THE COURT: YES.

19              MS. DEVITT: GOOD AFTERNOON, YOUR HONOR.  JESSICA

20  DEVITT ON BEHALF OF STOLT OFFHORE.  DO THE DEFENDANTS HAVE ANY

21  TIME FOR ARGUMENT OR HAVE WE USED IT ALL?

22              THE COURT: I THOUGHT IT WAS EXHAUSTED.  I THOUGHT

23  THAT COVERED EVERYTHING.  DID WE LEAVE SOMEONE OUT ON THIS

24  PROCESS?

25              MS. DEVITT: WELL, STOLT, IF I MAY, YOUR HONOR?

1          THE COURT: YES.  SOMEONE HAS USED ALL YOUR HOUR, OR

2    ALL THE ONE HOUR GIVEN.

3          MS. DEVITT: YOUR HONOR, I WILL BE VERY BRIEF.  MAY

4    IT PLEASE THE COURT, JESSICA DEVITT ON BEHALF OF STOLT

5    OFFSHORE.

6          THE COURT: I APOLOGIZE.  I THOUGHT THAT WAS THE LAST

7    ISSUE WE HAD IN FRONT OF US.

8          MS. DEVITT: THE ONLY REASON I RAISE IT, YOUR HONOR,

9    IS STOLT OFFSHORE IS IN I THINK SOMEWHAT OF A UNIQUE POSITION,

10   AT LEAST FOR PURPOSES OF THIS LAWSUIT AS A CLASS ACTION

11   DEFENDANT, OR PROPOSED CLASS ACTION DEFENDANT.  STOLT

12   OFFSHORE, YOU MAY HAVE NOTICED IN THE PLEADINGS, THE

13   PLAINTIFFS HAVE ACTUALLY DISMISSED ALL OF THEIR RICO CLAIMS

14   AGAINST STOLT OFFSHORE.  THAT WAS FILED AND ORDERED BY THE

15   COURT BACK IN JANUARY OF '06, SO I WON'T REHASH ALL THE

16   ARGUMENTS THAT WERE MADE WITH RESPECT TO THE NEGLIGENCE CLAIMS

17   AND THE CLAIMS UNDER 1349, BUT JUST TO ASK THE COURT TO

18   ADDRESS THE FACT THAT IF THERE WAS NO EMPLOYMENT RELATIONSHIP,

19   NO FORMER EMPLOYMENT RELATIONSHIP, THEN REALLY PLAINTIFFS HAVE

20   NO CAUSES OF ACTION AGAINST STOLT FOR ANYTHING.

21          UNDER 12(B)(6) FOR NEGLIGENCE, YOU HAVE TO HAVE DUTY,

22   BREACH, CAUSATION, DAMAGES.  WE DON'T EVEN GET TO THE

23   CAUSATION ISSUE IF YOU DON'T REACH THE DUTY ISSUE.  SO AGAIN,

24   THIS IS JUST, I GUESS, AS A MATTER OF HOUSEKEEPING, STOLT

25   OFFSHORE IS IN SOMEWHAT FURTHER ATTENUATED POSITION FOR

1    PURPOSES OF THE NEGLIGENCE CLAIMS THAT PLAINTIFFS HAVE

2    BROUGHT.

3              THE COURT: YES.

4              MR. SPAGNOLETTI: JUDGE, JUST BRIEFLY, IF I DIDN'T

5    MAKE MYSELF CLEAR ON THAT.  YOU DON'T HAVE TO GIVE NOTICE IF

6    THEY ARE IMMEDIATELY AFFECTED BY LEGAL INTEREST OF THE

7    PLAINTIFFS.  AND ALTHOUGH WE GAVE NOTICE, I EXPLAINED WHY,

8    JUST TO CLEAR THAT POINT UP.

9          BUT TURNING TO STOLT, STOLT IS A UNIQUE DEFENDANT.  THEY

10   HAVE NOT BEEN SUED UNDER RICO, AND THAT IS CORRECT.  AND THE

11   REASON WE DID NOT SUE THEM UNDER RICO WAS BECAUSE MUCH OF THE

12   INFORMATION THAT GAVE RISE TO THIS SUIT CAME THROUGH A CASE WE

13   HAD AGAINST STOLT INDEPENDENT OF THIS, WHEREIN IT WAS FOUND

14   THAT THERE WERE NUMEROUS MALAYSIAN, THAI AND OTHER WORKERS

