IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| DANNY CUNNINGHAM, et al, each Individually, and on behalf of those similarly situated, | |
| Plaintiffs, | CIVIL ACTION NO. 5:04-cv-00282-DF |
| V. | JURY |
| Offshore Specialty Fabricators, Inc., et al | |
| Defendants. | |

**PLAINTIFFS' FIFTH AMENDED COMPLAINT**
**AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIONS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Plaintiffs, Amy Chatagnier, for and on behalf of the Estate of Danny Cunningham, Deceased, Pablo Rubio Llamas, Jacob Van Dyke, Dale McGowan, James Owens, Lee Brown, Richard Badon, Bruce Crutchfield, Ronald Turner, Sr., Charles Rockward, Darryl Johnson, Brandon Evans, Eric Lena, Brandon Soudelier, Kevin Henderson, Elvis Harris, Ronnie Pierre, Raphael Young, Watkins Jackson, Timothy Harmon, Reginald Sayles, Raymond Johnson, Mark Johnson, Donald Wiggins, Eric Johnson, Charles Andrepont, Wendell Smith, Calvin Bennett, Roberto Cantu, Clarence Taylor, Ryan Powell, Raymond Balderas, Michael Amsbary, Brian Bradshaw, and Chris Albrecht, all individually, and on behalf of those similarly situated ("Plaintiffs"), and file this Fifth Amended Complaint and Request for Preliminary and Permanent Injunctions against Defendants Horizon Offshore, Inc., Horizon Offshore Contractors, Inc., Horizon Vessels, Inc., Offshore Specialty Fabricators, Inc., Offshore Express, Inc., J. Ray McDermott, Inc.,

Cal Dive International, Inc., Helix Energy Solutions Group, Inc., Global Industries Offshore, L.L.C., Global Industries, Ltd., Allseas USA, Inc., Fugro, Inc., Fugro-McClelland Marine Geosciences, Inc., Fugro Chance, Inc., Unocal Corporation, and Unocal Offshore Services, Ltd. (the "Service Defendants"), and O.W.I. Limited, Oceanwide Houston, Inc., Oceanwide Offshore Services, Humares BV, C-MAR America, Inc., C-MAR Group Holdings, Inc., C-MAR Group Holdings Ltd., and C-MAR Services (UK) Limited (the "Manning Defendants"), and for causes of action would show as follows:

## I.
## NATURE OF THE CASE

1.1 This is a class action for damages caused by the loss of American jobs, the depression of wages, and the loss of benefits to American citizens and aliens lawfully admitted to the United States for permanent residence ("Legal Workers").

1.2 The Service Defendants, some of the largest American companies, have taken "outsourcing" one step further. Instead of taking jobs out of America and away from American shores and those who want jobs, Defendants, and each of them, are bringing illegal workers to America.

1.3 Specifically, the Service Defendants illegally depress the wages paid to their employees who work on vessels, rigs, platforms and other vehicles or structures on the Outer Continental Shelf of the United States, including the Gulf of Mexico (the "OCS"), by employing large numbers of illegal workers to perform the work of the Service Defendants (the "Illegal Worker Hiring Scheme").

1.4 The Illegal Worker Hiring Scheme violates both the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. (hereafter "RICO"), and the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq. (hereafter "OCSLA").

1.5 Each Plaintiff individually has been victimized by the Illegal Worker Hiring Scheme because each was employed by a Service Defendant at wages depressed as a result of the Illegal Worker Hiring Scheme.

1.6 Each Plaintiff seeks to represent a class of persons, either United States citizens or Legal Workers, who were employed by the Service Defendants during the three years prior to the filing of this action, because all of the classes' wages were depressed by the Illegal Worker Hiring Scheme, that is, each member of the class was paid below what they would have been paid in a labor market comprised of legal workers.

## II.
## JURISDICTION AND VENUE

2.1 Plaintiffs re-allege all foregoing paragraphs as though fully again set forth.

2.2 This Court has subject matter jurisdiction over Plaintiffs' claims under:

a. 18 U.S.C. § 1961, et seq. (statutory jurisdiction under RICO);

b. 43 U.S.C. § 1349(b) (statutory jurisdiction under OCSLA);

c. 28 U.S.C. § 1331 (jurisdiction for matters arising under 18 U.S.C. §§ 1962, et seq., and 43 U.S.C. § 1331, et seq.);

d. 28 U.S.C. § 1337 (original jurisdiction for Acts of Congress regulating commerce).