15   THAT WERE BEING PROVIDED BY THESE MANNING COMPANIES, WORKING

16   AT THE KIND OF WAGES THAT I PREVIOUSLY MENTIONED.

17         UNDER THAT CIRCUMSTANCE, THE ACTION AGAINST STOLT SOUNDS,

18   WE HAVE ADDRESSED THE NEGLIGENCE ACTION, BUT THE ACTION

19   AGAINST STOLT SOUNDS UNDER THE OCSLA AND HOW IS IT THAT THE

20   OFFSHORE WORKERS THAT WE ALLEGE TO BE A CLASS ARE NOT INJURED,

21   BUT WHAT I CONSIDER TO BE A PIRATE OR ROGUE COMPANY THAT IS

22   IMPORTING ILLEGAL ALIENS, OR AT LEAST BRINGING IN ALIENS THAT

23   SHOULDN'T BE HERE AND PUTTING THEM TO WORK ON THE OUTER

24   CONTINENTAL SHELF WHEN THEY SHOULDN'T BE THERE, STEALING

25   AMERICAN JOBS AND WAGES, AND NOW THEY ARE GOING TO COME INTO

1   COURT AND SAY THAT THERE IS NO CAUSE OF ACTION AGAINST THEM

2   BECAUSE WE CAN'T SUE THEM UNDER RICO.  IF ANYTHING, THEY ARE

3   THE DEFINITION OF WHY A CAUSE OF ACTION EXISTS UNDER THE

4   OCSLA, IN ORDER TO CURE THAT KIND OF ACTIVITY.

5       IN THIS CIRCUMSTANCE THE ACTION AGAINST STOLT DOES NOT

6   SOUND UNDER RICO BECAUSE WE HAVEN'T BROUGHT ONE.  WE COULDN'T

7   BRING ONE BECAUSE THERE ARE NO AMERICAN WORKERS THAT WE COULD

8   REPRESENT.  THEY ARE ALL MALAYSIANS, AND THE MALAYSIANS

9   PERHAPS WOULDN'T HAVE THAT CAUSE OF ACTION BECAUSE THEY ARE,

10  IN FACT, THE ILLEGALLY IMPORTED LABOR.

11      SO UNDER THIS CIRCUMSTANCE, THE ACTION AGAINST STOLT

12  SOUNDS UNDER THE OCSLA, AND INSOFAR AS THAT STATUTE ENABLES US

13  TO BRING THAT, INDEED AS A PRIVATE ATTORNEY GENERAL OR WE ARE

14  BRINGING THAT ACTION TO ENFORCE THEM AND STOP THEM FROM

15  BRINGING IN THESE FOREIGN WORKERS.  THANK YOU.

16          THE COURT: ANY REPLY COMMENTS?

17          MS. DEVITT: NO, YOUR HONOR, THANK YOU.

18          THE COURT: THANK YOU.  ANYONE ELSE THAT WE LEFT OUT

19  OF THE PROCESS?

20          MS. CHARBONEAU: I AM LAUREN CHARBONEAU, YOUR HONOR,

21  ON BEHALF OF DEFENDANTS HUMARES AND OCEANWIDE OFFSHORE.

22          THE COURT: WHY DON'T YOU COME AROUND.  MS. CRAWFORD,

23  I AM SURE, IS HAVING A VERY DIFFICULT TIME UNDERSTANDING.

24          MS. CHARBONEAU: I JUST WANTED TO CLARIFY, YOUR

25  HONOR, THAT WE HAVE —

1          THE COURT: WHY DON'T YOU APPROACH THE PODIUM.   THANK

2  YOU.

3          MS. CHARBONEAU: SORRY.   LAUREN CHARBONEAU ON BEHALF

4  OF DEFENDANTS HUMARES BV AND OCEANWIDE OFFSHORE SERVICES.   I

5  JUST WANTED TO CLARIFY FROM BEFORE, YOUR HONOR, THAT WE HAVE,

6  THE PARTIES HAVE AGREED TO A DISMISSAL OF THE 12(B)(2) MOTIONS

7  AND THEY ARE NO LONGER BEFORE THE COURT.

8          THE COURT: AND MRS. MARTIN, I THINK, HAS ALREADY

9  DISMISSED THOSE.

10         MR. SPAGNOLETTI: AND FOR THE RECORD, THIS HAS