2.3 This Court has personal jurisdiction over each of the Defendants, which, at all relevant times, either resided, were found, had an agent, or transacted substantial business in the state of

Texas, including the Eastern District of Texas, and the District would have *in personam* jurisdiction over these Defendants.

2.4 At all relevant times, the Defendants resided, were found, had an agent, or transacted their affairs in the state of Texas, including the Eastern District of Texas. A substantial part of Defendants' wrongful acts and omissions occurred in the Eastern District of Texas. Accordingly, venue is proper in the Eastern District of Texas pursuant to:

a. 18 U.S.C. §§ 1965(a) and 1965(b) (RICO venue provisions);

b. 43 U.S.C. § 1349(b)(2) (OCSLA citizen suit venue provision);

c. 28 U.S.C. § 1391(b)(2) (venue in actions not founded on diversity).

## III.
## PARTIES

3.1 Plaintiffs re-allege all foregoing paragraphs as though fully again set forth.

3.2 Plaintiffs are United States citizens or Legal Workers, and are qualified to provide offshore and other labor related to the exploration for and exploitation, development and production of, oil and gas mineral deposits located on the Outer Continental Shelf of the United States, as well as the transportation of merchandise in the coastwise trade between points in the United States.

3.3 Plaintiff Amy Chatagnier, a citizen of the United States and resident of the state of Louisiana, and representative of the Estate of Danny Cunningham, Decedent. Danny Cunningham previously resided in the Eastern District, state of Texas, and was previously employed by Offshore Speciality Fabricators, Inc. and/or Offshore Express, Inc.

3.4 Plaintiff Pablo Rubio Llamas, a resident alien, resides in Louisiana, was previously employed by Offshore Speciality Fabricators, Inc. and/or Offshore Express, Inc.

3.5 Plaintiff Jacob Van Dyke, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Offshore Specialty Fabricators, Inc. and/or Offshore Express, Inc.

3.6 Plaintiff Dale McGowan, a citizen of the United States, resides in the state of Mississippi, and was previously employed by Offshore Specialty Fabricators, Inc. and/or Offshore Express, Inc.

3.7 Plaintiff Allen Smith, Jr., a citizen of the United States, resides in the state of Louisiana, and was previously employed by Offshore Specialty Fabricators, Inc. and/or Offshore Express, Inc.

3.8 Plaintiff James Owens, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Offshore Specialty Fabricators, Inc. and/or Offshore Express, Inc.

3.9 Plaintiff Lee Brown, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Offshore Specialty Fabricators, Inc. and/or Offshore Express, Inc.

3.10 Plaintiff Richard Badon, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Offshore Specialty Fabricators, Inc. and/or Offshore Express, Inc.

3.11 Plaintiff Bruce Crutchfield, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Offshore Specialty Fabricators, Inc. and/or Offshore Express, Inc.

3.12 Plaintiff Ronald Turner, Sr., a citizen of the United States, resides in the state of Texas, and was previously employed by Horizon Offshore, Inc., Horizon Offshore Contractors, Inc. and/or Horizon Vessels, Inc.

3.13 Plaintiff Charles Rockward, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Horizon Offshore, Inc., Horizon Offshore Contractors, Inc. and/or Horizon Vessels, Inc.

3.14 Plaintiff Darryl Johnson, a citizen of the United States, resides in the state of Texas, and was previously employed by Horizon Offshore, Inc., Horizon Offshore Contractors, Inc. and/or Horizon Vessels, Inc.

3.15 Plaintiff Brandon Evans, a citizen of the United States, resides in the state of Texas, and was previously employed by Horizon Offshore, Inc., Horizon Offshore Contractors, Inc. and/or Horizon Vessels, Inc.

3.16 Plaintiff Eric Lena, a citizen of the United States, resides in the state of Texas, and was previously employed by Horizon Offshore, Inc., Horizon Offshore Contractors, Inc. and/or Horizon Vessels, Inc.

3.17 Plaintiff Brandon Soudelier, a citizen of the United States, resides in the state of Louisiana, and was previously employed by J. Ray McDermott, Inc.

3.18 Plaintiff Kevin Henderson, a citizen of the United States, resides in the state of Florida, and was previously employed by J. Ray McDermott, Inc.

3.19 Plaintiff Elvis Harris, a citizen of the United States, resides in the state of Louisiana, and was previously employed by J. Ray McDermott, Inc.

3.20 Plaintiff Ronnie Pierre, a citizen of the United States, resides in the state of Texas, and was previously employed by J. Ray McDermott, Inc.