11 NOTHING TO DO WITH IT.   I THINK THERE WAS A MISSTATEMENT BY

12 COUNSEL FOR MCDERMOTT THAT SAID -

13         THE COURT: IT MIGHT HELP IF YOU WOULD APPROACH THE

14 PODIUM.   I THINK MS. CRAWFORD WOULD APPRECIATE THAT.

15         MR. SPAGNOLETTI: I THINK THERE WAS A MISSTATEMENT BY

16 COUNSEL FOR MCDERMOTT THAT SAID WE HAD DISMISSED STOLT.   WE

17 HAVE NOT AGREED TO DISMISS STOLT.   I WANTED TO JUST CLARIFY

18 THAT FOR THE RECORD SO IT DOESN'T SHOW UP.   STOLT WAS THE ONE

19 WHO JUST ARGUED.   IT WAS A DISCUSSION WITH REGARD TO COUNSEL

20 FOR HORIZON THAT THE COURT TOOK UP.   JUST FOR THE RECORD, YOUR

21 HONOR, I WANTED TO BRING THAT UP.   THANK YOU.

22         MR. CUNNINGHAM: JUST SO THERE IS NO DEBATE LATER,

23 THE DISMISSAL OF BERNARD COLEMAN IS GOING TO BE WITH

24 PREJUDICE, CORRECT?

25         MR. SPAGNOLETTI:  WELL, THE INDIVIDUAL, YES, BUT NOT

1   -

2            THE COURT: I THINK IT WOULD BE HELPFUL FOR THE

3   PURPOSE OF THE RECORD AND DOCKET SHEET TO OBVIOUSLY ENTER SOME

4   WRITTEN ORDERS THAT WOULD REFLECT THAT.

5            MR. SPAGNOLETTI: JUDGE, WE ARE GOING TO SUPPLY HIM

6   WITH THE NAME.  WE WILL ADDRESS THIS ISSUE.  I DON'T THINK --

7            MR. CUNNINGHAM: AND WE WILL COME UP WITH AN AGREED

8   ORDER, YOUR HONOR.

9            MR. SPAGNOLETTI: YES, JUDGE.

10            MR. STUART: YOUR HONOR, ONE FINAL HOUSEKEEPING

11   MATTER, IF I MAY.  WE WOULD LIKE TO SUBMIT THE OVERHEADS WE

12   USED TODAY AS DEMONSTRATIVE EXHIBITS, IF THE COURT IS WILLING

13   TO ACCEPT THEM, AND THERE BEING NO OBJECTION.

14            THE COURT: OBVIOUSLY, THE PLAINTIFFS DISAGREE WITH

15   THEIR USE OR APPLICATION, BUT GIVE THOSE TO MRS. MARTIN.  WE

16   WILL MAKE THOSE A PART OF THE RECORD.

17            MR. STUART: THANK YOU, YOUR HONOR.

18            THE COURT: I WISH I COULD SAY THAT I COULD ADDRESS

19   THIS QUICKLY.  AS SOME OF YOU KNOW, I SELECTED TWO JURIES

20   YESTERDAY AND MY MONTH OF NOVEMBER IS PLANNED IF THOSE CASES

21   DO NOT SETTLE.  BUT WE WILL GIVE IT AS MUCH ATTENTION AS

22   POSSIBLE AS QUICKLY AS POSSIBLE.  I APPRECIATE YOUR COMMENTS.

23   THEY HAVE BEEN HELPFUL, AND HAVE A PLEASANT TRIP AS YOU RETURN

24   HOME.  WE WILL BE IN RECESS.

25            (ADJOURNED 3:55 P.M.)

1

2

3

4

5

6                        REPORTER'S CERTIFICATION

7

8      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

9  THE RECORD OF PROCEEDINGS IN THE ABOVE ENTITLED MATTER.

10

11  DATE: NOVEMBER 18, 2006            _____

12                                      LIBBY CRAWFORD, CSR

13                                      OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25