3.21 Plaintiff Raphael Young, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Cal Dive International, Inc.

3.22 Plaintiff Watkins Jackson, a citizen of the United States, resides in the state of Texas, and was previously employed by Cal Dive International, Inc.

3.23 Plaintiff Timothy Harmon, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Cal Dive International, Inc.

3.24 Plaintiff Reginald Sayles, a citizen of the United States, resides in the state of Texas, and was previously employed by Cal Dive International, Inc.

3.25 Plaintiff Raymond Johnson, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Cal Dive International, Inc.

3.26 Plaintiff Mark Johnson, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Cal Dive International, Inc.

3.27 Plaintiff Donald Wiggins, a citizen of the United States, resides in the state of Louisiana, and is currently employed by Cal Dive International, Inc. and/or Helix Energy Solutions Group, Inc.

3.28 Plaintiff Eric Johnson, a citizen of the United States, resides in the state of Florida, and was previously employed by Cal Dive International, Inc. and/or Helix Energy Solutions Group, Inc.

3.29 Plaintiff Charles Andrepont, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Cal Dive International, Inc. and/or Helix Energy Solutions Group, Inc.

3.30 Plaintiff Wendell Smith, a citizen of the United States, resides in Missouri, and was previously employed by Global Industries Offshore, L.L.C. and/or Global Industries, Ltd.

3.31 Plaintiff Calvin Bennett, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Global Industries Offshore, L.L.C. and/or Global Industries, Ltd.

3.32 Plaintiff Roberto Cantu, a citizen of the United States, resides in the state of Texas, and was previously employed by Global Industries Offshore, L.L.C. and/or Global Industries, Ltd.

3.33 Plaintiff Clarence Taylor, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Global Industries Offshore, L.L.C. and/or Global Industries, Ltd.

3.34 Plaintiff Ryan Powell, a citizen of the United States, resides in Texas, and was previously employed by Allseas USA, Inc.

3.35 Plaintiff Raymond Balderas, a citizen of the United States, resides in the state of Texas, and was previously employed by Fugro, Inc., Fugro-McClelland Marine Geosciences, Inc. and/or Fugro Chance, Inc.

3.36 Plaintiff Michael Amsbary, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Fugro, Inc., Fugro-McClelland Marine Geosciences, Inc. and/or Fugro Chance, Inc.

3.37 Plaintiff Brian Bradshaw, a citizen of the United States, resides in the state of Texas, and was previously employed by Fugro, Inc., Fugro-McClelland Marine Geosciences, Inc. and/or Fugro Chance, Inc.

3.38 Plaintiff Chris Albrecht, a citizen of the United States, resides in the state of Louisiana, and was previously employed by Unocal Corporation and/or Unocal Offshore Services, Ltd.

3.39 Defendant Horizon Offshore, Inc. ("Horizon Offshore") is a Delaware corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.40 Defendant Horizon Offshore Contractors, Inc. ("Horizon Offshore Contractors") is a Delaware corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.41 Defendant Horizon Vessels, Inc. ("Horizon Vessels") is a Delaware corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.42 Defendant Offshore Specialty Fabricators, Inc. ("Offshore Specialty") is a Louisiana corporation with its principal place of business in Houma, Louisiana, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may

be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.43 Defendant Offshore Express, Inc. ("Offshore Express") is a foreign corporation with its principal place of business in Houma, Louisiana, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.44 Defendant J. Ray McDermott, Inc. ("McDermott") is a Delaware corporation with its principal place of business in New Orleans, Louisiana, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.45 Defendant Cal Dive International, Inc. ("Cal Dive") is a Minnesota corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.46 Defendant Helix Energy Solutions Group, Inc. ("Helix") is a Minnesota corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

3.47 Defendant Global Industries Offshore, L.L.C. ("Global Industries Offshore") is a Louisiana limited liability company with its principal place of business in Sulphur, Louisiana, doing business in this District and in the state of Texas for the purpose of accumulating monetary

profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.48 Defendant Global Industries, Ltd. ("Global Industries") is a foreign entity with principal places of business in both Houston, Texas, and New Iberia, Louisiana, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.49 Defendant Allseas USA, Inc. ("Allseas") is a domestic for-profit corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent: Roy Sijthoff, 333 North Sam Houston Parkway, Suite 1275, Houston, Texas 77060.

3.50 Defendant Fugro, Inc. ("Fugro") is a domestic for-profit corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent: Bramlette McClelland, 6100 Hillcroft, Houston, Texas 77081.

3.51 Defendant Fugro-McClelland Marine Geosciences, Inc. ("Fugro-McClelland") is a domestic for-profit corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent: W. Scott Rainey, 6100 Hillcroft, Houston, Texas 77081.

3.52 Defendant Fugro Chance, Inc. ("Fugro Chance") is a foreign for-profit corporation with its principal place of business in Lafayette, Louisiana, doing business in this District and in the

state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent: C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

3.53 Defendant Unocal Corporation ("Unocal") is a foreign corporation with its principal place of business in San Ramon, California, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent: Corporation Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701.

3.54 Defendant Unocal Offshore Services, Ltd. ("Unocal Offshore") is a foreign corporation with its principal place of business in San Ramon, California, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, Texas 78701

3.55 Defendant O.W.I. Limited (Oceanwide International) ("O.W.I. Limited") is a foreign corporation with its principal place of business in Limassol, Cyprus, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.56 Defendant Oceanwide Houston, Inc. ("Oceanwide Houston") as agent in the United States for its principal O.W.I. Limited, is a domestic corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.57 Defendant Oceanwide Offshore Services ("Oceanwide Offshore") is a foreign limited liability company with its principal place of business in Den Helder, Netherlands, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.58 Defendant Humares BV ("Humares") is a foreign business entity with its principal place of business in Vlissingen, Netherlands, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.59 Defendant C-MAR America, Inc. ("C-MAR America") is a domestic corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.60 Defendant C-MAR Group Holdings, Inc. ("C-MAR Group Inc.") is a domestic corporation with its principal place of business in Houston, Texas, doing business in this District and in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.61 Defendant C-MAR Group Holdings Ltd. ("C-MAR Group Ltd.") is a foreign business entity with its principal place of business in Norwich, United Kingdom, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

3.62 Defendant C-MAR Services (UK) Limited ("C-MAR Services") is a foreign business entity with its principal place of business in Norwich, United Kingdom, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its attorney of record, who has previously appeared herein on its behalf.

IV.
FIRST CAUSE OF ACTION
(Violations of 18 U.S.C. § 1962(c) of RICO)
(Against the Service Defendants Only)

THE SERVICE DEFENDANTS ARE ENGAGED IN AN ONGOING ILLEGAL WORKER HIRING SCHEME

4.1 Plaintiffs re-allege all foregoing paragraphs as though fully again set forth.

4.2 The Service Defendants are some of the largest transporters of merchandise in the coastwise trade between points in the United States, and also some of the largest service providers to those prospecting for and developing oil and gas mineral deposits on the Outer Continental Shelf of the United States, including the Gulf of Mexico (the "OCS").

4.3 Defendants Horizon Offshore, Horizon Offshore Contractors and Horizon Vessels provide marine construction services to the offshore oil and gas industry worldwide, including installation and burial of marine pipelines, and derrick barge operations for installation of new and abandonment of old oil and gas producing facilities, which services involve transporting merchandise in the coastwise trade between points in the United States. They employ hundreds, if not thousands, of persons on its projects and have an ongoing need for workers to staff its projects.

4.4 Defendants Offshore Specialty and Offshore Express are active in the installation and dismantlement of offshore platforms in the U.S. Gulf of Mexico, offering turnkey project

services. They own and operate derrick barges, cargo barges, tugs, anchor handling tugs, supply vessels, utility vessels and crew boats, some or all of which transport merchandise in the coastwise trade between points in the United States. They employ hundreds, if not thousands, of persons on its projects and have an ongoing need for workers to staff its projects.

4.5 Defendant McDermott is a leading worldwide marine construction company, operating a diversified fleet of vessels for the marine construction industry in the Gulf of Mexico and around the world, and in the course of its operations transports merchandise in the coastwise trade between points in the United States. It employs hundreds, if not thousands, of persons on its projects and has an ongoing need for workers to staff its projects.

4.6 Defendants Cal Dive and Helix operate primarily in the United States Gulf of Mexico, and specializes in marine contracting with a focus on subsea construction, well operations, and other services that support drilling, well completion, intervention, construction and decommissioning projects involving pipelines, production platforms, risers and subsea production systems. They employ hundreds, if not thousands, of persons on their projects and have an ongoing need for workers to staff their projects.

4.7 Defendants Global Industries Offshore and Global Industries provide offshore construction, engineering and support services including pipeline construction, platform installation and removal, and diving services to the oil and gas industry in the Gulf of Mexico, among other places. Global Industries Offshore and Global Industries are leading providers of offshore construction services with 24 construction barges, 22 liftboats, 17 dive support vessels, and 15 marine support vessels.

4.8 Defendant Allseas is one of the world's major offshore pipelay and subsea construction companies. Allseas operates six specially designed vessels that operate all over the world, including the Gulf of Mexico. Since 1986, Allseas has executed over 200 pipelay and trenching contracts.

4.9 Defendants Fugro, Fugro-McClelland and Fugro Chance are among the world's leading survey companies. Since the late 1950s, Fugro, Fugro-McClelland and Fugro Chance has positioned more offshore drilling rigs, production and pipeline lay-barges than any other survey company in the world. Fugro, Fugro-McClelland and Fugro Chance work extensively in the Gulf of Mexico and have developed the most comprehensive database of wells, pipelines, hazards, etc. to be found in that region.

4.10 Defendants Unocal and Unocal Offshore are entities that specialize in oil and natural gas production and exploration development. They produce and sell a broad array of essential energy services and develop major energy projects around the world. One of Unocal and Unocal Offshore's largest production regions is the Gulf of Mexico.

4.11 Given their broad-ranging and labor intensive activities, the Service Defendants are dominant participants in, and the source of demand for nearly the entire, labor market for offshore and other labor related to the offshore exploration and exploitation of oil and gas minerals on the OCS, as well as the transportation of merchandise in the coastwise trade between points in the United States.

4.12 Defendants O.W.I. Limited, Oceanwide Houston, Inc., Oceanwide Offshore Services, Humares BV, C-MAR America, Inc., C-MAR Group Holdings, Inc., C-MAR Group Holdings Ltd. and C-MAR Services (UK) Limited (collectively the "Manning Defendants")

are some of the largest providers of crew recruitment and contract labor services to the maritime industry, and supply much of the demand for labor created by the Service Defendants. The Service Defendants have, for at least the three years prior to the filing of this lawsuit, retained the Manning Defendants to obtain workers to staff the projects undertaken by the Service Defendants in the Gulf of Mexico.

4.13 Defendants O.W.I. Limited, Oceanwide Offshore and Humares are related employment agencies specializing in the employment, secondment, and recruitment of maritime and offshore personnel. Together with and through its local agent, defendant Oceanwide Houston, O.W.I. Limited, Oceanwide Offshore, Humares and Oceanwide Houston act as central cogs in the wheel of an international network of branch offices supplying personnel of all nationalities to the Service Defendants herein, in particular Horizon and McDermott.

4.14 Defendants C-MAR America, Inc., C-MAR Group Holdings, Inc., C-MAR Group Holdings Ltd., and C-MAR Services (UK) Limited, supply personnel of many nationalities to a variety of entities, including but not limited to the Service Defendants.

4.15 The Service Defendants have as an objective in using the Manning Defendants the recruitment of a largely illegal labor force that will work for depressed wage rates, significantly below the wages legal workers would demand.

4.16 Thus, the Service Defendants have directed the Manning Defendants to recruit and employ workers who the Manning Defendants know are, in most cases, illegally employed on the OCS.

4.17 The Manning Defendants have thus recruited for the Service Defendants hundreds, if not thousands, of illegal workers each year during the three years prior to the filing of this

Complaint. However, the recruited illegal workers are actually employed by the Service Defendants, not the Manning Defendants.

4.18 The Illegal Worker Hiring Scheme has been successful in depressing the wages the Service Defendants must pay for legal labor.

4.19 Each Plaintiff is a victim of the Illegal Worker Hiring Scheme because each was paid a wage rate depressed below what the Service Defendants would have been required to pay each Plaintiff in a labor market comprised of legal workers.

THE ILLEGAL WORKER HIRING SCHEME VIOLATES RICO

4.20 The Illegal Worker Hiring Scheme violates two provisions of Section 274 of the Immigration and Nationality Act, specifically, 8 U.S.C. § 1324(a)(1)(A)(iii) (knowingly harboring or concealing illegal aliens), and 8 U.S.C. § 1324(a)(3)(A) (prohibiting the knowing employment of illegal aliens).

4.21 The Service Defendants have "harbored" hundreds, if not thousands, of illegal workers by employing them on the OCS. This employment, knowing the workers are illegally employed on the OCS, also constitutes their "knowing" employment.

4.22 This pattern has repeatedly occurred during the three years before this complaint was filed, and is a regular pattern and practice of the Service Defendants' regular staffing operations.

4.23 Plaintiffs believe the Service Defendants will not cease the Illegal Worker Hiring Scheme without judicial intervention.

4.24 The violations of 8 U.S.C. § 1324 are RICO violations, pursuant to 18 U.S.C. § 1961(1)(F). Therefore, the Service Defendants are committing a "pattern of racketeering activity" in violation of RICO.

EACH SERVICE DEFENDANT IS COMMITTING THE RACKETEERING ACTIVITY THROUGH AN ASSOCIATION-IN-FACT ENTERPRISE IT HAS FORMED WITH THE MANNING DEFENDANTS

4.25 As alleged, each of the Service Defendants has been closely engaged with each of the Manning Defendants for at least three years before the filing of this complaint. Accordingly, each Service Defendant has its own long-standing relationship with the Manning Defendants for the purpose of staffing its projects. Each Service Defendant obtains workers from each Manning Defendant on an ongoing basis. Over time, each Service Defendant has regularized its manner of dealing with the Manning Defendants to the point where they work closely together to fill the staffing needs of each Service Defendant. When a worker is recruited by one of the Manning Defendants, that worker then becomes actually employed by the Service Defendant, and the Service Defendant then pays a fee to the Manning Defendant. Most of these recruited workers are illegal workers, which the Manning Defendants and the Service Defendants know, and which is essential to the Illegal Worker Hiring Scheme to depress wages. Therefore, Plaintiffs allege each Service Defendant has formed an association-in-fact RICO enterprise consisting of itself and all of the Manning Defendants.

4.26 Each of these 10 RICO enterprises has an existence apart from the commission of the Illegal Worker Hiring Scheme, as all the members are legitimate businesses. Moreover, some of the workers recruited are legal workers.

PLAINTIFFS HAVE BEEN PROXIMATELY HARMED BY THE SERVICE DEFENDANTS' PATTERN OF RACKETEERING ACTIVITY

4.27 This action is brought pursuant to 18 U.S.C. § 1962(c), which makes it illegal for the Service Defendants to participate in the affairs of an enterprise through a pattern of racketeering activity.

4.28 The Service Defendants participate in the affairs of an association-in-fact enterprise, as described, by knowingly employing hundreds, if not thousands, of illegal workers recruited by the Manning Defendants.

4.29 Plaintiffs, and those similarly situated, have each been proximately harmed by the Service Defendants' racketeering activity by being paid depressed wages by each of their employing Service Defendants.

4.30 Plaintiffs' injuries are direct and proximately caused by the Service Defendants' racketeering activities.

4.31 Accordingly, Plaintiffs have standing to sue for their damages pursuant to 18 U.S.C. 1964(c).

V.
SECOND CAUSE OF ACTION
(Negligence)
(Against all Defendants)

5.1 Separate from the foregoing allegations regarding violations of RICO, and in the alternative, the Service Defendants and Manning Defendants were negligent in their hiring practices, resulting in unsafe work conditions and real or potential bodily injury to the Plaintiffs, which negligence is the proximate cause of Plaintiffs' personal and bodily injuries, depressed wages and unsafe working conditions.

VI.

THIRD CAUSE OF ACTION

(Violation of Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq. ("OCSLA"))

(Against All Defendants)

6.1 Plaintiffs re-allege all foregoing paragraphs as though fully again set forth.

6.2 43 U.S.C. § 1356, and regulations promulgated thereunder, codified at 33 C.F.R. § 141, et seq., require, unless otherwise excepted, any vessel, rig, platform, or other vehicle or structure which is used for OCS activities, be manned or crewed by citizens of the United States and no more than twenty-five percent (25%) aliens lawfully admitted to the United States for permanent residence.

6.3 Defendants, and each of them, have at all times in the past relevant to this action, and currently, violate 43 U.S.C. § 1356, and the regulations promulgated thereunder, by intentionally or negligently manning or crewing vessels, rigs, platforms, or other vehicles or structures, with crew compliments not authorized by law, either without obtaining the requisite waivers, or after once-valid waivers have expired, or on such vessels, rigs, platforms, or other vehicles or structures that do not qualify for the foreign ownership or foreign control exceptions.

6.4 Plaintiffs, and those similarly situated, have a legal interest in obtaining the highest wages possible for their labor.

6.5 Defendants, by violating OCSLA and its implementing regulations, have depressed wages, reduced benefits, and degraded working conditions, all of which have caused Plaintiffs, and others similarly situated, to accept lower wages, reduced benefits, and poorer working conditions.

6.6 Defendants' violation of OCSLA and its implementing regulations have caused actual damage to Plaintiffs, and those similarly situated, who bring this action pursuant to 43 U.S.C. § 1349(b)(2).

6.7 Plaintiffs have provided notice to Defendants under OCSLA, and bring this action pursuant to 43 U.S.C. § 1349(a)(3), as the Defendants' conduct alleged immediately affects Plaintiffs' legal interest.

## VII.
## ALTER EGO ALLEGATIONS

7.1 Plaintiffs re-allege all foregoing paragraphs as though fully again set forth.

7.2 Plaintiffs would show that Defendants O.W.I. Limited, Oceanwide Houston, Inc., Oceanwide Offshore Services and Humares BV are each liable to Plaintiffs for each cause of action Plaintiffs may have against these Defendants because of the theory of alter ego. Further, Plaintiffs would show that these Defendants are sham corporate structures who failed to follow corporate formalities and as such the act of one is the act of the other and their corporate identity should be disregarded. Further, Plaintiffs would show that management and the operation of these Defendants are assimilated to the extent that the subsidiaries are simply a name or conduit through which the parent conducts its business so that the corporate fiction should be disregarded.

7.3 Plaintiffs would show that Defendants C-MAR America, Inc., C-MAR Group Holdings, Inc., C-MAR Group Holdings Ltd. and C-MAR Services (UK) Limited are each liable to Plaintiffs for each cause of action Plaintiffs may have against these Defendants because of the theory of alter ego. Further, Plaintiffs would show that these Defendants are sham corporate structures who failed to follow corporate formalities and as such the act of one is

the act of the other and their corporate identity should be disregarded. Further, Plaintiffs would show that management and the operation of these Defendants are assimilated to the extent that the subsidiaries are simply a name or conduit through which the parent conducts its business so that the corporate fiction should be disregarded.

7.4 Plaintiffs would show that Defendants Cal Dive International, Inc. and Helix Energy Solutions Group, Inc., are each liable to Plaintiffs for each cause of action Plaintiffs may have against these Defendants because of the theory of alter ego. Further, Plaintiffs would show that these Defendants are sham corporate structures who failed to follow corporate formalities and as such the act of one is the act of the other and their corporate identity should be disregarded. Further, Plaintiffs would show that management and the operation of these Defendants are assimilated to the extent that the subsidiaries are simply a name or conduit through which the parent conducts its business so that the corporate fiction should be disregarded.

## VIII.
## CLASS ACTION ALLEGATIONS

8.1 Plaintiffs request that this case proceed as a class action pursuant to Rule 23(b)(2) (injunctive relief) and 23(b)(3) (money damages) of the Federal Rules of Civil Procedure, on behalf of all similarly situated persons who are now or in the past three years have been employed by Defendants, and have been paid depressed wages, as a result of the Service Defendants' RICO violations as alleged above, as a result of all Defendants' negligence, and as a result of all Defendants' violation of OCSLA. Plaintiffs would show that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class, specifically, whether the Service Defendants have engaged in the

Illegal Worker Hiring Scheme, whether they do so through the RICO enterprise alleged, and whether the wages of Plaintiffs, and those similarly situated, have been depressed as a result of the Illegal Worker Hiring Scheme; (3) the claims of the Plaintiffs are typical of the claims of the class; and (4) Plaintiffs will fairly and adequately protect the interests of the class; therefore, this action may be maintained as a class action since the prerequisites of Rule 23 can be met.

## IX.
## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIONS

9.1 Plaintiffs re-allege all foregoing paragraphs as though fully again set forth.

9.2 Plaintiffs request the court exercise the jurisdiction granted it under 18 U.S.C. § 1964(a) and 43 U.S.C. § 1349(a)(5), and issue appropriate orders preliminarily and permanently restraining Defendants from further violating 18 U.S.C. § 1962, 43 U.S.C. § 1349, and regulations promulgated pursuant to United States Code Title 43, Chapter 29, Subchapter III, including, but not limited to, the imposition of reasonable restrictions on Defendants prohibiting Defendants from engaging in the same type of endeavor as the Illegal Worker Hiring Scheme affecting interstate or foreign commerce, in particular a prohibition against any future violations of United States immigration laws prohibiting procurement of illegal workers in contravention of the Immigration and Nationality Act, section 274 (a predicate act pursuant to 18 U.S.C. § 1961(1)(F), and thus prohibited acts pursuant to 18 U.S.C. § 1962), and against any future violations of the OCSLA manning requirements, and regulations promulgated thereunder.

## X.
## RELIEF REQUESTED

10.1 Plaintiffs re-allege all foregoing paragraphs as though fully again set forth.

10.2 Pursuant to 18 U.S.C. § 1964(c), against the Service Defendants, Horizon Offshore, Inc., Horizon Offshore Contractors, Inc., Horizon Vessels, Inc., Offshore Specialty Fabricators, Inc., Offshore Express, Inc., J. Ray McDermott, Inc., Cal Dive International, Inc., Helix Energy Solutions Group, Inc., Global Industries Offshore, L.L.C. and Global Industries, Ltd., Allseas USA, Inc., Fugro, Inc., Fugro-McClelland Marine Geosciences, Inc., Fugro Chance, Inc., Unocal Corporation and Unocal Offshore Services, Ltd., and as a direct and proximate result of the Service Defendants' wrongful conduct, Plaintiffs, and those similarly situated, request treble money damages totaling: (i) the difference between the depressed wage paid Plaintiffs and the actual wages Plaintiffs would have received had the Service Defendants not depressed Plaintiffs' wages through their pattern and practice of immigration violations in manning positions like those held by Plaintiffs, and those similarly situated; (ii) the difference between the value of benefits received by Plaintiffs, and those similarly situated, and the actual benefits Plaintiffs would have received had the Service Defendants not engaged in their pattern and practice of hiring illegal workers; and, in addition, (iii) their reasonable and necessary attorney's fees, litigation expenses and court costs in prosecuting this action. The Plaintiffs, and those similarly situated, are entitled to recover such amounts.

10.3 Pursuant to 43 U.S.C. § 1349, against all Defendants, Horizon Offshore, Inc., Horizon Offshore Contractors, Inc., Horizon Vessels, Inc., Offshore Specialty Fabricators, Inc., Offshore Express, Inc., J. Ray McDermott, Inc., Cal Dive International, Inc., Helix Energy Solutions Group, Inc., Global Industries Offshore, L.L.C., Global Industries, Ltd., Allseas USA, Inc., Fugro, Inc., Fugro-McClelland Marine Geosciences, Inc., Fugro Chance, Inc.,

Unocal Corporation and Unocal Offshore Services, Ltd., O.W.I. Limited, Oceanwide Houston, Inc., Oceanwide Offshore Services, Humares BV, C-MAR America, Inc., C-MAR Group Holdings, Inc., C-MAR Group Holdings Ltd. and C-MAR Services (UK) Limited, Plaintiffs, and those similarly situated, request, actual damages incurred due to Defendants' OCSLA violations, totaling: (i) the difference between the depressed wage paid Plaintiffs and the actual wages Plaintiffs would have received had the Defendants not violated OCSLA in manning positions like those held by Plaintiffs, and those similarly situated; (ii) the difference between the value of benefits received by Plaintiffs, and those similarly situated, and the actual benefits Plaintiffs would have received had the Defendants not violated OCSLA in manning positions like those held by Plaintiffs, and those similarly situated; and, in addition, (iii) their reasonable attorney fees and expert witness fees. The Plaintiffs, and those similarly situated, are entitled to recover such amounts.

10.4 All other relief to which Plaintiffs and Plaintiff class may be entitled.

WHEREFORE, Plaintiffs request (i) Defendants, and each of them, be cited to appear and answer this lawsuit, and (ii) upon final trial or hearing, judgment be awarded granting the relief requested above.

JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and causes of action.

Respectfully submitted,

*/s/Christopher K. Johns*

Anthony G. Buzbee
State Bar No. 24001820
Christopher K. Johns
State Bar No. 24002353
Hogg Palace
401 Louisiana, 8th Floor
Houston, Texas 77002
Telephone: 713-653-5640
Facsimile: 713-653-5693
Email: tbuzbee@txattorneys.com
Email: chrisjohns@txattorneys.com

OF COUNSEL:

SPAGNOLETTI & CO.
Francis I. Spagnoletti
State Bar No. 18869600
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone: 713-653-5600
Facsimile: 713-653-5656
Email: fspagnoletti@spaglaw.com

NIX PATTERSON & ROACH LLP
Anthony Kyle Bruster
2900 Saint Michael Drive, Suite 500
Texarkana, Texas 75503
Telephone: 903.223.3999
Facsimile: 903.223.8520

JOHNSON & BELL
Howard W. Foster

33 West Monroe Street, Suite 2700
Chicago, IL 60603-5404
Telephone: 312-372-0770
Facsimile: 312-372-9818

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that service of the foregoing was on this date automatically accomplished on all known Filing Users through the Notice of Electronic Filing. Service on any party or counsel who is not a Filing User was accomplished via Email, Facsimile, Certified Mail/RRR or U.S. First Class Mail, in accordance with the Federal Rules of Civil Procedure on this 10th day of August, 2008.

*/s/Christopher K. Johns*

Christopher K. Johns